UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
WOBURN RETIREMENT SYSTEM,　　　　　　　|
Individually and on Behalf　　　　　　　　　　　|
of All Others Similarly Situated,　　　　　　　　|
　　　　　　　　　　　　　　　　　　　　　　|
　　　　　　　　　Plaintiff,　　　　　　　　　| 　14-CV-8925 (KMW)
　　　　　　　　　　　　　　　　　　　　　　| 　14-CV-9226 (KMW)
-against-　　　　　　　　　　　　　　　　　 | 　OPINION & ORDER
　　　　　　　　　　　　　　　　　　　　　　|
SALIX PHARMACEUTICALS, LTD.　　　　　　|
CAROLYN J. LOGAN, and ADAM C.　　　　　|
DERBYSHIRE,　　　　　　　　　　　　　　　|
　　　　　　　　　　　　　　　　　　　　　　|
　　　　　　　　　Defendants.　　　　　　　　|
---------------------------------------------------------------X

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GEORGE BRUYN, Individually and on Behalf　|
of All Others Similarly Situated,　　　　　　　　|
　　　　　　　　　　　　　　　　　　　　　　|
　　　　　　　　　Plaintiff,　　　　　　　　　|
　　　　　　　　　　　　　　　　　　　　　　|
-against-　　　　　　　　　　　　　　　　　 |
　　　　　　　　　　　　　　　　　　　　　　|
SALIX PHARMACEUTICALS, LTD.　　　　　　|
CAROLYN J. LOGAN, and ADAM C.　　　　　|
DERBYSHIRE,　　　　　　　　　　　　　　　|
　　　　　　　　　　　　　　　　　　　　　　|
　　　　　　　　　Defendants.　　　　　　　　|
---------------------------------------------------------------X

WOOD, U.S.D.J.:

　　Two similar, putative securities fraud class actions against Salix Pharmaceuticals, Ltd. and certain of its officers and directors (collectively "Defendants") are currently before this Court. The two actions are *Woburn Retirement System* ("*Woburn*") *v. Salix Pharmaceuticals, Ltd*, 14-CV-8925, and *Bruyn v. Salix Pharmaceuticals, Ltd*, 14-CV-9226. In both actions,

1

Plaintiffs allege that Salix materially misled the public by deliberately making false or misleading statements, or by failing to disclose facts to correct such misleading statements. Both actions claim that these statements artificially increased the price of Salix securities.

Several individuals or groups have moved to consolidate the two actions and to be appointed as lead plaintiff of the consolidated class. Each movant also seeks to have its counsel appointed lead counsel. For the reasons stated below, the Court GRANTS the motions to consolidate the actions; appoints Pentwater Funds as lead plaintiff; and appoints Bernstein Litowitz Berger & Grossmann LLP as lead counsel for the consolidated class.

I.    BACKGROUND

*A. The Complaints*

Salix is a pharmaceutical company that focuses on treatments for digestive diseases and disorders. (*Woburn* Compl. [*Woburn* ECF No. 1] at ¶ 2). Its top-selling drug is Xifaxan, an antibiotic used to treat "traveler's diarrhea" as well as a "liver disorder that impairs brain function." (*Id.*)

On November 7, 2014, Plaintiff Woburn Retirement System filed the *Woburn* class action "on behalf of all persons or entities who purchased . . . publicly-traded securities of Salix . . . between November 8, 2013 and November 6, 2014." (*Id.* ¶ 1). Woburn alleges that "Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Salix securities." (*Id.* ¶ 58). On November 20, 2014, George Bruyn filed the *Bruyn* action on behalf of the same individuals, (*Bruyn* Compl. [*Bruyn* ECF No. 2] at ¶ 1), and alleged the same claims against Salix, (*id.* ¶ 6).

### B.  The Lead Plaintiff and Consolidation Motions

On January 6, 2015, nine parties filed motions seeking appointment as lead plaintiff.  *See* [*Woburn* ECF Nos. 3, 5, 8, 11, 14, 17, 20, 22, 25].  Five of those parties have since withdrawn their motions, *see* [*Woburn* ECF Nos. 29, 33, 36, 37]; *see also* (Pentwater Reply Mem. [*Woburn* ECF No. 54] at 1 n.2) ("[C]ounsel for Fort Lauderdale has informed counsel for the Pentwater Funds that Fort Lauderdale . . . now supports the Pentwater Funds' application to serve as Lead Plaintiff."); four movants remain: (1) Pentwater Funds ("Pentwater")—a group of five related private investment funds; (2) Leo Fund Managers Ltd. and State-Boston Retirement System ("Leo"); (3) Ernest Harvill; and (4) George Chan.[1]  Based on the losses each movant alleged, Pentwater Funds suffered the greatest financial loss, totaling $61,368,262.  (Pentwater Mem. in Further Supp. [*Woburn* ECF No. 42] at 1).  Leo claimed the next-highest losses, totaling $21,507,855.  (Leo Mem. in Further Supp. [*Woburn* ECF No. 44] at 23).

All remaining movants also seek to consolidate the *Woburn* and *Bruyn* actions.  *See, e.g.*, (Pentwater Mem. in Further Supp. 11); (Leo Mem. in Further Supp. 1).

## II.  CONSOLIDATION

### A.  Legal Standard

Federal Rule of Civil Procedure 42(a) provides that a court may consolidate actions that "involve a common question of law or fact."  Fed. R. Civ. P. 42(a); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  Consolidation is "a valuable and important tool of judicial administration" that should be "invoked to expedite trial and eliminate unnecessary

---

[1] Because the majority of this Opinion focuses on arguments made against Pentwater's adequacy to serve as lead plaintiff, the remainder of this Opinion will separate Pentwater from the other movants.  All movants other than Pentwater will be referred to as "Competing Movants."

3

repetition and confusion." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (internal quotation marks omitted).

Under Rule 42 and the Private Securities Litigation Reform Act (the "PSLRA"), actions need not be "identical" to allow for consolidation. *Pinkowitz v. Elan Corp., PLC*, Nos. 02-CV-865 et al., 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002) (Knapp, J.). Courts have "broad discretion to determine whether consolidation is appropriate." *Johnson*, 899 F.2d at 1284; *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) (Buchwald, J.). Courts have looked to the particular facts of cases to determine if the anticipated benefits of consolidated actions, such as considerations of judicial economy and unnecessary costs to the parties, "outweigh potential prejudice to the parties." *Kaplan*, 240 F.R.D. at 91; *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (Chin, J.).

B.  *Consolidation is Warranted*

The Court finds that consolidation is appropriate here because the *Woburn* and *Bruyn* actions involve common questions of law and fact. Both suits are putative securities class actions on behalf of all persons who purchased Salix shares between November 8, 2013, and November 6, 2014. (*Woburn* Compl. ¶ 1); (*Bruyn* Compl. ¶ 1). Both actions seek remedies against Salix and several of its senior executives. (*Woburn* Compl. ¶¶ 18–21); (*Bruyn* Compl. ¶¶ 13–15). Both actions allege the same wrongdoing and seek identical relief. Both complaints plead that Defendants "failed to disclose" or made "false and/or misleading statements" concerning: (1) the wholesale inventory of Salix's drugs; (2) Salix's ability to accurately forecast quarterly revenues; and (3) Salix's internal and financial controls. (*Woburn* Compl. ¶¶ 11, 58, 68); (*Bruyn* Compl. ¶ 6). Both suits seek damages for that alleged misconduct under Sections

10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated under the Exchange Act.  (*Woburn* Compl. ¶¶ 72–78); (*Bruyn* Compl. ¶¶ 47–61).

Each complaint alleges that the same questions of law and fact are common to the class. Those questions include: (1) whether Defendants' conduct violated the federal securities laws; (2) whether statements made by Defendants to the investing public misrepresented material facts about the business and operations of Salix; and (3) to what extent the members of the Class have sustained damages.  (*Woburn* Compl. ¶ 61); (*Bruyn* Compl. ¶ 34).

In light of these similarities, the Court finds that *Woburn* and *Bruyn* involve common questions of law and fact, and therefore warrant consolidation.

### III.   APPOINTMENT OF THE LEAD PLAINTIFF

#### A.  The PSLRA Framework

Appointment of a lead plaintiff in securities class action suits is governed by the PSLRA, 15 U.S.C. § 78u-4.  Congress, in enacting the PSLRA, sought to

> prevent lawyer-driven litigation, and to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel. . . .  The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff . . . would be motivated to act like a real client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price.

*Peters v. Jinkosolar Holding Co. Ltd.*, No. 11-CV-7133, 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012) (Oetken, J.) (internal quotation marks and citations omitted).  The procedures defined in the PSLRA for appointing a lead plaintiff serve as the main vehicle for effectuating these goals.  See Craig C. Martin & Matthew H. Metcalf, *The Fiduciary Duties of Institutional Investors in Securities Litigation*, 56 Bus. Law. 1381, 1383 (2001) ("The heart of the PSLRA is

the statutory procedures enacted to determine which party will be allowed to control securities class action litigation as the 'lead plaintiff.'").

Courts are to assign as lead plaintiff the party "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSRLA establishes a rebuttable presumption that the most adequate plaintiff is the party that (1) filed the complaint or made a motion in response to a notice; (2) has the largest financial interest in the relief sought; and (3) otherwise satisfies the requirements of Rule 23. *Id*. § 78u-4(a)(3)(B)(iii)(I). For purposes of appointing a lead plaintiff, the only Rule 23 requirements that must be met are typicality and adequacy. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008) (Marrero, J.); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) (Scheindlin, J.). That presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II).

Courts in this District use a four-factor test to determine which party has the largest financial interest. *See Varghese*, 589 F. Supp. 2d at 394–95. The four factors are:

> (1) the total number of shares purchased during the class period;
> (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
> (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
> (4) the approximate losses suffered.

*Id*. at 395.  The most important factor is financial loss.  *Id*.; *see also Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-CV-7281, 2008 WL 4974839, at *3 (S.D.N.Y. Nov. 24, 2008) (Keenan, J.); *Kaplan*, 240 F.R.D. at 93.

Additionally, "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs." *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *see In re eSpeed, Inc.*, 232 F.R.D. at 99–100; *Malasky v. IAC/Interactivecorp*, No. 04-CV-7447, 2004 WL 2980085, at *4 (S.D.N.Y. Dec. 21, 2004) (Holwell, J.) (citing cases); *see also* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); S. Rep. No. 104-98, at 10–11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff.'").

### B.  *Pentwater is Appointed Lead Plaintiff*

After considering the lead plaintiff motions of all movants, the Court appoints Pentwater to serve as lead plaintiff in this case.

#### i.  Pentwater's Financial Losses

Pentwater states that it suffered losses of $61,368,262—the most of any movant. (Pentwater Mem. in Further Supp. 1).  Its losses are nearly three times greater than those suffered by Leo, the movant with the second-highest losses.  (*Id.*)

      ii.      <u>Pentwater's Typicality and Adequacy Pursuant to Rule 23</u>

<u>Typicality</u>. The typicality requirement of Rule 23(a)(3) is met where "'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Canson v. WebMD Health Corp.*, No. 11-CV-5382, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011) (Keenan, J.) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he Lead Plaintiff's claims do not have to be identical to the other class members' claims." *Id.* (internal quotation marks omitted); *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05-CV-10240 et al., 2007 WL 2230177, at *13 (S.D.N.Y. July 27, 2007) (McMahon, J.).

Here, Pentwater's claims are based on the same legal theory (violations of the Securities Act and Exchange Act) and arise from the same events and course of conduct (Salix's false or misleading statements concerning its wholesale inventory) as the Class's claims. Thus, Pentwater's claims are typical of those of the Class.

<u>Adequacy</u>. The adequacy requirement of Rule 23 is satisfied if the lead plaintiff "fairly and adequately protect[s] the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the requirement to be satisfied, "(1) there should be no conflict between the proposed lead plaintiff and the members of the class, (2) the selected counsel should be qualified, experienced, and able to conduct the litigation, and (3) the lead plaintiff should have a sufficient interest in the outcome to insure vigorous advocacy." *Xianglin Shi v. Sina Corp.*, Nos. 05-CV-2154 et al., 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005) (Buchwald, J.) (internal quotation marks omitted).

Pentwater satisfies the adequacy requirements because (1) no movant has alleged a sufficient conflict between Pentwater and the Class;[2] (2) the selected counsel is qualified;[3] and

---

[2] *See infra* Part III.B.iii.
[3] *See infra* Part IV.

(3) Pentwater has sufficient interest in the outcome of this case because it suffered significant damages from Salix's purported misrepresentations.

Pentwater is an institutional investor, *see* (Pentwater Reply Mem. 1), has suffered the greatest financial loss, and satisfies the typicality and adequacy requirements of Rule 23.  It is therefore the presumptive lead plaintiff.  *See City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 296–97 (S.D.N.Y. 2010) (Buchwald, J.).

iii.  Rebuttable Presumption

The presumption in favor of appointing Pentwater as lead plaintiff may be rebutted if a member of the purported class can prove that Pentwater "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [it] incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Competing Movants have put forward six arguments they claim rebut the presumption in favor of appointing Pentwater as lead plaintiff.  The Court finds none of these arguments persuasive.

(1) Pentwater's Involvement in the Allergan-Salix Proposed Merger.  Competing Movants assert that Pentwater sought to prevent Allergan Inc., a pharmaceutical company, from acquiring Salix—a move that allegedly diminished Salix's value.  (Leo Mem. in Further Supp. 21–22).  Pentwater owned a significant stake in Allergan at the time.  (*Id.* at 6).  Competing Movants claim that Pentwater is subject to unique defenses because its attempt to prevent the merger contributed to the harm suffered by the Class.  (*Id.* at 20–21).

According to Competing Movants, Valeant Pharmaceuticals International Inc. was interested in acquiring Allergan.  *See* (*Id.* at 6–7).  Allergan attempted to fend off Valeant by seeking to acquire Salix.  (*Id.* at 7).  Pentwater allegedly sought to prevent Allergan from

9

acquiring Salix, favoring Valeant's acquisition of Allergan instead. (*Id.* at 7–9). Competing Movants claim that Pentwater's opposition to the Allergan-Salix merger contributed to the proposed merger's collapse. (*Id.* at 9–10). When investors learned of the collapse, Salix's stock price declined. (*Id.*)

Even assuming all of the above facts are true, however, they do nothing to rebut the presumption that Pentwater is the most adequate lead plaintiff. Any involvement Pentwater may have had in the failed Allergan-Salix merger is wholly unrelated to any financial loss Pentwater allegedly suffered as a result of Salix's false or misleading statements. *In re Bristol Myers Squibb Company Securities Litigation*, 586 F. Supp. 2d 148 (S.D.N.Y. 2008) (Crotty, J.), relied on by Competing Movants, is not to the contrary.

*In re Bristol Myers* was a securities-fraud class action challenging the adequacy of public disclosures made by Bristol-Myers, a pharmaceutical company, concerning its attempts to settle patent litigation with Apotex, another pharmaceutical company. According to the court, "[t]he gravamen of Plaintiffs' Amended Complaint is that Bristol-Myers failed to disclose that the Company had agreed to relinquish certain material legal rights under its settlement agreements with Apotex and failed to disclose that it had entered into 'secret' oral side agreements related to the Apotex litigation." *Id.* at 151. These disclosure failures and secret side agreements eventually led the Department of Justice to commence a criminal investigation of Bristol-Myers. When Bristol-Myers publicly announced the investigation, which it specifically stated was related to the settlement agreement with Apotex, its stock price fell. Plaintiffs contended that the announcement of the criminal investigation "revealed [to investors] that [Bristol-Myers] had not complied with their obligation to present accurate information to regulators regarding the Apotex settlement." *Id.* at 164.

The court characterized Bristol-Myers's announcement of the criminal investigation as a "corrective disclosure," that is, "a revelation of a prior statement's falsity or of a material omission, such that the price of a stock declines as the market absorbs the newly revealed information." *Id.* at 164.  The court noted that "[a] plaintiff may 'successfully allege loss causation by . . . alleging that the market reacted negatively to a corrective disclosure, which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted.'" *Id.* (quoting *In re Merrill Lynch & Co. Research Reports and Sec. Litig.*, No. 02-CV-9690, 2008 WL 2324111, at *5 (S.D.N.Y. June 4, 2008) (Keenan, J.)).

Here, Competing Movants attempt to argue, in essence, that the collapse of the Allergan-Salix merger was a similar "corrective disclosure."  They posit that "when the lead plaintiff who is ultimately appointed herein files a 'consolidated' complaint, it is likely to allege that Class Members suffered damages not only . . . as a result of the price decline of Salix stock that followed the disclosure of Salix's excess inventory problem, but also as a result of the prior price decline that followed the collapse of the Allergan-Salix merger negotiations." (Leo Mem. in Further Supp. 20).

This argument is unavailing.  As the court in *In re Bristol Myers* makes clear, "mere 'allegations of drops in stock price following an announcement of bad news that does not disclose the fraud' are insufficient to plead loss causation." *In re Bristol Myers*, 586 F. Supp. 2d at 164 (quoting *In re Tellium, Inc. Sec. Litig.*, No. 02-CV-5878, 2005 WL 2090254, at *4 (D.N.J. Aug. 26, 2005)).  Bristol-Myers's announcement about the criminal investigation provided investors with information about its allegedly false or misleading disclosures. *See id.* at 164–65.  Because the litigation at issue in that case was focused entirely on those disclosures, it was appropriate for the court to view the announcement as a corrective disclosure, and thus the

11

announcement was a sufficient ground for alleging loss causation.  That is not so in the instant case.

Here, the collapse of the Allergan-Salix merger provided no information to investors about any problems with Salix's inventory or the financial disclosures at issue in this case. Competing Movants offer several news articles stating that the proposed merger collapsed, at least in part, because of Salix's inventory issues, *see, e.g.*, Olivia Oran & Nadia Damouni, *Salix inventory issues sink deal with Allergan*, Reuters, Nov. 6, 2014, http://www.reuters.com/article/2014/11/07/us-salixpharmaceuticals-results-idUSKBN0IQ2LN20141107; Liz Hoffman & Jonathan D. Rockoff, *Salix Shares Plunge as Accounting Revision Showed Weak Drug Sales*, Wall St. J., Nov. 6, 2014, http://www.wsj.com/articles/salix-shares-plunge-as-accounting-revision-showed-weak-drug-sales-1415321484, but all of those articles were published *after* Salix had already publicly announced its inventory issues.[4]  Competing movants have provided the Court with no evidence that Salix's alleged fraud was disclosed in any way prior to that announcement.

Therefore, the collapse of the Allergan-Salix merger did not disclose the fraud at issue here.  Any decline in Salix's value prior to Salix's announcement about its inventory—including any decline related to the collapse of the Allergan-Salix merger—cannot be linked to the allegedly false or misleading statements at issue in this litigation.  It thus cannot be used to allege loss causation, and for that reason Pentwater's role in the collapse, if any, has no bearing on its adequacy to represent class members in the instant lawsuit.

---

[4] The collapse of the Allergan-Salix merger was reported by the press around October 3, 2014.  *See* David Welch & Jeffrey McCracken, *Salix Said in Talks to Sell to Actavis as Allergan Fades*, Bloomberg, Oct. 3, 2014, http://www.bloomberg.com/news/articles/2014-10-02/salix-said-in-talks-to-sell-to-actavis-as-allergan-fades.  Salix disclosed its understated inventory over a month later, on November 5, 2014.  *See* (Stocker Decl., Ex. V-1 [ECF No. 47-23]); (Stocker Decl., Ex. V-2 [ECF No. 47-24]).

(2) *Pentwater's Reliance on Salix's Statements*.  Competing Movants argue that Pentwater is subject to unique defenses because it did not rely on Salix's allegedly false or misleading statements in deciding to purchase Salix stocks.  They claim that Pentwater purchased Salix stock only as a hedge against its significant position in Allergan.  *See* (Leo Mem. in Further Supp. 21–22); (Harvill Mem. in Further Supp. [ECF No. 38] at 5–8).

Assuming, *arguendo*, the truth of these allegations, this also fails to rebut the presumption in favor of Pentwater.  Investment strategies intended to mitigate risk do not render a movant atypical or inadequate.  *See In re SLM Corp. Sec. Litig.*, No. 08-CV-1029, 2012 WL 209095, at *9 (S.D.N.Y. Jan. 24, 2012) (Patterson, J.) (deciding that the "loss mitigation or trading strategies" did not render the lead plaintiff in that case atypical); *In re Imax Sec. Litig.*, No. 06-CV-6128, 2011 WL 1487090, at *7 (S.D.N.Y. Apr. 15, 2011) (Buchwald, J.) (holding that the use of a merger arbitrage investment strategy does not subject a presumptive lead plaintiff to a unique defense and therefore does not rebut the presumption of adequacy); *see also Basic, Inc. v. Levinson*, 485 U.S. 224, 246–47 (1988) ("[I]t has been noted that it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?" (internal quotation marks omitted)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 347 (S.D.N.Y. 2009) (Scheindlin, J.) ("[C]ourts routinely appoint hedge funds . . . as lead plaintiffs."); *In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 108 (D. Conn. 2006) ("[H]edge funds have been selected as lead plaintiff in other securities fraud cases and many courts have concluded that the fact that a candidate for lead plaintiff engaged in day-trading does not necessarily render that individual or entity atypical or inadequate at representing the class, reasoning 'where the public market of a quoted security is

polluted by false information . . . all types of investors are injured.'" (quoting *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 124 (S.D.N.Y. 2001) (Brient, J.))).

Even if Pentwater purchased Salix stock as a hedge against its other investments, it nonetheless did so based on an understanding of Salix's value at the time of sale. That value was based, at least in part, on the statements and filings that Pentwater and others allege were false or misleading. Accordingly, Pentwater relied on Salix's valuation statements when it purchased Salix stock, even if it did so as a hedge, and thus is not subject to unique defenses.

(3) Pentwater's Conflict of Interest. Competing Movants contend that Pentwater has a conflict of interest because it currently owns stock in both Salix and Valeant. Valeant recently announced an agreement to acquire Salix. In light of that agreement, Competing Movants allege that Pentwater has a "disabling conflict of interest" because it "has a financial interest in seeing that the instant litigation is resolved quickly in order to maximize [its] own investment in Valeant." (Harvill Ltr. [ECF No. 62] at 2–3). However, several courts have appointed lead plaintiffs despite their ownership in a corporate defendant. *See, e.g.*, *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003) ("The Second Circuit . . . has held that there is no 'conflict of interest between those who have retained their . . . shares and those who have since sold them.'" (quoting *Herbst v. Int'l Tel. & Tel. Corp.*, 495 F.2d 1308, 1314 (2d Cir. 1974))).

In *In re Cendant Corp. Litigation,* 264 F.3d 201 (3d Cir. 2001), the Third Circuit rejected "the general assertion that a lead plaintiff who retains a substantial investment in a defendant corporation cannot adequately represent a class in a lawsuit against that corporation because this lead plaintiff will naturally be conflicted between trying to get maximum recovery for the class and trying to protect its ongoing investment in the corporation." *Id.* at 243. It noted that

14

Congress indicated in the PSLRA that it prefers institutional investors to serve as lead plaintiffs, and must have done so understanding that "an institutional investor with enormous stakes in a company is highly unlikely to divest all of its holdings in that company, even after a securities class action is filed in which it is a class member." *Id.* at 244. Accordingly, the court held that "the simple fact that the institutional investors who comprise Lead Plaintiff retained [the defendant's] stock . . . is not nearly enough" to cause a conflict of interest. *Id.* Competing Movants' contentions rely on the same assertion rejected by the Third Circuit—that Pentwater will be incentivized to seek less than a maximum recovery for the class to protect its interests in both Salix and Valeant—and this Court rejects them for the same reason.

(4) <u>Pentwater's Organizational Structure</u>. Competing Movants claim that Pentwater is inadequate because it lacks a legal department or active management. (Leo Mem. in Further Supp. 12–13). The Court disagrees. A lack of an in-house legal department does not suffice to rebut the presumption of Pentwater's adequacy. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 417–18 (S.D.N.Y. 2004) (Sweet, J.). Pentwater notes that Pentwater Capital, the common investment manager for Pentwater Funds, maintains a staff of thirty-two individuals in the United States, and employs four experienced and well-credentialed attorneys. *See* (Pentwater Reply Mem. 4). Pentwater further attests that Pentwater Capital "is dedicated to assisting the Pentwater Funds in the oversight and management of the litigation." (*Id.* at 4–5); *see also* (Silk Decl., Ex. A [ECF No. 56-1] at ¶ 9). The Court finds Pentwater's assertions about its ability to oversee this lawsuit credible and holds that its management and legal structure are sufficient to adequately represent class members.

(5) <u>Authority of David Zirin</u>. Competing Movants assert that David Zirin, Pentwater Capital's Chief Operating Officer, and a director who sits on the boards of four of the five

Pentwater funds, lacks the authority to sign the PSLRA certification on behalf of Pentwater. The PSLRA requires "[e]ach plaintiff seeking to serve as a representative party on behalf of a class [to] provide a sworn certification . . . personally signed by such plaintiff and filed with the complaint, that . . . states that the plaintiff has reviewed the complaint and authorized its filing." 15 U.S.C. § 78u-4(a)(2)(A). Pentwater submitted a PSLRA-required certification that explicitly states that Zirin is authorized to sign the certification on behalf of each Pentwater fund. *See* (Silk Decl., Ex. A [ECF No. 23-1] at 1); (Silk Decl. Ex. A [ECF No. 56-1] at ¶ 8). "Nothing more is required to establish the signer's authority." *In re Smith Barney Transfer Agent Litig.*, No. 05-CV-7583, 2006 WL 991003, at *5 (S.D.N.Y. Apr. 17, 2006) (Pauley, J.).

(6) Allegations Against Pentwater Directors. Competing Movants contend that certain Pentwater directors cannot be effective fiduciaries of the class because these directors, or organizations for which they work, have been sued for, *inter alia*, breach of fiduciary duty. *See* (Leo Mem. in Further Supp. 17–20). However, mere allegations of wrongdoing, without a finding established on the record, are insufficient to rebut Pentwater's presumption of adequacy. *See In re Cendant Corp.*, 264 F.3d at 270 ("Allegations of impropriety are not proof of wrongdoing. If they were, then any class member (or lawyer seeking to be appointed lead counsel) could disable any presumptive lead plaintiff by making unsupported allegations of impropriety."); *Pirelli*, 229 F.R.D. at 416 (rejecting an adequacy challenge because the movant "d[id] not demonstrate that any of the underlying wrongdoing was actually proven or otherwise established on the record"). Competing Movants have alleged no such findings.

Accordingly, Competing Movants have failed to rebut the presumption in favor of appointing Pentwater as lead plaintiff.[5]

---

[5] In addition, Leo seeks leave to conduct limited discovery against Pentwater. *See* (Leo Disc. Mot. [ECF No. 51]). The PSLRA allows such discovery only if a movant "first demonstrates a reasonable basis for a finding

**IV.     APPOINTMENT OF LEAD COUNSEL**

The PSLRA provides that the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court has discretion to interfere with lead plaintiff's selection of lead counsel "when warranted to protect the interests of the class." *Teran v. Subaye, Inc.*, Nos. 11-CV-2614 et al., 2011 WL 4357362, at *9 (S.D.N.Y. Sept. 16, 2011) (Buchwald, J.) (noting that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention" (internal quotation marks omitted)). When making the decision to approve proposed lead counsel, courts in the Second Circuit have emphasized the counsel's experience. *See, e.g.*, *Varghese*, 589 F. Supp. 2d at 398 (considering proposed counsel's "extensive experience in prosecuting securities fraud actions" before approving the lead plaintiff's selection); *Xianglin Shi*, 2005 WL 1561438, at *5 (same); *In re Elan Corp. Sec. Litig.*, No. 02-CV-865, 2002 WL 31720410, at *5 (S.D.N.Y. Dec. 3, 2002) (Maas, Mag. J.) (same).

Pentwater has selected Bernstein Litowitz Berger & Grossmann LLP as lead counsel. Bernstein Litowitz has extensive experience in the area of securities litigation and class actions, and has obtained five of the ten largest securities recoveries in history. *See* (Silk Decl., Ex. F [ECF No. 23-6] at 1–2); *see also, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, No. 02-CV-03288 (S.D.N.Y.) ($6.19 billion recovery); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,

---

that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv).

Leo argues that Pentwater's interest in Salix and Allergan, as well as Zirin's authority to execute Pentwater's PSLRA certification, must be further investigated to determine whether Pentwater can serve as an adequate lead plaintiff. However, the Court has already rejected the theories on which both of these assertions rest. *See supra* Part III.B.iii. Therefore, further discovery into these matters would serve no purpose. It follows that Leo has failed to demonstrate a "reasonable basis" for limited discovery and for that reason, the Court denies Leo's request.

No. 09-MD-2058 (S.D.N.Y.) ($2.43 billion recovery); *In re Cendant Corp. Sec. Litig.*, No. 98-1664 (D.N.J.) ($3.3 billion recovery).

The Court finds that Bernstein Litowitz has the requisite experience necessary to serve as lead counsel, and thus will be able to effectively prosecute the consolidated action.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS the motion to consolidate the actions, *Woburn Retirement System v. Salix Pharmaceuticals, Ltd*, 14-CV-8925, and *Bruyn v. Salix Pharmaceuticals, Ltd*, 14-CV-9226.  The Court APPOINTS Pentwater Funds as lead plaintiff, and Bernstein Litowitz Berger & Grossman LLP as lead counsel.

A Rule 16 Conference shall take place on April 7, 2015 at 2:00p.m.
Every pleading filed in the consolidated action shall bear the following caption:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re SALIX PHARMACEUTICALS, LTD

This Document Relates To:
14-CV-8925

The Clerk of the Court is respectfully directed to terminate the following motions:

[*Woburn* ECF No. 3]; [*Woburn* ECF No. 5]; [*Woburn* ECF No. 8]; [*Woburn* ECF No. 11];

[*Woburn* ECF No. 14]; [*Woburn* ECF No. 17]; [*Woburn* ECF No. 8]; [*Woburn* ECF No. 20];

[*Woburn* ECF No. 22]; [*Woburn* ECF No. 25]; [*Woburn* ECF No. 51].

SO ORDERED.

Dated: New York, New York
       March 23, 2015

                                        /s/
                              KIMBA M. WOOD
                              United States District Judge