CAHILL GORDON & REINDEL LLP

EIGHTY PINE STREET

NEW YORK, NY 10005-1702

| | | TELEPHONE: (212) 701-3000 | | |
|---|---|---|---|---|

FLOYD ABRAMS
L. HOWARD ADAMS
ROBERT A. ALESSI
HELENE R. BANKS
ANIRUDH BANSAL
DAVID L. BARASH
LANDIS C. BEST
BRADLEY J. BONDI
SUSAN BUCKLEY
KEVIN J. BURKE
JAMES J. CLARK
BENJAMIN J. COHEN
SEAN M. DAVIS
STUART G. DOWNING
ADAM M. DWORKIN
ANASTASIA EFIMOVA
JENNIFER B. EZRING
JOAN MURTAGH FRANKEL
JONATHAN J. FRANKEL

BART FRIEDMAN
PIERRE M. GENTIN
CHARLES A. GILMAN
JASON M. HALL
WILLIAM M. HARTNETT
CRAIG M. HOROWITZ
DOUGLAS S. HOROWITZ
TIMOTHY B. HOWELL
DAVID G. JANUSZEWSKI
ELAI KATZ
THOMAS J. KAVALER
BRIAN S. KELLEHER
DAVID N. KELLEY
RICHARD KELLY
CHÉRIE R. KISER*
EDWARD P. KRUGMAN
JOEL KURTZBERG
TED B. LACEY
MARC R. LASHBROOK

TELEPHONE: (212) 701-3000
WWW.CAHILL.COM

1990 K STREET, N.W.
WASHINGTON, DC 20006-1181
(202) 862-8900

CAHILL GORDON & REINDEL (UK) LLP
24 MONUMENT STREET
LONDON EC3R 8AJ
+44 (0)20 7920 9800

WRITER'S DIRECT NUMBER

(212) 701-3403

ALIZA R. LEVINE
JOEL H. LEVITIN
GEOFFREY E. LIEBMANN
ANN S. MAKICH
JONATHAN I. MARK
BRIAN T. MARKLEY
WILLIAM J. MILLER
NOAH B. NEWITZ
MICHAEL J. OHLER
DAVID R. OWEN
JOHN PAPACHRISTOS
LUIS R. PENALVER
KIMBERLY PETILLO-DÉCOSSARD
MICHAEL W. REDDY
OLEG REZZY
JAMES ROBINSON
THORN ROSENTHAL
TAMMY L. ROY

JONATHAN A. SCHAFFZIN
JOHN SCHUSTER
MICHAEL A. SHERMAN
DARREN SILVER
JOSIAH M. SLOTNICK
RICHARD A. STIEGLITZ JR.
SUSANNA M. SUH
ANTHONY K. TAMA
JONATHAN D. THIER
JOHN A. TRIPODORO
GLENN J. WALDRIP, JR.
HERBERT S. WASHER
MICHAEL B. WEISS
S. PENNY WINDLE
DAVID WISHENGRAD
COREY WRIGHT
JOSHUA M. ZELIG
DANIEL J. ZUBKOFF

*ADMITTED IN DC ONLY

January 13, 2017

Re:   _In re Salix Pharmaceuticals, Ltd._, Case No. 14 Civ. 8925 (KMW)

Dear Judge Wood:

Pursuant to your January 4, 2017 Order (ECF 184), I write on behalf of Defendant Salix Pharmaceuticals, Ltd. ("Salix") to provide an update on the intervening events relevant to the two issues presented for resolution by the Court.[1]

## Issue 1:  Plaintiffs' Request for a Declaration of Waiver of Privilege

Since the parties exchanged preliminary privilege logs on December 8, 2016, there has been a good deal of relevant activity that Plaintiffs have failed to bring to the Court's attention.

- By letters dated December 22, 2016 and January 12, 2017, Salix produced to Plaintiffs 1,848 documents that had at one time been categorized as part of Category 16.

- Cadwalader, which has been handling the productions, will be producing an updated privilege log next week, along with any remaining production of Category 16 documents.

- All documents provided to the SEC that fall within Plaintiffs' requests have been produced to Plaintiffs.  Category 16 now contains less than thirty documents provided to Ernst & Young ("E&Y") for which Salix continues to assert attorney work product protection.  Plaintiffs do not contest that these documents qualify as attorney work product. They assert only that the protection has been waived by disclosure to E&Y.

---

[1] The following correspondence with the Court frames the issues: Dec. 15, 2016 Letter from C. Gilman (ECF 170); Dec. 16, 2016 Letter from S. Graziano (ECF 173); Dec. 19, 2016 Letter from C. Gilman (ECF 174); Dec. 19, 2016 Letter from C. Kasmar (ECF 175); Dec. 28, 2016 Letter from S. Graziano (ECF 178).

CAHILL GORDON & REINDEL LLP

Plaintiffs are incorrect that the work product protection is waived by disclosure to E&Y. The attorney work product doctrine protects documents prepared in anticipation of litigation, even if those documents are shared in a confidential relationship with outside auditors. *Int'l Design Concepts, Inc.* v. *Saks Inc.*, 2006 WL 1564684, at *2-*3 (S.D.N.Y. June 6, 2006) (Castel, J.) (finding that investigation documents prepared by law firm retained by the Audit Committee were protected by the work product doctrine even if shared with company's outside auditor).

Plaintiffs ignore that work product protection arises from the *creation* of documents in anticipation of litigation, and instead argue that the *disclosure* must be made in anticipation of litigation. *See* ECF 173 at 3. That is not the law. *See Int'l Design Concepts*, 2006 WL 1564684, at *3 (upholding work product protection for document created in anticipation of litigation where disclosure to auditor was for preparation of its audit report); *Merrill Lynch & Co.* v. *Allegheny Energy, Inc.*, 229 F.R.D. 441, 448 (S.D.N.Y. 2004) (Baer, J.) (upholding work product protection for internal investigation reports created in anticipation of litigation where disclosure to outside auditor was to "inform its audit work"); *In re Honeywell Int'l, Inc. Sec. Litig.,* 230 F.R.D. 293, 300 (S.D.N.Y. 2003) (Pauley, J.) (disclosure for the "purpose of PWC's audits" did not waive work product protection). Disclosure of work product to a third party does not constitute a waiver of protection where disclosure "was not inconsistent with maintaining secrecy against opponents." *Benedict* v. *Amaducci*, 1995 WL 23555, at 2 (S.D.N.Y. Jan. 20, 1995) (Wood, J.).[2] The client – auditor relationship is independent and confidential, not adversarial.[3]

Plaintiffs argue that all documents in Category 16 disclosed to E&Y should be produced because in testimony before the SEC Ms. Logan criticized the Audit Committee investigation. *See* ECF 178 at 1. Logan has not asserted any advice of counsel defense in this action, and has specifically disclaimed any intention to do so. Plaintiffs have not taken Logan's deposition in this action, but argue that her SEC testimony "waives any privilege over the [Audit Committee] investigation." *Id.* It does not, and cannot. Logan was not associated with Salix for almost two years at the time of her SEC testimony. She did not have the authority to waive Salix's privilege (even if she wanted to, and she does not). *See Fitzpatrick* v. *Am. Int'l Grp.,* 272 F.R.D. 100, 108 (S.D.N.Y. 2010) (Dolinger, M.J.) ("federal courts have rejected the notion that a former director or officer, even if previously vested with the power to exercise the privilege while a corporate official (presumably only for corporate purposes), may subsequently claim any authority to exer-

---

[2] In their December 16 letter (ECF 173 at 3), Plaintiffs misleadingly inserted the word "disclosure" in a purported quotation from *In re Pfizer Inc. Sec. Litig.*, 1993 WL 561125, at *3 (S.D.N.Y. Dec. 23, 1993) (Buchwald, M.J.) discussing the "the primary motivational purpose behind the *creation* of the document." Plaintiffs also rely on *Medinol, Ltd.* v. *Boston Scientific Corp.*, 214 F.R.D. 113 (S.D.N.Y.2002) (Hellerstein, J.). But that case "appears to be directly in conflict with [*United States* v. *Adlman*, 134 F.3d 1194 (2d Cir.1998)]," *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.* v. *Alcoa S.S. Co.*, 2006 WL 278131, at *2 (S.D.N.Y. Feb. 2, 2006) (Francis, M.J.), and "has been almost uniformly rejected." *Vacco* v. *Harrah's Operating Co.*, 2008 WL 4793719, at *6 (N.D.N.Y. Oct. 29, 2008) (Peebles, M.J.).

[3] *See Merrill Lynch*, 229 F.R.D. at 447 (work product waived only where "tangible adversarial relationship" and finding that an "auditor's need to scrutinize and investigate a corporation's records and bookkeeping practices simply is not the equivalent of an adversarial relationship contemplated by the work product doctrine.... A business and its auditor can and should be aligned insofar as they both seek to prevent, detect, and root out corporate fraud"); *U.S.* v. *Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010) (rejecting argument that auditor was potential adversary of its audit client).

CAHILL GORDON & REINDEL LLP

cise or waive the privilege at all"). That Logan might disagree with an investigation that led to her separation from the company is understandable. But that does not waive a privilege of the corporation that is not hers to waive. *See United States* v. *Wells Fargo Bank N.A.*, 2015 WL 3999074, at *2 (S.D.N.Y. June 30, 2015) (Furman, J.) (rejecting a similar argument made by a plaintiff where co-defendant asserted an advice-of-counsel defense).

Plaintiffs' request for a declaration that Salix's attorney client privilege and work product protection have been waived should be denied.

**Issue 2:** <u>**Plaintiffs' Request to Depose Opposing Trial Counsel**</u>

Plaintiffs demanded the deposition of my partner and their opposing trial counsel, Brad Bondi (formerly of Cadwalader, which conducted the Audit Committee investigation), "to confirm . . . that he approached the investigation without bias and conducted it competently" and "to discuss his experience, background and the integrity and reliability of his investigation." ECF 173 at 2, 3. I responded that "Salix can stipulate that Mr. Bondi approached the Audit Committee investigation without bias and conducted it competently," ECF 174 at 3, and that, if Plaintiffs preferred, Salix would respond affirmatively to interrogatories as suggested by Justice Sonia Sotomayor in *In re Subpoena Issued to Dennis Friedman, Esq.*, 350 F.3d 65, 72 (2d Cir. 2003).

Plaintiffs refused a stipulation, and pressed for Mr. Bondi's deposition on "all non-privileged aspects of the investigation, including his true motivations . . . ." ECF 178 at 2. In doing so, Plaintiffs failed to inform Your Honor that on December 23 they had served 18 interrogatories and 36 requests for admission that cover and re-cover these exact issues. *See* Exhibits A & B hereto. The interrogatories seek: (i) "the scope and topics of the internal investigation by the Board and/or the Audit Committee . . . including the scope of Mr. Bondi's work concerning the investigation"; (ii) "the procedures that Mr. Bondi followed and the actions that he took in order to ensure that the investigation by the Board and/or the Audit Committee regarding Salix's inventory levels was (a) thorough and (b) fair and independent"; and (iii) "the procedures that Mr. Bondi followed and the actions that he took in order to ensure that the conclusions of the investigation by the Board and/or the Audit Committee . . . were accurate." Interrogatories 16-18.

Yesterday, Plaintiffs took the deposition of the Chair of the Salix Audit Committee, who testified about the investigation and that it was thorough and conducted in good faith. He also testified to the information provided by Salix to the SEC. Plaintiffs' request to depose Mr. Bondi is a side-show. Plaintiffs have not noticed or taken the depositions of most members of the Board and the Audit Committee, or others who worked on the investigation and are not opposing counsel in this lawsuit. Plaintiffs have not yet taken the depositions of Defendants Derbyshire and Logan. Depositions of opposing trial counsel are most disfavored. *See* ECF 170 at 1 & n.1. There are far less disruptive ways in which to obtain discovery. *See* ECF 170 at 2 & n.2. In seeking to employ every tool in the federal discovery arsenal, document demands, interrogatories, requests for admission and a deposition of opposing trial counsel personally, Plaintiffs have crossed the line. The subpoena demanding Mr. Bondi's deposition should be quashed.

Respectfully submitted,

Charles A. Gilman

CAHILL GORDON & REINDEL LLP

Hon. Kimba Wood
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Via Email

cc:     All counsel of record

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| ———————————————————— | ) | |
| | ) | Case No. 14 Civ. 8925(KMW) |
| IN RE SALIX PHARMACEUTICALS, LTD. | ) | |
| | ) | |
| ———————————————————— | ) | |

**LEAD PLAINTIFFS' SECOND SET OF**
**INTERROGATORIES TO DEFENDANTS**

Pursuant to Federal Rules of Civil Procedure 26 and 33, and the Local Civil Rules of the United States District Court for the Southern District of New York, Lead Plaintiff, by and through its undersigned attorneys, propound the following interrogatories upon Defendants (as defined below), and demand that answers be submitted, under oath, within thirty (30) days after the service of the interrogatories, at the offices of Bernstein Litowitz Berger & Grossmann LLP, 1251 Avenue of the Americas, 44th Floor, New York, New York, 10020, or such other place as is mutually agreed.

**DEFINITIONS**

1.      "Bondi" means Mr. Bradley J. Bondi.

2.      "Concern" or "Concerning" means consisting of, constituting, describing, discussing, referring to, relating to, reflecting, evidencing, addressing, or being in any way legally, logically, or factually connected with the matter discussed.

3.      "CORD" means Cord Logistics Inc., including any and all successors, affiliates, and subsidiaries.

4.      "Defendants" means Salix, Carolyn J. Logan, and Adam C. Derbyshire.

5.      "Document" or "documents" is intended to have the broadest possible meaning under Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, all

1

written or graphic matter of any kind and description however produced or reproduced, whether draft or final, original or reproduction, including any written or graphic information depicted, retained, or retrievable from digital media, including but not limited to computer files and email, and all tangible things within the scope Rule 34.

6.      "Employee" means any Person who at any time during the Relevant Time Period acted or purported to act on behalf of an entity, or another Person or Persons, including all present and former officers, directors, executives, partners, principals, managers, staff personnel, accountants, agents, representatives, in-house attorneys, independent contractors, advisors, and consultants of such entity, Person, or Persons.

7.      "Governmental Entity" means any agency or instrumentality of federal, state, or local government, including multijurisdictional agencies and instrumentalities, including the SEC.

8.      "Identify" means to indicate for the relevant Employee their name, title at Salix, tenure at Salix, last known home and business addresses, and counsel, if any; and for the relevant report the title, date, author(s), and recipient(s).

9.      "Person" means a natural person, a group of natural persons acting as individuals, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors, etc.), or any business, legal or governmental entity or association.

10.      "Salix" refers to Defendant Salix Pharmaceuticals Ltd., including any and all predecessors, successors, affiliates, and subsidiaries.

11.      "Salix Drugs" means Xifaxan, Apriso, Glumetza, and Uceris.

12.      "SEC" means the U.S. Securities and Exchange Committee.

2

13.     "You" or "Your" mean the Defendant(s) answering these interrogatories as well each of their respective employees, agents, representatives, attorneys, and accountants, or anyone else operating under the Defendant(s)' direction or control.

## INSTRUCTIONS

1.      If the attorney-client privilege, attorney work-product doctrine, or any other privilege or immunity from discovery is claimed as to any response called for by these Interrogatories, you must provide the information required by Fed. R. Civ. P. 26(b)(5).

2.      Pursuant to Fed. R. Civ. P. 26(e), these interrogatories are to be regarded as continuing in nature.  You are therefore requested to provide, by way of supplemental answers or amendments thereto, such additional information as You, or any person on Your behalf, may hereinafter obtain that will augment or modify the answers now given.

3.      If, after the exercise of due diligence to secure all responsive information, You cannot answer an interrogatory in whole or in part, answer to the extent possible, specify the bases for Your inability to answer the remainder, state whatever knowledge or information You have concerning the unanswered portion, and detail what You did to attempt to secure the unknown additional information.

4.      The terms "all" and "each" shall be construed as all and each.

5.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each discovery request all responses that might otherwise be construed to be outside of its scope.

6.      The use of the singular form of any word includes the plural and vice versa.

7.      The past tense shall include the present tense and vice versa; the word "including" means "including, without limitation."

3

## INTERROGATORIES

**INTERROGATORY NO. 2:**

Please state, for each month between January 1, 2012 and December 31, 2014, the actual wholesale inventory levels (in terms of weeks or months on hand) of each of the Salix Drugs.

**INTERROGATORY NO. 3:**

Please state, for each month between January 1, 2012 and December 31, 2014, the inventory levels (in terms of weeks or months on hand) that CORD held of each of the Salix Drugs.

**INTERROGATORY NO. 4:**

Please state, for each month between January 1, 2012 and December 31, 2014, the inventory levels (in terms of weeks or months on hand) that Salix's customers in the aggregate, other than wholesale customers and CORD, held of each of the Salix Drugs.

**INTERROGATORY NO. 5:**

Please identify all members of the team that conducted or assisted in the internal investigation into Salix's inventory levels, including each such person's role and affiliation.

**INTERROGATORY NO. 6:**

Please identify all reports that the Board and/or the Audit Committee produced concerning the Board's and/or Audit Committee's investigation concerning Salix's inventory levels, including (a) all persons who received drafts of the reports; and (b) all persons who received final versions of the reports.

**INTERROGATORY NO. 7:**

Please identify all persons who were informed of the findings or conclusions of the internal investigation into Salix's inventory levels.

**INTERROGATORY NO. 8:**

Please identify all persons who provided documents, in connection with the internal investigation into Salix's inventory levels, to the team conducting the investigation.

**INTERROGATORY NO. 9:**

Please identify all persons who gave formal or informal interviews, in connection with the internal investigation into Salix's inventory levels, to the team conducting the investigation.

4

**INTERROGATORY NO. 10:**

This Interrogatory is directed to Defendant Logan only:



**INTERROGATORY NO. 11:**

This Interrogatory is directed to Defendant Derbyshire only:



**INTERROGATORY NO. 12:**

Please state the amount of compensation that the Board clawed back from Logan.

**INTERROGATORY NO. 13:**

Please state the amount of compensation that the Board clawed back from Derbyshire.

**INTERROGATORY NO. 14:**

Please state the bases for the Board's decision to claw back compensation from Logan and Derbyshire.

**INTERROGATORY NO. 15:**

Please state the bases for the Board's requests for Logan's and Derbyshire's resignations.

**INTERROGATORY NO. 16:**

Please state the scope and topics of the internal investigation by the Board and/or the Audit Committee into Salix's inventory levels, including the scope of Mr. Bondi's work concerning the investigation.

**INTERROGATORY NO. 17:**

Please state the procedures that Mr. Bondi followed and the actions that he took in order to ensure that the investigation by the Board and/or the Audit Committee regarding Salix's inventory levels was (a) thorough and (b) fair and independent.

**INTERROGATORY NO. 18:**

Please state the procedures that Mr. Bondi followed and the actions that he took in order to ensure that the conclusions of the investigation by the Board and/or the Audit Committee regarding Salix's inventory levels were accurate.

DATED:   December 23, 2016

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

/s/ Salvatore J. Graziano
Salvatore J. Graziano
John Rizio-Hamilton
Katherine M. Sinderson
Adam D. Hollander
Angus F. Ni
1251 Avenue of the Americas, 44th Floor
New York, New York 10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
sgraziano@blbglaw.com
johnr@blbglaw.com
katherinem@blbglaw.com
adam.hollander@blbglaw.com
angus.ni@blbglaw.com

*Lead Counsel for Lead Plaintiff and the*
*Proposed Class*

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SALIX PHARMACEUTICALS, LTD. | Case No. 14 Civ. 8925 (KMW) |

## LEAD PLAINTIFF'S FIRST SET OF REQUESTS
## FOR ADMISSION DIRECTED TO DEFENDANTS

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff PWCM Master Fund Ltd., Pentwater Equity Opportunities Master Fund Ltd., Oceana Master Fund Ltd., Pentwater Merger Arbitrage Master Fund Ltd., and LMA SPC (collectively, "Lead Plaintiff") hereby propounds the following Requests for Admission (the "Requests") upon Defendants Salix Pharmaceuticals Ltd. ("Salix" or the "Company"), Carolyn J. Logan ("Logan"), and Adam C. Derbyshire ("Derbyshire") and demand that Defendants answer these Requests fully, in writing, and under oath, at the offices of Bernstein Litowitz Berger & Grossmann LLP, 1251 Avenue of the Americas, New York, New York 10020 by no later than thirty (30) days from the date of service hereof, or at such other time and place as the parties mutually agree.

## DEFINITIONS

The following definitions shall be used in construing the meaning of these Requests:

1.      "852 report" means reports containing product inventory data, transmitted in Electronic Data Interchange (EDI) format or in equivalent Excel file by a wholesaler, distributor, warehouse, retailer, or third-party vendor.

2.      "Allergan" means Allergan, Inc., including any and all successors, affiliates, and subsidiaries.

3.      "Allergan Letter" means the September 15, 2014 letter from David Pyott of Allergan to Defendant Logan.

4.      "Amerisource Bergen" means Amerisource Bergan Corporation, including any and all successors, affiliates, and subsidiaries.

5.      "Audit Committee" means the Audit Committee of the Salix Board of Directors.

6.      "Bertrand" means William C. Bertrand, Jr.

7.      "Board" means the Salix Board of Directors and any committee or subcommittee thereof.

8.      "Bondi" means Mr. Bradley J. Bondi.

9.      "Cadwalader" means Cadwalader, Wickersham & Taft LLP, including any and all agents and employees.

10.     "Cardinal" means Cardinal Health, Inc., including any and all successors, affiliates, and subsidiaries.

11.     "Class Period" means the period of November 8, 2013 through November 6, 2014, inclusive.

12.     "Communication" or "Communications" refers to any exchange of information by any means of transmission.

2

13.     "Complaint" refers to the Consolidated Class Action Complaint filed in the above-captioned action on May 8, 2015 (ECF No. 82).

14.     "Concerning" means regarding, relating to, referring to, describing, reflecting, evidencing, or constituting.

15.     "CORD" means Cord Logistics Inc., including any and all successors, affiliates, and subsidiaries.

16.     "Defendants" refers to Salix, Carolyn J. Logan, and Adam C. Derbyshire.

17.     "Derbyshire" means Adam Derbyshire.

18.     "EY" means Ernst & Young LLP and any of its present or former employees, officers, directors, board of directors or committees thereof, representatives or agents (including, attorneys, accountants, and advisors), parents, subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, assigns, all other Persons acting, purporting to act, or authorized to act on its behalf.

19.     "Including" means including, but not limited to.

20.     "Logan" means Carolyn Logan.

21.     "McKesson" means McKesson Corporation, including any and all successors, affiliates, and subsidiaries.

22.     "PWC" means PricewaterhouseCoopers LLP, including any and all successors, affiliates, and subsidiaries.

23.     "Quality King" means Quality King Distributors, Inc., including any and all successors, affiliates, and subsidiaries.

24.     "Salix" refers to Defendant Salix Pharmaceuticals Ltd., including any and all successors, affiliates, and subsidiaries.

3

25.     "Salix Drugs" means Xifaxan, Apriso, Glumetza, and Uceris.

26.     "Salix Products" means any and all pharmaceutical products that Salix sells to its wholesaler customers.

27.     "SEC" means the United States Securities and Exchange Commission and any person, employee, agent, or representative acting on its behalf.

28.     "You" and "Your" means the Defendant(s) answering these Requests as well as each of their respective employees, agents, representatives, attorneys and accountants, or anyone else acting under the Defendant's direction or control.

## INSTRUCTIONS

29.     These Requests require You to answer with either an "Admitted" or a "Denied."  If You deny any Request, please state the basis for the denial, including information identifying the specific aspect of the Request You find objectionable or untrue, the reason you find the Request objectionable or untrue, and the facts as you understand them relating to the subject matter of the Request.  Under Rule 36(a)(4) of the Federal Rules of Civil Procedure, when good faith requires that You qualify an answer by answering or denying only part of a Request, the answer must specify the part admitted and qualify or deny the rest.

30.     Under Rule 36(a)(4) of the Federal Rules of Civil Procedure, You may not give lack of information or knowledge as a reason for failure to admit or deny unless You state that You have made a reasonable inquiry and that the information known or readily obtainable by You is insufficient to enable You to admit or deny.

31.     With respect to any claim of privilege not to answer a Request, in whole or in part, specify each admission or part thereof as to which you claim the privilege and set forth the nature of the privilege and the basis for the claim of privilege.

32.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests are to be regarded as continuing in nature.  You are therefore requested to provide, by way of supplemental answers of amendments hereto, such additional information as You, or any Person on Your behalf, may hereinafter obtain that will augment or modify the answers now given.

33.     These Requests are made while expressly reserving and without waiving the right to propound additional requests for admissions or other discovery requests as permitted by any applicable law.

34.     The terms "all" and "each" shall be construed as all and each.

35.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each Request all responses that might otherwise be construed to be outside of its scope.

36.     The use of the singular form of any word includes the plural and vice versa.

37.     The past tense shall include the present tense and vice versa; the word "including" means "including, without limitation."

## REQUESTS

**REQUEST NO. 1:**     Please admit that on or about March 24, 2015, the Board determined that Logan and Derbyshire had each "intentionally engaged in wrongdoing that resulted, or would reasonably be expected to result, in material harm" to Salix.

**REQUEST NO. 2:**     Please admit that Derbyshire's statement during the Q1 2013 earnings conference call concerning the inventory levels of Salix Drugs ("inventories are in that 10- to 12-week range that we like to keep them.") was inaccurate.

**REQUEST NO. 3:**     Please admit that Derbyshire's statement during Q2 2013 earnings conference call concerning the inventory levels of Salix Drugs ("Is the level of inventory on hand

for both products basically in line with what we've seen historically?" Answer – Adam Derbyshire: Yes.") was inaccurate.

**REQUEST NO. 4:**    Please admit that the statement during the Q4 2013 earnings conference call concerning the inventory levels of Salix Drugs ("And, in terms of inventory levels on XIFAXAN, based on the latest run rate or run-rate data, we were right in line with demand, so no changes with XIFAXAN") was inaccurate.

**REQUEST NO. 5:**    Please admit that Derbyshire's statement during the Q1 2014 earnings conference call concerning the inventory levels of Salix Drugs ("Yes, so we would expect by the end of second quarter that, ideally, all of our inventories for all of our products would be in that 10- to 12-week range.") was inaccurate.

**REQUEST NO. 6:**    Please admit that Logan's statements in the Q2 2014 earnings release concerning the inventory levels of Salix Drugs (there were "adjustments in the supply chain as wholesalers managed inventory levels following the acquisitions of Santarus products," and Salix "expect[ed] the situation to normalize during the remainder of the year") were inaccurate.

**REQUEST NO. 7:**    Please admit that Derbyshire's statements during the Q2 2014 earnings conference call concerning the inventory levels of Salix Drugs (including "I think the reality of keeping that three months of inventory is no longer going to be the case," "Currently we expect destocking may continue to a lesser degree in the third quarter and normalize in the fourth quarter," "we would expect [inventory levels] to become more in line in demand in third quarter, and then to normalize in fourth quarter," and "when things do normalize [in the fourth quarter], . . . we can normalize around that eight-week or a little less level. . . . for both Xifaxan and for Apriso") were inaccurate.

**REQUEST NO. 8:**     Please admit that EY determined that Derbyshire's comments during conference calls with analysts and investors during the Class Period concerning the inventory levels of Salix Drugs held by Salix's wholesaler customers were inaccurate.

**REQUEST NO. 9:**     Please admit that the Audit Committee determined that Derbyshire's comments during conference calls with analysts and investors during the Class Period concerning the inventory levels of Salix Drugs held by Salix's wholesaler customers were inaccurate.

**REQUEST NO. 10:**     Please admit that Cadwalader determined that Derbyshire's comments during conference calls with analysts and investors during the Class Period concerning the inventory levels of Salix Drugs held by Salix's wholesaler customers were inaccurate.

**REQUEST NO. 11:**     Please admit that Mr. Bertrand determined that Logan and Derbyshire intentionally engaged in wrongdoing that resulted, or was expected to result, in material harm to Salix.

**REQUEST NO. 12:**     Please admit that Cadwalader reviewed and approved the contents of Salix's November 6, 2014 Form 8-K concerning wholesaler inventory levels of the Salix Drugs.

**REQUEST NO. 13:**     Please admit that EY reviewed and approved the contents of Salix's November 6, 2014 Form 8-K concerning wholesaler inventory levels of the Salix Drugs.

**REQUEST NO. 14:**     Please admit that the Audit Committee reviewed and approved the contents of Salix's November 6, 2014 Form 8-K concerning wholesaler inventory levels of the Salix Drugs.

**REQUEST NO. 15:**     Please admit that the inventory levels of the Salix Drugs set forth in Salix's November 6, 2014 Form 8-K concerning wholesaler inventory levels represented inventory levels at Salix's wholesaler customers, not in Salix's total channel.

7

**REQUEST NO. 16:**     Please admit that the team investigating Salix's inventory levels, including the Board, Salix's outside auditors, and Mr. Bondi and Cadwalader, did not confuse Salix's wholesaler inventory levels with Salix's total-channel inventory levels.

**REQUEST NO. 17:**     Please admit that wholesaler inventory levels of Xifaxan 550 and Apriso were largely constant at approximately 9 months during the first nine months of 2014.

**REQUEST NO. 18:**     Please admit that wholesaler inventory levels of Xifaxan 550 and Apriso were approximately 9 months at the time of Salix's Q1 2014 earnings conference call.

**REQUEST NO. 19:**     Please admit that wholesaler inventory levels of Xifaxan 550 and Apriso were approximately 9 months at the time of Salix's Q2 2014 earnings conference call.

**REQUEST NO. 20:**     Please admit that wholesaler inventory levels of Xifaxan 550 and Apriso were approximately 9 months at the time of Salix's Q3 2014 earnings conference call.

**REQUEST NO. 21:**     Please admit that the Board requested Derbyshire's resignation.

**REQUEST NO. 22:**     Please admit that the Board requested Logan's resignation.

**REQUEST NO. 23:**     Please admit that the termination of Logan's employment by Salix was a result of the investigation by the Board into Salix's wholesaler inventory levels.

**REQUEST NO. 24:**     Please admit that the termination of Derbyshire's employment by Salix was a result of the investigation by the Board into Salix's wholesaler inventory levels.

**REQUEST NO. 25:**     Please admit that, prior to the Allergan Letter, Salix never notified its auditors that any wholesaler had raised a concern about channel stuffing.

**REQUEST NO. 26:**     Please admit that Mr. Bondi advised the Board that it was proper and appropriate to claw back compensation from Logan and Derbyshire.

**REQUEST NO. 27:**     Please admit that the Board's decision to claw back compensation from Logan was appropriate.

**REQUEST NO. 28:**     Please admit that the Board's decision to claw back compensation from Derbyshire was appropriate.

**REQUEST NO. 29:**     Please admit that Logan never sued Salix or the Board concerning the Board's decision to claw back her compensation.

**REQUEST NO. 30:**     Please admit that Derbyshire never sued Salix or the Board concerning the Board's decision to claw back his compensation.

**REQUEST NO. 31:**     Please admit that EY's role as Salix's external auditor did not include auditing or approving statements made during quarterly conference calls with investors and analysts made in connection with Salix's announcements of earnings.

**REQUEST NO. 32:**     Please admit that EY's role as Salix's external auditor did not include auditing or approving the Management Discussion and Analysis section of Salix's annual report filed with the SEC on Form 10-K.

**REQUEST NO. 33:**     Please admit that, prior to Salix's dismissal of PWC as its auditor on or about March 9, 2011, PWC recommended that Salix obtain regular 852 Reports.

**REQUEST NO. 34:**     Please admit that, prior to Salix's dismissal of PWC as its auditor on or about March 9, 2011, PWC recommended that Salix enter into fee-for-service agreements with its wholesaler customers.

**REQUEST NO. 35:**     Please admit that, between 2012 and 2014, Salix did not contact McKesson, Amerisource Bergen, Cardinal, or Quality King to confirm that the wholesaler held inventory levels of 10-12 weeks of the Salix Drugs.

**REQUEST NO. 36:**     Please admit that you never received reports stating that any pharmacy was unable to fill a prescription for Xifaxan because the pharmacy was out of stock of Xifaxan.

DATED:   December 23, 2016

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

/s/ Salvatore J. Graziano
Salvatore J. Graziano
John Rizio-Hamilton
Katherine M. Sinderson
Adam D. Hollander
Angus F. Ni
1251 Avenue of the Americas, 44th Floor
New York, New York 10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
sgraziano@blbglaw.com
johnr@blbglaw.com
katherinem@blbglaw.com
adam.hollander@blbglaw.com
angus.ni@blbglaw.com

*Lead Counsel for Lead Plaintiff and the*
*Proposed Class*

10