*Confidential – Subject to Protective Order*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| IN RE SALIX PHARMACEUTICALS, LTD. | ) ) ) ) ) | Case No. 14 Civ. 8925(KMW) CLASS ACTION |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO COMPEL**

*Confidential – Subject to Protective Order*

## <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND ................................................................................................. 2

ARGUMENT ................................................................................................................... 11

    A.    Salix Has Waived Any Privilege by Disclosing Information Concerning its Investigation to its Independent, Outside Auditor ................................................. 12

    B.    Salix Waived Privilege by Disclosing to the SEC and FINRA ........................... 13

    C.    Salix Waived Privilege by Disclosing Information Concerning its Investigation to Defendant Logan—An Adverse Party Who Is Now Using Her Knowledge to Attack Bondi's Effectiveness, Bias, and Motive ........................... 15

    D.    Defendant Logan's "Ineffective Assistance of Counsel" Argument Waives Privilege ............................................................................................................... 19

    E.    Defendants Should Not Benefit From Attempts to Discredit the Investigation While Simultaneously Relying on Salix's Privilege to Block An Effective Response ............................................................................................................... 21

    F.    Defendants' Factual Assertions Are Irrelevant and Wrong ................................ 24

CONCLUSION ................................................................................................................. 25

*Confidential – Subject to Protective Order*

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bank of America, N.A. v. Terra Nova Insurance Co.*,
  212 F.R.D. 166 (S.D.N.Y. 2002) .................................................................................19, 20

*BristolMyers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
  No. 95 Civ. 8833 (RPP), 1997 WL 801454 (S.D.N.Y. Dec. 31, 1997)..................................20

*Campinas Found. v. Simoni*,
  No. 02 Civ. 3965 BSJKNF, 2005 WL 1006511 (S.D.N.Y. Apr. 27, 2005) ..........................27

*Commodity Futures Trading Commission v. Weintraub*,
  471 U.S. 343 (1985)..................................................................................................................23

*Creditsights, Inc. v. Ciasullo*,
  No. 05 Civ. 9345(DAB)(MHD), 2009 WL 3821441 (S.D.N.Y. Nov. 6, 2009) ....................27

*In re Doe*,
  662 F.2d 1073 (4th Cir. 1981) ................................................................................................20

*Equal Employment Opportunity Commission v. Bardon, Inc.*,
  No. RWT 08cv1883, 2010 WL 323067 (D. Md. Jan. 19, 2010) ............................................29

*Frias v. United States*,
  No. 09 Civ. 2537 (JFK), 2009 WL 1437797 (S.D.N.Y. May 20, 2009) ...............................25

*Galabya v. New York City Board of Education*,
  202 F.3d 636 (2d Cir. 2000).....................................................................................................22

*Giordano v. United States*,
  No. 3:11cv9 (MRK), 2011 WL 1831578 (D. Conn. Mar. 17, 2011)................................24, 25

*Gropper v. David Ellis Real Estate, L.P.*,
  No. 13Civ.2068(ALC)(JCF), 2014 WL 904483 (S.D.N.Y. Mar. 4, 2014)............................27

*Gruss v. Zwirn*,
  No. 09 Civ. 6441(PGG)(MHD), 2013 WL 3481350 (S.D.N.Y. July 10, 2013)....................19

*Hunt v. Blackburn*,
  128 U.S. 464 (1888)..................................................................................................................24

*In re King Pharmaceuticals, Inc. Securities Litigation*,
  No. 2:03-CV-77, 2005 WL 8142328 (E.D. Tenn. Sept. 21, 2005).........................................17

*Confidential – Subject to Protective Order*

*Knox v. Town of Southeast,*
   No. 11 Civ. 8763(ER), 2014 WL 1285654 (S.D.N.Y. Mar. 31, 2014), aff'd,
   599 F. App'x 411 (2d Cir. 2015) .............................................................................22

*Koumoulis v. Independent Financial Marketing Group, Inc.,*
   295 F.R.D. 28 (E.D.N.Y. 2013) ..............................................................................28

*In re Leslie Fay Cos., Inc. Securities Litigation,*
   161 F.R.D. 274 (S.D.N.Y.1995) ..............................................................................20

*Lincoln Electric Co. v. National Standard, LLC,*
   No. 1:09 CV 1886, 2012 WL 159940 (N.D. Ohio Jan. 19, 2012) ..........................28

*In re Marsh & Mclennan Companies, Inc. Securities Litigation,*
   501 F. Supp. 2d 452 (S.D.N.Y. 2006)................................................................26, 27

*Medinol, Ltd. v. Boston Science Corp.,*
   214 F.R.D. 113 (S.D.N.Y. 2002) .............................................................................18

*Moskowitz v. Lopp,*
   128 F.R.D. 624 (E.D. Pa. 1989)..............................................................................27

*In re Perrigo Co.,*
   128 F.3d 430 (6th Cir. 1997) ..................................................................................25

*In re Pfizer Inc. Securites Litigation,*
   No. 90 Civ. 1260 (SS), 1993 WL 561125 (S.D.N.Y. Dec. 23, 1993) ....................18

*Pray v. New York City Ballet Co.,*
   No. 96 CIV. 5723 RLC., 1998 WL 558796 (S.D.N.Y. Feb. 13, 1998) ..................29

*In re PSE & G Shareholder Litigation,*
   173 N.J. 258, 801 A.2d 295 (2002)....................................................................28, 29

*In re REMEC Inc. Securities Litigation,*
   702 F. Supp. 2d 1202 (S.D. Cal. 2010)...................................................................27

*Robinson v. Time Warner, Inc.,*
   187 F.R.D. 144 (S.D.N.Y. 1999) ............................................................................27

*In re Steinhardt Partners, L.P.,*
   9 F.3d 230 (2d Cir. 1993).......................................................................18, 19, 20, 24

*In re Subpoena Issued to Dennis Friedman,*
   350 F.3d 65 (2d Cir. 2003).......................................................................................28

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,*
   250 F.3d 87 (2d Cir. 2001).......................................................................................26

*United States v. Bilzerian,*
    926 F.2d 1285 (2d Cir. 1991).................................................................26

*United States v. Mount Sinai Hospital,*
    13-CV-04735 (RMB)(BCM), 2016 WL 2587393 (S.D.N.Y. May 4, 2016) .........................27

*United States v. Textron Inc. & Subsidiaries,*
    577 F.3d 21 (1st Cir. 2009).................................................................17

*United States v. Wells Fargo Bank, N.A.,*
    132 F. Supp. 3d 558 (S.D.N.Y. 2015).................................................29

*In re von Bulow,*
    828 F.2d 94 (2d Cir. 1987).................................................................20

Lead Plaintiff files this motion pursuant to the Court's January 4, 2017 Order (ECF No. 184), to Compel Mr. Bradley J. Bondi's deposition and the production of documents concerning the Salix Audit Committee's internal investigation, including a key, non-privileged document clawed-back and redacted in the midst of the January 12, 2017 deposition of the Chairman of Salix's Audit Committee.  As set forth below, the motion should be granted because:

(i)     Salix has waived any privilege by disclosing information concerning its investigation to its independent, outside auditor;

(ii)    Salix waived privilege by disclosing to the SEC and FINRA;

(iii)   Salix waived privilege by disclosing information concerning its investigation to Defendant Logan—an adverse party ██████████████████████████████ ████████████████████████████;

(iv)    Defendant Logan has asserted what amounts to an "ineffective assistance of counsel" argument, which courts unanimously find results in waiver of privilege; and

(v)     Defendants should not be allowed to benefit from attempts to discredit the investigation while simultaneously relying on Salix's privilege to block an effective response—essentially using the privilege as both a sword and a shield.

Defendants and their counsel have engaged in extraordinary measures to shield from Plaintiffs' inquiry <u>all</u> internal deliberations by Salix management and Board of Directors concerning the single corrective disclosure in this Action, the decision to fire the Individual Defendants, and the decision to claw back millions in dollars of compensation from them.  As demonstrated in recent depositions, Defendants are improperly using the attorney client privilege and work product protections as a tool to attempt to avoid liability.  Lead Plaintiffs respectfully request that the Court not permit it.

*Confidential – Subject to Protective Order*

## FACTUAL BACKGROUND

As the Court is aware, this case revolves around Defendants' alleged misrepresentations concerning Salix's wholesaler inventory levels. Throughout the Class Period, Salix's former CFO Adam Derbyshire and former CEO Carolyn Logan repeatedly told investors during quarterly investor calls that wholesaler inventory levels were 10-12 weeks or less. In reality, Defendants had undertaken a channel-stuffing scheme that raised wholesaler inventory levels for Salix's main drugs to a shocking 9 months by the beginning of the Class Period.

After a potential acquirer discovered the massive channel stuffing (during just one week of due diligence) and withdrew its offer for Salix, Logan and Salix's other Board members engaged Mr. Bondi, then a partner at Cadwalader, to conduct an investigation. On November 6, 2014, Salix publicly admitted that its wholesaler inventory levels were 9 months for its key drugs, and the Board required Defendant Derbyshire to immediately resign. In response to these disclosures, the price of Salix securities declined 34% in a single trading day, causing enormous harm to investors. Salix's investigation continued and, in January 2015, led to Defendant Logan's forced "retirement" from Salix after 12 years as CEO. Finally, in March 2015, the investigation culminated in the Board's decision to claw back tens of millions of dollars in compensation from Defendants Logan and Derbyshire based on the finding that they had "intentionally engaged in wrongdoing that resulted … in material harm" to Salix.

*Confidential – Subject to Protective Order*



*Confidential – Subject to Protective Order*



On December 19, 2016, counsel for Defendant Derbyshire submitted a letter to the Court stating that Derbyshire had "not made any statements, nor raised any defense, based on Mr. Bondi's conduct in leading the internal investigation, either in this action or before the SEC," but that Derbyshire possessed the ability to raise such a defense, stating that he "dispute[s] Plaintiffs' assertion that Salix's invocation of privilege should somehow bar Mr. Derbyshire from challenging the Audit Committee's investigation and its conclusions." ECF. No 175, at 1.

████████████████████████████████████████████████████████████

███████████████████████████████████████████████

■      ████████████████████████████████████████████████████
       █████████████████████████

■      ████████████████████████████████████████████████████
       ████████████████████████████████████████

Similarly, during Lead Plaintiff's December 12, 2016 deposition of Ernst & Young's witness, Mr. Bondi engaged in questioning that sought to establish ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████

Since Lead Plaintiff has sought to compel his deposition, Mr. Bondi has ceased directly questioning witnesses, but has guided other Cahill lawyers at depositions.

5

*Confidential – Subject to Protective Order*

***Defendants' Assertions of Privilege Have Prevented Lead Plaintiff From Obtaining the Information to Fully Test Logan and Derbyshire's Allegations:*** On December 8, 2016, nearly a month after the Court-ordered deadline, Salix belatedly produced its "preliminary" privilege log, which showed that it withheld or redacted 1,356 documents concerning the investigation—documents that Lead Plaintiff needs to test the veracity of Ms. Logan's testimony. *See* Ex. F, at 6 (Category 16 of "Preliminary Categorical Privilege Log.").[2]

Most recently, on January 12, 2017, Lead Plaintiffs took the deposition of Mr. William Keane, the chair of Salix's Audit Committee, who oversaw the Company's internal investigation. Counsel for Salix had previously represented to the Court in connection with this present dispute that Keane would be a sufficient substitute for deposing Mr. Bondi, and could competently answer any questions related to the conduct and process behind the investigation. *See* ECF No. 170, at 3

---

[2] Inexplicably, Defendants to date still have not produced a final privilege log and discovery ends in less than two weeks. *See* ECF No. 134.

*Confidential – Subject to Protective Order*

("To the extent Plaintiffs need to inquire as to what the Salix Board of Directors did and why it did it, Plaintiffs may depose members of that Board. … To the extent Plaintiffs need to inquire as to what the Salix Audit Committee did and why it did it, Plaintiffs may depose members of that Committee."); *see also* ECF. No. 173, at 3 ("Plaintiffs can take discovery with depositions of members of the Salix Board of Directors, members of the Salix Audit Committee, and Defendants Logan and Derbyshire."). ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████ )

Remarkably, not only did Defendants not inform the Court or Plaintiffs of this pre-determined plan, upon questioning, ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

---

[3] Defendants argue that Plaintiffs never directly asked for these documents in the form they were produced to the SEC.  But Lead Plaintiff's document requests instructed that, "A copy of a Document that varies in

*Confidential – Subject to Protective Order*

What is more, ***while the deposition was underway***, Salix hand delivered over 7,000 additional pages of documents that had been previously and improperly withheld for privilege— over 14 weeks after the deadline for the substantial completion of document production. Ex. H (Cover letter stating that the production comes from an "ongoing review" of documents listed on Defendants "preliminary categorical privilege log."). Quick searches of this production uncovered highly probative documents that would have been important for questioning Mr. Keane.  For example, the mid-deposition production contained one January 7, 2015 e-mail between Mr.  Keane and the remaining members of the Board, i█████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

---

any way whatsoever from the original or from any other copy of the Document – whether ***by reasons of Metadata that differ in any respect***, or by reason of any handwritten or other notation or any omission – ***shall constitute a separate Document and must be produced***." (Ex. J, at 5).  ███████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████  This document, which goes directly to the Individual Defendants'
scienter, was not available to exhibit at Mr. Keane's deposition.

Assured of their total control over the scope of fact discovery available to Plaintiffs – which
they are exerting by untimely productions of key documents, as well as by wielding the privilege
as a sword – Counsel for Salix instructed Mr. Keane not to answer numerous questions concerning
the conduct and findings of the investigation.  In particular:



*Confidential – Subject to Protective Order*



*Confidential – Subject to Protective Order*

Thus, far from *resolving* the issues created by Defendants' overbroad assertion of privilege and inappropriate conflict of interest by having Mr. Bondi as both litigation and investigatory counsel, Mr. Keane's deposition has only heightened the impetus for the instant Motion to Compel.

Defendants Derbyshire and Logan are scheduled to be deposed in this Action on January 25 and 26, 2017 (the two days before the January 27, 2017 discovery cut-off), and both are expected to stand by their sworn testimony before the SEC ████████████████████ ████████████    Indeed, Ms. Logan and Mr. Derbyshire have refused to agree not to offer such testimony calling into question the validity of the corrective disclosure at the end of the Class Period, and raising material questions of fact about the investigation into the falsity of Defendants' challenged Class Period statements and scienter, all issues central to Lead Plaintiff's burden of proof in this case.

## ARGUMENT

As set forth below, Salix has waived any privilege over the information sought in this motion for several reasons, namely: (i) Salix has waived any privilege by disclosing information concerning its investigation to its outside auditor; (ii) Salix waived privilege by disclosing to the SEC and FINRA; (iii) Salix waived privilege by disclosing information concerning its investigation to Defendant Logan—an adverse party; (iv) Defendant Logan has asserted to an "ineffective assistance of counsel" argument, which waives privilege; and (v) Defendants should not be allowed to use the privilege as both a sword and a shield: attacking the investigation while withholding information necessary to rebut those attacks.[4]

---

[4] Should the Court grant the instant motion, Lead Plaintiff will need to reopen the depositions of E&Y and Mr. Keane, as well as Ms. Logan and Mr. Derbyshire, depending on the timing and content of the materials concerning the investigation that Defendants ultimately produce.

*Confidential – Subject to Protective Order*

**A.    Salix Has Waived Any Privilege by Disclosing Information Concerning its Investigation to its Independent, Outside Auditor**

Where a company discloses otherwise privileged information to its independent auditor, privilege is waived. *See, e.g.*, *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 29, 31–32 (1st Cir. 2009) (disclosure to independent auditors for purpose of preparing audit opinion and not "in anticipation of litigation" not entitled to work-product protection); *In re King Pharm., Inc. Sec. Litig.*, No. 2:03-CV-77, 2005 WL 8142328, at *3 (E.D. Tenn. Sept. 21, 2005) (documents furnished to auditor in order for it "to prepare accurate audit reports and financial statements" not covered by work-product protection).  This is exactly what happened here.  Throughout the course of its internal investigation, Salix's Board and counsel kept E&Y informed about the investigation and its conclusions through a host of daily update calls, formal bi-weekly status reports, and multiple in-person meetings.  *See* Ex. L, at 2-5 ("the Investigation Team, EY, and the Company held status calls twice a week and met informally on a daily basis throughout the investigation."); *see also* Ex. M (Minutes of November 4, 2014 meeting of the Audit Committee, in which the Audit Committee's initial findings were shared with E&Y personnel and Logan).

Salix and its independent auditor E&Y should be required to produce all documents containing or reflecting information concerning the investigation that Salix disclosed to E&Y, and answer all deposition questions about what was shared orally, because disclosure to the independent auditor waives privilege. The key questions concerning waiver are whether the auditor was adversarial to the Company, and whether disclosure was made in anticipation of litigation. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993) (disclosure to those in adversarial positions waives work-product protection); *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260 (SS), 1993 WL 561125, at *3-7 (S.D.N.Y. Dec. 23, 1993) (no protection "[i]f the primary motivating purpose [of disclosure] is other than to assist in … litigation"); *Medinol, Ltd. v. Boston*

*Confidential – Subject to Protective Order*

*Sci. Corp.*, 214 F.R.D. 113, 114-116 (S.D.N.Y. 2002) ("meetings of [Defendant's] Special Litigation Committee [were held] with an eye to litigation, [but] disclosures [of meeting minutes] to the independent auditor had no such purpose").

Here, E&Y received the subject materials to prepare its audit opinions, and to induce its cooperation with the Board's investigation, ***not*** in anticipation of litigation. Amid massive scandal, E&Y's role was to ensure complete disclosures—duties counter to Defendants' interest in defending against fraud claims. Aware of E&Y's adversarial role, the Board engaged a separate forensic auditor – BDO – to conduct the investigation. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ Ex. N, at 1. Accordingly, the privilege has been waived as to information about the investigation communicated to E&Y either orally or in writing, and the Court should order the production of all documents concerning such information from both Salix and E&Y (*e.g.*, an unredacted copy of Ex. L), and permit deposition questions which has been obstructed by Salix to date on these topics.

**B.    Salix Waived Privilege by Disclosing to the SEC and FINRA**

As discussed, Defendants came into Mr. Keane's deposition with the bewildering position that information shared with the SEC was fair game, while also trying to assert privilege over the remainder of the investigation as somehow distinct from what had been shared with the SEC.  As a preliminary matter, given that the Board and Mr. Bondi shared the investigation's findings with the SEC in three in-person meetings in December 2014, January 2015, and March 2015 (the entire

course of the investigation), it is difficult to believe that there are any remaining aspects of the investigation's findings that could be rationally disaggregated from what had been freely shared with an adversary, and still be subject to any privilege or protection.  This is especially so since Salix shared its investigative findings with the SEC in order to persuade it not to take action against the company, which would almost certainly have entailed a defense of its investigative process— a key factual issue in this case as a result of Logan's allegations.

What is more, Salix disclosed the investigation's findings not only to the SEC, but also to FINRA's Office of Fraud Detection and Market Intelligence, ███████████████████ ██████████████████████████████████████  ████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████  As the Second Circuit held in *In re Steinhardt Partners, L.P.*, disclosure to the SEC waives the privilege.  *See* 9 F.3d, at 236; *see also Gruss v. Zwirn*, No. 09 Civ. 6441(PGG)(MHD), 2013 WL 3481350, at *4 (S.D.N.Y. July 10, 2013) (same); *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002) ("A waiver will be found if the governmental agency was an adversary, a 'potential adversary' or even just 'stood in an adversarial position' with respect to the disclosing party.").

Salix's deposition strategy flies in the face of these holdings.  In allowing a witness to testify concerning what the Salix shared with the SEC – disclosures that independently waived privilege – it expected to somehow preserve privilege over what was not shared.  The law does not countenance such selective waivers of privilege (which Salix seeks to enforce both as to content and the party as to whom the privilege is waived).  Indeed, "[b]ased principally on notions of fairness, courts have imposed ... a 'subject matter waiver' ... when [a] privilege-holder has attempted to use the privilege as both 'a sword' and 'a shield' or when the party attacking the

privilege will be prejudiced at trial." *In re Leslie Fay Cos., Inc. Sec. Litig.*, 161 F.R.D. 274, 282 (S.D.N.Y.1995) (citing *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987)); *see also, Terra Nova Ins. Co.*, 212 F.R.D. at 174 (finding wholesale subject matter waiver of information disclosed to the SEC that was available to the disclosing party at the time of disclosure.); *BristolMyers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95 Civ. 8833 (RPP), 1997 WL 801454, at *3 (S.D.N.Y. Dec. 31, 1997) (finding subject-matter waiver and ordering production "any and all documents" related to a report disclosed to adversary.).

Thus, not only do Mr. Keane's deposition instructions fail to protect the privilege, Defendants' concession that he could be questioned on the contents of what was shared should be treated as a waiver on top of an existing waiver that Salix effectuated by its extensive disclosures to the SEC and FINRA.

## C.   Salix Waived Privilege by Disclosing Information Concerning its Investigation to Defendant Logan—An Adverse Party ███████████████████████████████
███████████████████████████

It is well-settled that "voluntary disclosure [to those who] stood in an adversarial position … waive[s] [work product protection]." *Steinhardt*, 9 F.3d, at 234; *see also In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981) ("when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client … he may be deemed to have waived work product protection.").  In this case, Salix waived privilege by disclosing copious information about the investigation to Defendant Logan at a time when she was adverse to the Company.  Indeed, Salix kept Logan informed of the investigation after it had requested her resignation as a result of alleged fraud, effectively stripped her of duties as CEO, and was in the process of clawing back her compensation on the ground that she had intentionally harmed Salix.

*Confidential – Subject to Protective Order*

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████     ██████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

      Given these facts, there is little doubt that Defendant Logan – █████████████████

████████████████████████████████████████████ – was adverse to Salix after

the November 6, 2014 corrective disclosure. *See, e.g.*, *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d

636, 640 (2d Cir. 2000) ("A materially adverse [employment action] might be indicated by a

termination of employment, a demotion … a material loss of benefits, significantly diminished

---

[5] Indeed, Mr. Keane testified that, after Allergan sent its stunning September 15, 2014 letter and attachments to Logan extensively cataloguing Salix's channel stuffing scheme and its implications, Logan withheld a full description of Allergan's accusations from the Board for one full month, minimizing its importance to Allergan's due diligence and the Board's consideration of Allergan's offers. Ex. G, at 36, 42-43; 140-143; 145 -149.  When the Board finally learned about the full scope of the accusations, it immediately initiated the internal investigation.  Mr. Keane admitted that Ms. Logan should have shared the letter and its attachments with the Board while it exercised its fiduciary duties to shareholders in weighing Allergan's offer to buy Salix.  *Id*. at 150-153.  Thus, from the very initiation of the internal investigation in mid-October 2014, the Board knew that Logan had materially interfered with the execution of its fiduciary duties.

material responsibilities, or other indices ... unique to a particular situation."); *see also Knox v. Town of Se.*, No. 11 Civ. 8763(ER), 2014 WL 1285654, at *9 (S.D.N.Y. Mar. 31, 2014), aff'd, 599 F. App'x 411 (2d Cir. 2015) (same).

Discovery has revealed that, in spite of Defendant Logan's obviously adverse position, Salix continually kept her informed of the investigation's progress and findings. ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

In other words, not only was Logan kept abreast of all the proceedings related to the Company's internal investigation by Mr. Bondi himself weeks after she had become adverse and aware of the Board's decision to terminate her, Logan was directly involved in the Company's efforts to model the financial impact of reducing its excessive wholesaler inventory—inventory levels the calculation of which she now claims had been botched by the Board and Mr. Bondi.

Furthermore, on December 20, 2014, ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

17

*Confidential – Subject to Protective Order*



Logan's own testimony (if truthful) confirms the remarkable depth of her knowledge concerning the investigation and its progression, which she is now unfairly using to attack the Board and defense counsel.  For example, Logan testified regarding details of Bondi's purportedly privileged statements and advice to the Board:



<hr>

[6] ███████████████████████████████████████████████████████████████████ Courts routinely find that a corporation's privilege may be waived by its officers and directors, and it is indisputable that Mr. Creech, as Salix's then CFO, had the authority to waive Salix's privilege. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 343 (1985) ("with regard to solvent corporations the power to waive the privilege rests with the corporation's management and is normally exercised by its officers and directors.").

*Confidential – Subject to Protective Order*

T███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

As noted above, "voluntary disclosure [to those who] stood in an adversarial position …
waive[s] [work product protection]," and this is exactly what occurred here. *Steinhardt*, 9 F.3d at
234. Repeated disclosures of otherwise privileged information by senior officers, directors, and
even investigation counsel to Logan, a party that both the Board and counsel knew would be
adverse, waived any privilege.

**D.    Defendant Logan's "Ineffective Assistance of Counsel" Argument Waives Privilege**

Courts widely hold that "ineffective assistance of counsel" arguments result in waiver of
both attorney-client privilege and work product protection. *See Giordano v. United States,* No.
3:11cv9 (MRK), 2011 WL 1831578, at *2 (D. Conn. Mar. 17, 2011) ("The rule that a litigant
waives the attorney-client privilege by putting the lawyer's performance at issue during the course
of litigation dates back to at least *Hunt v. Blackburn,* 128 U.S. 464 (1888) … courts and
commentators have come to identify this simple rule as the fairness principle."). █████████████

████████████████████████████████████████████████

██████████████████████████████████████

        ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

*Confidential – Subject to Protective Order*

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████

These are the hallmarks of a defense predicated on ineffective assistance of counsel and, as noted above, such a defense results in waiver of both attorney-client privilege and work product protection. *See Giordano,* 2011 WL 1831578, at *2; *Frias v. United States*, No. 09 Civ. 2537 (JFK), 2009 WL 1437797, at *1 (S.D.N.Y. May 20, 2009) ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege."); *In re Perrigo Co.*, 128 F.3d 430, 445 (6th Cir. 1997) ("Like the attorney-client privilege, work-product immunity may be implicitly waived by, for example, affirmative testimonial use of the work product to advance the claimant's interests."). Here, Logan is claiming that the ████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████ Her arguments should result in a waiver of any otherwise applicable privileges or protection.

*Confidential – Subject to Protective Order*

**E.   Defendants Should Not Benefit From Attempts to Discredit the Investigation While Simultaneously Relying on Salix's Privilege to Block An Effective Response**

The law is clear that a defendant may not use privilege or work product protections as both a sword and a shield. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). ("[T]he attorney-client privilege cannot at once be used as a shield and a sword .... Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."). Yet that is precisely what Defendants here are doing. Ms. Logan's attempts to discredit Mr. Bondi's investigation, asserted with the help of new counsel that Bondi specifically recommended that Logan hire (as well as Derbyshire's attempts to question the investigation's underpinnings), waives any privilege related to the investigation.

While Salix contends that Logan and Derbyshire cannot waive Salix's privilege in this regard, this argument ignores the reality of this case. By virtue of Logan and Derbyshire's senior CEO and CFO positions, their testimony and liability (including on key issues of scienter and falsity) are inextricably tied to the Company's liability. That is, for the purposes of establishing Salix's liability, Defendants Logan and Derbyshire *are* Salix. *See In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 481 (S.D.N.Y. 2006) ("a corporate defendant's scienter is necessarily derived from its employees."); *see also Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001) ("A corporation can only act through its employees and agents."); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1259 (S.D. Cal. 2010) (citing *In re Marsh* and dismissing complaint for failure to allege scienter against Defendant CEO.)

Accordingly, Defendants' assertions have created a situation where, unless Lead Plaintiff is allowed to depose Mr. Bondi and obtain documents and facts concerning the investigation, the principal Individual Defendants will be able to ████████████████████████

*Confidential – Subject to Protective Order*

███████████████████████████████████████████████████

███████████████████████████████████████ This is exactly the kind of unfair situation that the law does not permit.  *See, e.g.*, *United States v. Mount Sinai Hosp.*, 13-CV-04735 (RMB)(BCM), 2016 WL 2587393, at *3 (S.D.N.Y. May 4, 2016) ("Both the attorney-client privilege and the work product doctrine may be waived … by … put[ting] in issue the contents of otherwise privileged materials."); *Robinson v. Time Warner, Inc.*, 187 F.R.D. 144, 146 (S.D.N.Y. 1999) (same); *Moskowitz v. Lopp*, 128 F.R.D. 624, 638 (E.D. Pa. 1989) (plaintiff "cannot be stonewalled by the simultaneous assertion of the defense and the privilege").

While Defendants' letters cited cases for the general proposition that depositions of opposing counsel are disfavored, none of Defendants' cases address these extraordinary circumstances. Defendants' own cases hold that depositions of opposing counsel are "not necessarily precluded in appropriate situations," and that the Court must apply a "flexible approach" when assessing such necessity. *See Creditsights, Inc. v. Ciasullo*, No. 05 Civ. 9345(DAB)(MHD), 2009 WL 3821441, at *1 (S.D.N.Y. Nov. 6, 2009); *see also Gropper v. David Ellis Real Estate, L.P.*, No. 13Civ.2068(ALC)(JCF), 2014 WL 904483, at *2 (S.D.N.Y. Mar. 4, 2014) (denying deposition of counsel whose "function has been exclusively as trial counsel. [But] an attorney may be deposed because he or she has engaged in the very conduct that gave rise to the litigation."); *Campinas Found. v. Simoni*, No. 02 Civ. 3965 BSJKNF, 2005 WL 1006511, at *2 (S.D.N.Y. Apr. 27, 2005) ("the disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of all controversies of this nature.") (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2d Cir. 2003)).

Indeed, courts hold that the deposition of counsel who conducted an internal investigation is appropriate where the integrity of that investigation becomes factually relevant in related

litigation – just as it has here. *See, e.g.*, *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 41, 47-48 (E.D.N.Y. 2013) (Plaintiffs had a substantial need for protected materials in order to "understand what constituted Defendants' investigatory procedures."); *see also Lincoln Elec. Co. v. Nat'l Standard, LLC*, No. 1:09 CV 1886, 2012 WL 159940, at *1 (N.D. Ohio Jan. 19, 2012) (granting deposition of trial counsel when "the adequacy and legitimacy of [counsel's] pre-filing investigation" was at issue.).

Beyond the substantial need to challenge Ms. Logan's accusations, materials concerning the investigation must be disclosed in order to disentangle the layers of conflict in which Mr. Bondi has become embroiled as a result of his dual roles as investigation and trial counsel, and to discover the truth about what his investigation found. ██████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████ This is precisely the type of situation that Courts have noted as risking conflict. *See In re PSE & G S'holder Litig.*, 173 N.J. 258, 292, 801 A.2d 295, 316 (2002) (noting that a corporation's law firm "needlessly risked creating a conflict by briefly assuming a dual role as the Board's investigator and litigation counsel.") Here, Mr. Bondi's assumption of a "dual role" has not been a brief one, and the risks the Court in *In re PSE&G* cautioned against has fully materialized.[7]

---

[7] Corporate defendants avoid using investigation counsel for related litigation precisely in order to avoid Defendant's predicament. *See E.E.O.C. v. Bardon, Inc.*, No. RWT 08cv1883, 2010 WL 323067, at *2 (D. Md. Jan. 19, 2010) (attorney disqualified as trial counsel because she had performed an internal investigation into plaintiff's complaint and "was a primary actor in the firing of" the plaintiff).

*Confidential – Subject to Protective Order*

Though courts generally disfavor depositions of opposing counsel, Ms. Logan's sworn assertions, as well as Mr. Bondi's actions, have made Mr. Bondi a key fact witness, whose testimony is highly relevant for rebutting Logan's (and his own) attempts to impugn his investigation and its conclusions. *See, e.g.*, *Pray v. N.Y. City Ballet Co.*, No. 96 CIV. 5723 RLC., 1998 WL 558796, at *1 (S.D.N.Y. Feb. 13, 1998) (ordering depositions of partners who conducted investigation).  And, as noted above, Salix's proffer of Mr. Keane failed to serve as an adequate replacement. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ Alternatively, the Court should bar Defendants from ████████

████████████████████████████████████ *See United States v. Wells Fargo Bank, N.A.*, 132 F. Supp. 3d 558 (S.D.N.Y. 2015) (defendant barred from asserting a defense based on privileged information).

## F.     Defendants' Factual Assertions Are Irrelevant and Wrong

Defendants' letters also contain arguments that are either wrong, irrelevant, or both.  First, contrary to what Defendants contend, both individual Defendants have refused to agree that they will ██████████████████████████████, despite multiple invitations to do so. Lead Plaintiff has n████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

*Confidential – Subject to Protective Order*

Second, Salix argues that former employees of the Company cannot waive privilege on its behalf, but as discussed above, these were not just any former employees, but the key orchestrators of the alleged fraud, and the individuals through whom the Company's own liability will be established.  Their defense is inextricable from the Company's defense. Defendants cannot wield the sword of Logan's testimony, while denying Lead Plaintiff the chance to test fully her claims behind a shield of privilege. ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Finally, whether or not Mr. Bondi worked on the November 6, 2014 disclosure itself is a red herring. There is no dispute that Mr. Bondi's investigation concluded that Defendants Logan and Derbyshire committed the wrongdoing that made that disclosure necessary and that a claw back of compensation was appropriate because they had "intentionally" caused material harm to the Company. Salix cannot therefore dodge Mr. Bondi's deposition by claiming that he was not involved in the disclosures. Indeed, the precise nature of his involvement is now a fact issue.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request its Motion to Compel be granted.

Dated: New York, New York       BERNSTEIN LITOWITZ BERGER &
January 13, 2017                 GROSSMANN LLP

                                 */s/ Salvatore J. Graziano*
                                 Salvatore J. Graziano
                                 John Rizio-Hamilton
                                 Katherine M. Sinderson
                                 Adam Hollander
                                 Angus F. Ni

*Confidential – Subject to Protective Order*

1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
sgraziano@blbglaw.com
johnr@blbglaw.com
katherinem@blbglaw.com
adam.hollander@blbglaw.com
angus.ni@blbglaw.com

*Lead Counsel for Lead Plaintiff and for the
Proposed Class*

ROBBINS GELLER RUDMAN & DOWD LLP
Samuel H. Rudman
David Rosenfeld
Avital Malina
58 South Service Road, Suite 200
Melville, New York 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
amalina@rgrdlaw.com

*Additional Counsel for the City of Fort
Lauderdale General Employees' Retirement
System*