# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------- )
                                     )
                                     )   Case No. 14 Civ. 8925 (KMW)
IN RE SALIX PHARMACEUTICALS, LTD.   )   CLASS ACTION
                                     )
---------------------------------------------------- )

**DECLARATION OF STEPHANIE A. THURIN REGARDING (A) MAILING OF**
**NOTICE AND CLAIM FORM; (B) PUBLICATION OF SUMMARY NOTICE;**
**AND (C) REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE**

    I, STEPHANIE A. THURIN, declare as follows:

    1.    I am a Project Manager at Epiq Class Action & Claims Solutions, Inc. ("Epiq"). Pursuant to the Court's April 5, 2017 Order Preliminarily Approving Proposed Settlement and Providing for Notice (ECF No. 220) (the "Preliminary Approval Order"), Epiq was authorized to act as the Claims Administrator in connection with the Settlement of the above-captioned action (the "Action").[1]  I am over 21 years of age and am not a party to the Action.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

**MAILING OF THE NOTICE AND PROOF OF CLAIM**

    2.    Pursuant to the Preliminary Approval Order, Epiq mailed the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and the Proof of Claim and Release Form (the "Claim Form" and, collectively with the

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated March 24, 2017 (ECF No. 216-1) (the "Stipulation").

Notice, the "Notice Packet") to potential Settlement Class Members.  A copy of the Notice Packet is attached hereto as Exhibit A.

3.     On April 7, 2017, Epiq received seven (7) Excel files from Defendants' Counsel, Cahill Gordon & Reindel LLP, with a total of 937 names of record holders of Salix common stock during the Settlement Class Period.  Epiq extracted these names and researched addresses for mailing.  After clean-up and de-duplication there remained 65 unique names and addresses.  Epiq formatted the Notice Packet, and caused it to be printed, personalized with the name and address of each potential Settlement Class Member, posted for first-class mail, postage prepaid, and mailed to these 65 potential Settlement Class Members on April 27, 2017.

4.     As in most class actions of this nature, the large majority of potential Settlement Class Members are expected to be beneficial purchasers whose securities are held in "street name"—*i.e.*, the securities are purchased by brokerage firms, banks, institutions and other third-party nominees in the name of the nominee, on behalf of the beneficial purchasers.  Epiq maintains and updates an internal list of the largest and most common banks, brokers and other nominees. At the time of the initial mailing, Epiq's internal broker list contained 1,475 mailing records.  On April 27, 2017, Epiq caused additional Notice Packets to be sent by first-class mail to the 1,475 mailing records contained in its internal broker list.

5.     The Notice directed those who purchased Salix common stock during the Class Period for the beneficial interest of a person or organization other than themselves to either (a) within seven (7) calendar days of receipt of the Notice, request from Epiq sufficient copies of the Notice Packet to forward to all such beneficial owners, or (b) within seven (7) calendar days of receipt of the Notice, provide to Epiq the names and addresses of all such beneficial owners. *See* Notice ¶ 91.

6.      As of June 16, 2017, Epiq had received an additional 36,548 names and addresses of potential Settlement Class Members from individuals or brokerage firms, banks, institutions, and other nominees.  Epiq has also received requests from brokers and other nominee holders for 30,606 Notice Packets to be forwarded by the nominees to their customers.  All such requests have been, and will continue to be, complied with and addressed in a timely manner.

7.      As of June 16, 2017, a total of 68,694 Notice Packets have been mailed to potential Settlement Class Members and nominees.  In addition, Epiq has remailed 5 Notice Packets to persons whose original mailings were returned by the U.S. Postal Service ("USPS") and for whom updated addresses were provided to Epiq by the USPS.

## PUBLICATION OF THE SUMMARY NOTICE

8.      In accordance with Paragraph 7(d) of the Preliminary Approval Order, Epiq caused the Summary Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Summary Notice") to be published in *The Wall Street Journal* and released via *PR Newswire* on May 12, 2017.  Copies of proof of publication of the Summary Notice in *The Wall Street Journal* and over *PR Newswire* are attached hereto as Exhibits B and C, respectively.

## TELEPHONE HELP LINE

9.      On April 27, 2017, Epiq established a case-specific, toll-free telephone helpline, 1-844-308-6864, with an interactive voice response system and live operators, to accommodate potential Settlement Class Members with questions about the Action and the Settlement.  The automated attendant answers the calls and presents callers with a series of choices to respond to basic questions.  Callers requiring further help have the option to be transferred to a live operator

during business hours.  Epiq continues to maintain the telephone helpline and will update the interactive voice response system as necessary through the administration of the Settlement.

## SETTLEMENT WEBSITE

10.     In accordance with Paragraph 7(c) of the Preliminary Approval Order, Epiq established the Settlement website for this Action, www.SalixSecuritiesLitigation.com.   The Settlement website includes information regarding the Action and the proposed Settlement, including the exclusion, objection, and claim-filing deadlines and the date and time of the Court's Settlement Hearing.   In addition, copies of the Notice, Claim Form, Stipulation, Preliminary Approval Order, and other documents related to the Action are posted on the website and are available for downloading.  The Settlement website was operational beginning on April 27, 2017, and is accessible 24 hours a day, 7 days a week.

## REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE

11.     The Notice informed potential Settlement Class Members that requests for exclusion are to be sent to the Claims Administrator, such that they are received no later than July 5, 2017.  The Notice also sets forth the information that must be included in each request for exclusion.  As of June 16, 2017, Epiq had received no requests for exclusion.  Epiq will submit a supplemental affidavit after the July 5, 2017 deadline addressing any requests for exclusion received.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 16, 2017.

Stephanie A. Thurin

#1085665

4

Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE SALIX PHARMACEUTICALS, LTD.

Case No. 14 Civ. 8925 (KMW)
CLASS ACTION

---

### NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

**NOTICE OF PENDENCY OF CLASS ACTION:**  Please be advised that your rights may be affected by the above-captioned securities class action (the "Action") pending in the United States District Court for the Southern District of New York (the "Court"), if, during the period from November 8, 2013 through November 6, 2014, inclusive (the "Class Period"), you purchased or otherwise acquired publicly traded common stock of Salix Pharmaceuticals, Ltd. ("Salix") or publicly traded call options on Salix common stock, or sold publicly traded put options on Salix common stock, and were damaged thereby.[1]

**NOTICE OF SETTLEMENT:**  Please also be advised that the Court-appointed Lead Plaintiff the Pentwater Funds, consisting of five related private investment funds: PWCM Master Fund Ltd., Pentwater Equity Opportunities Master Fund Ltd., Oceana Master Fund Ltd., Pentwater Merger Arbitrage Master Fund Ltd., and LMA SPC for and on behalf of the MAP98 Segregated Portfolio (collectively, "Lead Plaintiff" or the "Pentwater Funds"), on behalf of itself and the Settlement Class (as defined in ¶ 21 below), has reached a proposed settlement of the Action for $210,000,000 in cash that, if approved, will fully, finally and completely resolve all claims in the Action (the "Settlement").

**PLEASE READ THIS NOTICE CAREFULLY.  This Notice explains important rights you may have, including the possible receipt of cash from the Settlement.  If you are a member of the Settlement Class, your legal rights will be affected whether or not you act.**

**If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement, please DO NOT contact Salix, any other Defendants in the Action, or their counsel.  All questions should be directed to Lead Counsel or the Claims Administrator (*see* ¶ 92 below).**

1.  **Description of the Action and the Settlement Class:**  This Notice relates to a proposed Settlement of claims in a pending securities class action brought by investors alleging, among other things, that defendant Salix Pharmaceuticals, Ltd. ("Salix"), and defendants Carolyn J. Logan and Adam C. Derbyshire (the "Individual Defendants" and, collectively with Salix, "Defendants") violated the federal securities laws by making false and misleading statements regarding Salix's wholesale inventory levels during the Class Period.  A more detailed description of the Action is set forth in paragraphs 11 to 20 below.  The proposed Settlement, if approved by the Court, will settle claims of the Settlement Class, as defined in paragraph 21 below.

2.  **Statement of the Settlement Class's Recovery:**  Subject to Court approval, Lead Plaintiff, on behalf of itself and the Settlement Class, has agreed to settle the Action in exchange for a settlement payment of $210,000,000 in cash (the "Settlement Amount") to be deposited into an escrow account.  The Net Settlement Fund (*i.e.*, the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (a) any Taxes, (b) any Notice and Administration Costs, (c) any Litigation Expenses awarded by the Court, and (d) any attorneys' fees awarded by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Settlement Class.  The proposed plan of allocation (the "Plan of Allocation") is set forth on pages 9 to 14 below.

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated March 24, 2017 (the "Stipulation"), which is available at www.SalixSecuritiesLitigation.com.  Publicly traded call option contracts on Salix common stock ("Salix Call Options") and publicly traded put option contracts on Salix common stock ("Salix Put Options") are collectively referred to herein as "Salix Options," and Salix Options and Salix common stock are collectively referred to as the "Salix Securities."

3.   **Estimate of Average Amount of Recovery Per Share or Option:**   Lead Plaintiff's damages expert estimates that the conduct at issue in the Action affected approximately 45.9 million shares of Salix common stock and 5.6 million Salix Call Options purchased, and 3.2 million Salix Put Options written or sold, during the Class Period.  If all eligible Settlement Class Members elect to participate in the Settlement, the estimated average recovery would be approximately $4.39 per affected share of common stock, $0.24 per affected Salix Call Option, and $2.22 per affected Salix Put Option, before the deduction of any Court-approved fees, expenses and costs as described in this Notice.[2]  Settlement Class Members should note, however, that the foregoing average recovery per share or option is only an estimate.  Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, which Salix Securities they purchased, when and at what prices they purchased/acquired or sold their Salix Securities, and the total number of valid Claim Forms submitted.  Distributions to Settlement Class Members will be made based on the Plan of Allocation set forth herein (*see* pages 9 to 14 below) or such other plan of allocation as may be ordered by the Court.

4.   **Average Amount of Damages Per Share or Option:**   The Parties do not agree on the average amount of damages per share or option that would be recoverable if Lead Plaintiff were to prevail in the Action.  Among other things, Defendants do not agree with the assertion that they violated the federal securities laws or that any damages were suffered by any members of the Settlement Class as a result of their conduct.

5.   **Attorneys' Fees and Expenses Sought:**   Plaintiffs' Counsel, which have been prosecuting the Action on a wholly contingent basis since its inception, have not received any payment of attorneys' fees for their representation of the Settlement Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action.  Court-appointed Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP, will apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed 22% of the Settlement Fund.  In addition, Lead Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution and resolution of the claims against the Defendants, in an amount not to exceed $2.5 million, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class.  Any fees and expenses awarded by the Court will be paid from the Settlement Fund.  Settlement Class Members are not personally liable for any such fees or expenses.  If the Court approves Lead Counsel's fee and expense application, the estimated average amount of fees and expenses, assuming claims are filed for all affected Salix Securities, will be approximately $1.02 per affected share of common stock, $0.05 per affected Salix Call Option, and $0.51 per affected Salix Put Option.

6.   **Identification of Attorneys' Representatives:**   Lead Plaintiff and the Settlement Class are represented by Salvatore J. Graziano, Esq. of Bernstein Litowitz Berger & Grossmann LLP, 1251 Avenue of the Americas, 44th Floor, New York, NY 10020, (800) 380-8496, blbg@blbglaw.com.

7.   **Reasons for the Settlement:**   Lead Plaintiff's principal reason for entering into the Settlement is the substantial immediate cash benefit for the Settlement Class without the risk or the delays inherent in further litigation.  Moreover, the substantial cash benefit provided under the Settlement must be considered against the significant risk that a smaller recovery – or indeed no recovery at all – might be achieved after contested motions, a trial of the Action and the likely appeals that would follow a trial.  This process could be expected to last several years.  Defendants, who deny all allegations of wrongdoing or liability whatsoever, are entering into the Settlement solely to eliminate the uncertainty, burden and expense of further protracted litigation.

---

[2] All option-related amounts in this paragraph are per share of the underlying security (i.e., 1/100th of a contract).

## YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT:

| | |
|---|---|
| **SUBMIT A CLAIM FORM POSTMARKED NO LATER THAN AUGUST 9, 2017.** | This is the only way to be eligible to receive a payment from the Settlement Fund.  If you are a Settlement Class Member and you remain in the Settlement Class, you will be bound by the Settlement as approved by the Court and you will give up any Released Plaintiffs' Claims (defined in ¶ 30 below) that you have against Defendants and the other Defendants' Releasees (defined in ¶ 31 below), so it is in your interest to submit a Claim Form. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN JULY 5, 2017.** | If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Settlement Fund.  This is the only option that allows you ever to be part of any other lawsuit against any of the Defendants or the other Defendants' Releasees concerning the Released Plaintiffs' Claims. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN JULY 5, 2017.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court and explain why you do not like them.  You cannot object to the Settlement, the Plan of Allocation or the fee and expense request unless you are a Settlement Class Member and do not exclude yourself from the Settlement Class. |
| **GO TO A HEARING ON JULY 24, 2017 AT 11:00 A.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN JULY 5, 2017.** | Filing a written objection and notice of intention to appear by July 5, 2017 allows you to speak in Court, at the discretion of the Court, about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and reimbursement of Litigation Expenses.  If you submit a written objection, you may (but you do not have to) attend the hearing and, at the discretion of the Court, speak to the Court about your objection. |
| **DO NOTHING.** | If you are a member of the Settlement Class and you do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement Fund.  You will, however, remain a member of the Settlement Class, which means that you give up your right to sue about the claims that are resolved by the Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |

## WHAT THIS NOTICE CONTAINS

| | |
|---|---|
| Why Did I Get This Notice? | Page 4 |
| What Is This Case About? | Page 4 |
| How Do I Know If I Am Affected By The Settlement? | |
| Who Is Included In The Settlement Class? | Page 5 |
| What Are Lead Plaintiff's Reasons For The Settlement? | Page 5 |
| What Might Happen If There Were No Settlement? | Page 6 |
| How Are Settlement Class Members Affected By The Action And The Settlement? | Page 6 |
| How Do I Participate In The Settlement?  What Do I Need To Do? | Page 7 |
| How Much Will My Payment Be? | Page 8 |
| What Payment Are The Attorneys For The Settlement Class Seeking? | |
| How Will The Lawyers Be Paid? | Page 14 |
| What If I Do Not Want To Be A Member Of The Settlement Class? | |
| How Do I Exclude Myself? | Page 14 |
| When And Where Will The Court Decide Whether To Approve The Settlement? | |
| Do I Have To Come To The Hearing?  May I Speak At The Hearing If I Don't Like The Settlement? | Page 15 |
| What If I Bought Shares or Options On Someone Else's Behalf? | Page 16 |
| Can I See The Court File?  Whom Should I Contact If I Have Questions? | Page 17 |

## WHY DID I GET THIS NOTICE?

8.   The Court directed that this Notice be mailed to you because you or someone in your family or an investment account for which you serve as a custodian may have purchased or otherwise acquired Salix common stock or call options on Salix common stock, or written or sold put options on Salix common stock, during the Class Period.  The Court has directed us to send you this Notice because, as a potential Settlement Class Member, you have a right to know about your options before the Court rules on the proposed Settlement.  Additionally, you have the right to understand how this class action lawsuit may generally affect your legal rights.  If the Court approves the Settlement, and the Plan of Allocation (or some other plan of allocation), the claims administrator selected by Lead Plaintiff and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

9.   The purpose of this Notice is to inform you of the existence of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement Class if you wish to do so.  This Notice is also being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation and the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Hearing").  *See* paragraph 83 below for details about the Settlement Hearing, including the date and location of the hearing.

10.   The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement.  If the Court approves the Settlement and a plan of allocation, then payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing.  Please be patient, as this process can take some time to complete.

## WHAT IS THIS CASE ABOUT?

11.   Beginning on November 7, 2014, two class action complaints were filed in the United States District Court for the Southern District of New York (the "Court"), styled *Woburn Retirement System v. Salix Pharmaceuticals, Ltd.*, 14-CV-8925 and *Bruyn v. Salix Pharmaceuticals, Ltd.*, 14-CV-9226.

12.   By Order dated March 23, 2015, the Court ordered that the cases be consolidated and recaptioned as *In re Salix Pharmaceuticals, Ltd.*, Case No. 14 Civ. 8925 (KMW); appointed the Pentwater Funds as Lead Plaintiff for the consolidated action; and approved Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel for the class.

13.   On May 8, 2015, Lead Plaintiff filed and served its Consolidated Class Action Complaint (the "Complaint") asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act.  The Complaint included the City of Fort Lauderdale General Employees' Retirement System ("Fort Lauderdale") as an additional named plaintiff.  Among other things, the Complaint alleged that Defendants made materially false and misleading statements about Salix's "wholesale inventory levels."  The Complaint alleged that the price of Salix common stock was artificially inflated during the Class Period as a result of Defendants' allegedly false and misleading statements, and declined significantly when the truth was revealed.  The Complaint alleged that the prices of Salix Options were also distorted as the result of the artificially inflated price of Salix common stock, and that investors who purchased Salix Call Options or sold Salix Put Options during the Class Period were damaged when the truth was revealed.

14.   On June 12, 2015, Defendants served and filed their motions to dismiss the Complaint.  On July 17, 2015, Lead Plaintiff served and filed its memorandum in opposition to the motions and, on August 3, 2015, Defendants served their reply papers.  On March 31, 2016, the Court entered an Order denying Defendants' motions to dismiss in their entirety and, on April 22, 2016, entered a more detailed Opinion and Order setting forth the reasons for its denial of the motions.

15.   On May 31, 2016, Defendants filed and served their answers to the Complaint.

16.   Discovery in the Action commenced in April 2016.  Defendants and third parties produced more than 2.7 million pages of documents to Lead Plaintiff.  Lead Plaintiff produced over 60,000 pages of documents to Defendants.  Thirteen depositions were taken in the Action, including depositions of representatives of Lead Plaintiff and Fort Lauderdale, the deposition of Lead Plaintiff's expert witness taken in connection with the motion for class certification, and ten depositions of fact witnesses.  Lead Plaintiff also served interrogatories and requests for admission on Defendants and exchanged numerous letters with Defendants concerning discovery issues.

17.  On October 10, 2016, Lead Plaintiff filed and served its motion for class certification.  On January 4, 2017, Salix filed and served its opposition to that motion, as well as a motion to exclude the expert report and testimony of Lead Plaintiff's market efficiency expert, and the Individual Defendants joined in that opposition and motion. On January 17, 2017, Lead Plaintiff served and filed its reply papers in further support of class certification and its opposition to Defendants' motion to exclude expert testimony.  Defendants served and filed reply papers in further support of that motion on January 24, 2017.

18.  In early February 2017, the Parties engaged in discussions concerning the possibility of resolving the Action through settlement.  Following these settlement negotiations, the Parties reached an agreement in principle to settle the Action that was memorialized in a term sheet (the "Term Sheet") executed on February 8, 2017.  The Term Sheet sets forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment by or on behalf of Defendants of $210,000,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

19.  On March 24, 2017, the parties entered into a Stipulation and Agreement of Settlement (the "Stipulation"), which sets forth the terms and conditions of the Settlement.  The Stipulation can be viewed at www.SalixSecuritiesLitigation.com.

20.  On April 5, 2017, the Court preliminarily approved the Settlement, authorized this Notice to be disseminated to potential Settlement Class Members, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

## HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? WHO IS INCLUDED IN THE SETTLEMENT CLASS?

21.  If you are a member of the Settlement Class, you are subject to the Settlement, unless you timely request to be excluded.  The Settlement Class consists of:

> all persons or entities who purchased or otherwise acquired publicly traded Salix common stock or publicly traded call options on Salix common stock, or sold publicly traded put options on Salix common stock, during the period from November 8, 2013 through November 6, 2014, inclusive (the "Class Period"), and were damaged thereby.

Excluded from the Settlement Class are Defendants; Salix's parents, affiliates and subsidiaries (including Valeant Pharmaceuticals International, Inc.); the Officers and directors of Salix and its parents, subsidiaries and affiliates currently or during the Class Period; members of the Immediate Family of any excluded person; any entity in which any excluded person has a controlling interest or had a controlling interest during the Class Period; and the heirs, successors, and assigns of any excluded person or entity.  Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by submitting a request for exclusion in accordance with the requirements set forth in this Notice.  *See* "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself," on page 14 below.

**PLEASE NOTE:  RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A SETTLEMENT CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.**

**IF YOU ARE A SETTLEMENT CLASS MEMBER AND YOU WISH TO BE ELIGIBLE TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE SETTLEMENT, YOU ARE REQUIRED TO SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN POSTMARKED NO LATER THAN AUGUST 9, 2017.**

## WHAT ARE LEAD PLAINTIFF'S REASONS FOR THE SETTLEMENT?

22.  Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants are meritorious. They recognize, however, the expense and length of continued proceedings necessary to pursue the claims against Defendants through trial and appeals, as well as the very substantial risks that Plaintiffs would face in establishing liability and damages.  To defeat summary judgment and succeed at trial, Lead Plaintiff would be required to prove not only that Defendants' statements about Salix's wholesale inventory levels were false, but that the Individual Defendants knew that the statements were false when they were made or were reckless in making the alleged misstatements.  Defendants would have contended that they made no actionable false statements, as their alleged

misstatements were vague, general and aspirational.  Further, proving intent to defraud (or *scienter*) would have been difficult here because the Individual Defendants would contend that the calculation of wholesale inventory levels was imprecise, based on uncertain estimates, and, thus, any errors were unintended.  Even if the hurdles to establishing liability were overcome, Defendants would also have continued to oppose certification of the class and the calculation of damages.  Defendants strenuously argued – would have continued to contend – that the Action was not suitable for class treatment.  Defendants would also have contested the amount of damages that could be attributed to the revelation of allegedly false statements, as opposed to new information about Salix that was unrelated to the alleged fraud.  Moreover, Defendants would have argued that class members were not harmed because the price of Salix common stock quickly rebounded from its price following the corrective disclosure, and because the Company was acquired relatively shortly after the revelation of the fraud at $173 per share, which significantly exceeded the share price at the end of the Class Period.  Finally, Plaintiffs would have to recover at several stages – at class certification, motions for summary judgment and at trial, and if they prevailed on those, on the appeals that were likely to follow.  Thus, there were significant risks attendant to the continued prosecution of the Action.

23.  In light of these risks, the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class.  Lead Plaintiff and Lead Counsel believe that the Settlement provides a substantial benefit to the Settlement Class, namely $210,000,000 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Action would produce a smaller, or no recovery after summary judgment, trial and appeals, possibly years in the future.

24.  Defendants have denied the claims asserted against them in the Action and deny having engaged in any wrongdoing or violation of law of any kind whatsoever.  Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation.  Accordingly, the Settlement may not be construed as an admission of any wrongdoing by Defendants.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

25.  If there were no Settlement and Lead Plaintiff failed to establish any essential legal or factual element of their claims against Defendants, neither Lead Plaintiff nor the other members of the Settlement Class would recover anything from Defendants.  Also, if Defendants were successful in proving any of their defenses, either at summary judgment, at trial or on appeal, the Settlement Class could recover substantially less than the amount provided in the Settlement, or nothing at all.

## HOW ARE SETTLEMENT CLASS MEMBERS AFFECTED BY THE ACTION AND THE SETTLEMENT?

26.  As a Settlement Class Member, you are represented by Lead Plaintiff and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her appearance on the attorneys listed in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," on page 15 below.

27.  If you are a Settlement Class Member and do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section entitled, "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself?," on page 14 below.

28.  If you are a Settlement Class Member and you wish to object to the Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," on page 15 below.

29.  If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be bound by any orders issued by the Court.  If the Settlement is approved, the Court will enter a judgment (the "Judgment").  The Judgment will dismiss with prejudice the claims against Defendants and will provide that, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, will have fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiffs' Claim (as defined in ¶ 30 below) against the Defendants and the other Defendants' Releasees (as defined in ¶ 31 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees.

30. "Released Plaintiffs' Claims" means all claims, demands, rights, liabilities and causes of action of every nature and description, whether known claims or Unknown Claims, against any person, party or entity, whether arising under federal, state, common or foreign law, that Lead Plaintiff or any other member of the Settlement Class (a) asserted in the Complaint, or (b) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase or acquisition of publicly traded Salix common stock or publicly traded call options on Salix common stock during the Class Period, or the sale of publicly traded put options on Salix common stock during the Class Period. Released Plaintiffs' Claims do not include: (i) any claims relating to the enforcement of the Settlement; (ii) any claims asserted in *Salix Pharmaceuticals, Ltd. Stockholders Litigation*, Consolidated C.A. No. 10721-CB (Del. Ch.); and (iii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

31. "Defendants' Releasees" means Defendants and their current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, heirs, executors, assigns, assignees, employees, and attorneys, in their capacities as such.

32. "Unknown Claims" means any Released Plaintiffs' Claims which Lead Plaintiff, Fort Lauderdale, or any other Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiff and Defendants shall expressly and irrevocably waive, and each of the other Settlement Class Members (including Fort Lauderdale) shall be deemed to have irrevocably waived, and by operation of the Judgment or the Alternate Judgment, if applicable, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and Defendants acknowledge, and each of the other Settlement Class Members (including Fort Lauderdale) shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

33. The Judgment will also provide that, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, will have fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim (as defined in ¶ 34 below) against Lead Plaintiff and the other Plaintiffs' Releasees (as defined in ¶ 35 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees.

34. "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against the Defendants. Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement or any claims against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

35. "Plaintiffs' Releasees" means Plaintiffs, all other plaintiffs in the Action, their respective attorneys, and all other Settlement Class Members, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

## HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

36. To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Settlement Class and you must timely complete and return the Claim Form with adequate supporting documentation **postmarked no later than August 9, 2017**.  A Claim Form is included with this Notice, or you may obtain one from the website maintained by the Claims Administrator for the Settlement, www.SalixSecuritiesLitigation.com, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-844-308-6864.  Please retain all records of your ownership of and transactions in Salix Securities, as they may be needed to document your Claim. If you request exclusion from the Settlement Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

## HOW MUCH WILL MY PAYMENT BE?

37.  At this time, it is not possible to make any determination as to how much any individual Settlement Class Member may receive from the Settlement.

38.  Pursuant to the Settlement, Salix, on behalf of all Defendants, has agreed to pay or cause to be paid two hundred ten million dollars ($210,000,000) in cash.  The Settlement Amount will be deposited into an escrow account.  The Settlement Amount plus any interest earned thereon is referred to as the "Settlement Fund."  If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state and/or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court) will be distributed to Settlement Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

39.  The Net Settlement Fund will not be distributed unless and until the Court has approved the Settlement and a plan of allocation, and the time for any petition for rehearing, appeal or review, whether by certiorari or otherwise, has expired.

40.  Neither Defendants nor any other person or entity that paid any portion of the Settlement Amount on their behalf are entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final.  Defendants shall not have any liability, obligation or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Fund or the plan of allocation.

41.  Approval of the Settlement is independent from approval of a plan of allocation.  Any determination with respect to a plan of allocation will not affect the Settlement, if approved.

42.  Unless the Court otherwise orders, any Settlement Class Member who fails to submit a Claim Form postmarked on or before August 9, 2017 shall be fully and forever barred from receiving payments pursuant to the Settlement but will in all other respects remain a Settlement Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given.  This means that each Settlement Class Member releases the Released Plaintiffs' Claims (as defined in ¶ 30 above) against the Defendants' Releasees (as defined in ¶ 31 above) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiffs' Claims against any of the Defendants' Releasees whether or not such Settlement Class Member submits a Claim Form.

43.  Participants in and beneficiaries of a plan covered by ERISA ("ERISA Plan") should NOT include any information relating to their transactions in Salix Securities held through the ERISA Plan in any Claim Form that they may submit in this Action.  They should include ONLY those shares or options that they purchased, acquired or sold outside of the ERISA Plan.  Claims based on any ERISA Plan's purchases or acquisitions of Salix common stock or Salix Call Options (or sales of Salix Put Options) during the Class Period may be made by the plan's trustees.  To the extent any of the Defendants or any of the other persons or entities excluded from the Settlement Class are participants in the ERISA Plan, such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from the Settlement by the ERISA Plan.

44.  The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.

45.  Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its Claim Form.

46.  Only Settlement Class Members will be eligible to share in the distribution of the Net Settlement Fund.  Persons and entities that are excluded from the Settlement Class by definition or that exclude themselves from the Settlement Class pursuant to request will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms.

## PROPOSED PLAN OF ALLOCATION

47.  The objective of the Plan of Allocation is to distribute the Settlement proceeds equitably among those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  The Plan of Allocation is not a damage analysis, and the calculations made in accordance with the Plan of Allocation are not intended to be estimates of, or indicative of, the amounts that Settlement Class Members might have been able to recover after a trial.  Nor are the calculations in accordance with the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants under the Settlement.  The computations under the Plan of Allocation are only a method to weigh, in a fair and equitable manner, the claims of Authorized Claimants against one another for the purpose of making *pro rata* allocations of the Net Settlement Fund.

48.  The eligible securities under the Plan of Allocation are Salix common stock, publicly traded call option contracts on Salix common stock ("Salix Call Options") and publicly traded put option contracts on Salix common stock ("Salix Put Options").  Salix Call Options and Salix Put Options are collectively referred to as "Salix Options" and Salix Options and Salix common stock are collectively referred to as the "Salix Securities."

49.  In developing the Plan of Allocation, Lead Plaintiff consulted with its damages expert who had reviewed publicly available information regarding Salix and performed statistical analyses of the price movements of the Salix Securities and the price performance of relevant market and industry indices during the Class Period.  The damages expert eliminated losses attributable to market and industry factors.

50.  For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented information must be the cause of the decline in the price or value of the security.  In this case, Lead Plaintiff alleges that Defendants made false statements and omitted material facts during the period from November 8, 2013 through and including November 6, 2014, which had the effect of artificially inflating the prices of Salix common stock and Salix Call Options (and artificially deflating the price of Salix Put Options).  Lead Plaintiff further alleges that corrective information was released to the market after the close of trading on November 6, 2014, which removed the artificial inflation from the price of Salix common stock and Salix Call Options and removed artificial deflation from the price of Salix Put Options.

51.  Recognized Loss Amounts for transactions in Salix Securities are calculated under the Plan of Allocation based primarily on the difference in the amount of alleged artificial inflation (or deflation in the case of put options) in the respective prices of the Salix Securities at the time of purchase or acquisition and at the time of sale or the difference between the actual purchase price and sale price.  In order to have a Recognized Loss Amount, a Settlement Class Member who purchased or acquired Salix common stock or Salix Call Options (or wrote Salix Put Options) during the Class Period (November 8, 2013 through November 6, 2014, inclusive) must have held those Salix Securities until after the alleged corrective disclosure on November 6, 2014.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

52.  Based on the formula set forth below, a "Recognized Loss Amount" shall be calculated for each purchase or acquisition of Salix common stock and a Salix Call Option and each sale or writing of a Salix Put Option from November 8, 2013 through and including November 6, 2014, that is listed in the Claim Form and for which adequate documentation is provided.  To the extent that a calculation of a Recognized Loss Amount results in zero or a negative number, that number shall be set to zero.

**Common Stock**

53.  For each share of Salix common stock purchased or otherwise acquired during the period from November 8, 2013 through 4:30 p.m. Eastern time on November 6, 2014, and:

   (a)  sold before 4:30 p.m. Eastern time on November 6, 2014, the Recognized Loss Amount will be $0.00;

   (b)  sold after 4:30 p.m. Eastern time on November 6, 2014 through and including the close of trading on February 4, 2015, the Recognized Loss Amount will be ***the least of***: (i) $46.05; (ii) the purchase/acquisition price *minus* the sale price; or (iii) the purchase/acquisition price *minus* the average closing price between November 7, 2014 and the date of sale as stated in Table A at the end of this Notice; and

(c) held as of the close of trading on February 4, 2015, the Recognized Loss Amount will be fifty percent (50%) of **the lesser of**: (i) $46.05; or (ii) the purchase/acquisition price *minus* $113.36, the average closing price for Salix common stock between November 7, 2014 and February 4, 2015 (the last entry on Table A).[3]

54. For each share of Salix common stock purchased or otherwise acquired after 4:30 p.m. Eastern time on November 6, 2014, the Recognized Loss Amount will be $0.00.

**Call and Put Option Calculations**

55. Exchange-traded options are traded in units called "contracts" which entitle the holder to buy (in the case of a call) or sell (in the case of a put) 100 shares of the underlying security, which in this case is Salix common stock. Throughout this Plan of Allocation, all price quotations are *per share of the underlying security* (*i.e.*, 1/100 of a contract).

56. Each option contract specifies a strike price and an expiration date. Contracts with the same strike price and expiration date are referred to as a "series" and each series represents a different security that trades in the market and has its own market price (and thus artificial inflation or deflation). Under the Plan of Allocation, the dollar amount of artificial inflation per share (*i.e.*, 1/100 of a contract) for each series of Salix Call Options and the dollar amount of artificial deflation per share (*i.e.*, 1/100 of a contract) for each series of Salix Put Options has been calculated by Lead Plaintiff's damages expert. Tables available at www.SalixSecuritiesLitigation.com/options set forth the dollar amount of artificial inflation per share in Salix Call Options during the Class Period and the dollar amount of artificial deflation per share in Salix Put Options during the Class Period for each option series, as well as the closing price and average closing price for each option series during the period from November 7, 2014 through February 4, 2015. Those tables list only exchange-traded Salix options that expired after November 6, 2014 – the last day of the Class Period and the date of the alleged corrective disclosure. Transactions in Salix Call Options or Salix Put Options that expired on or before November 6, 2014 have a Recognized Loss Amount of zero under the Plan of Allocation.

57. For each Salix Call Option purchased or acquired from November 8, 2013, through and including the close of trading on November 6, 2014, and:

(a) closed (through sale, exercise or expiration) before the close of trading on November 6, 2014, the Recognized Loss Amount for each such option will be $0.00;

(b) closed (through sale) during the period from November 7, 2014 through and including the close of trading on February 4, 2015, the Recognized Loss Amount for each such option will be **the least of**: (i) the Artificial Inflation for that option on the date of purchase/acquisition as set forth at www.SalixSecuritiesLitigation.com/options; (ii) the purchase/acquisition price *minus* the sale price; or (iii) the purchase/acquisition price *minus* the average closing price for that option series between November 7, 2014 and the date of sale, as stated at www.SalixSecuritiesLitigation.com/options; and

(c) closed (through exercise or expiration) during the period from November 7, 2014 through and including the close of trading on February 4, 2015, the Recognized Loss Amount for each such option will be **the least of**: (i) the Artificial Inflation for that option on the date of purchase/acquisition as set forth at www.SalixSecuritiesLitigation.com/options; (ii) the purchase/acquisition price *minus* the value per option on the date of exercise or expiration;[4] or (iii) the purchase/acquisition price *minus* the average closing price for that option series between November 7, 2014 and the date of exercise or expiration, as stated at www.SalixSecuritiesLitigation.com/options; and

---

[3] Under Section 21D(e)(1) of the Exchange Act, "in any private action arising under this chapter in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the statute, Recognized Loss Amounts for shares sold during that 90-day period or held to the end of that period are reduced to an appropriate extent by taking into account the closing prices of Salix common stock during the 90-day look-back period. As set forth above, Recognized Loss Amounts calculated for shares held through the end of the 90-day look-back period at the close of trading on February 4, 2015 are discounted by fifty percent (50%) to account for the increase in the price of Salix common stock by and after that date, through Salix's acquisition by another publicly traded company at a substantial premium to its trading price.

[4] The "value" of the call option on the date of exercise or expiration shall be the closing price of Salix common stock on the date of exercise or expiration minus the strike price of the option. If this number is less than zero, the value of the call option is zero.

(d) open as of the close of trading on February 4, 2015, the Recognized Loss Amount for each such option will be fifty percent (50%) of ***the lesser of***:  (i) the Artificial Inflation for that option on the date of purchase/acquisition as set forth at www.SalixSecuritiesLitigation.com/options; or (ii) the purchase/acquisition price *minus* the average closing price for that option series between November 7, 2014 and February 4, 2015, as stated at www.SalixSecuritiesLitigation.com/options.

58.  For each Salix Put Option sold (written) from November 8, 2013, through and including the close of trading on November 6, 2014, and:

(a) closed (through purchase, exercise or expiration) before the close of trading on November 6, 2014, the Recognized Loss Amount for each such option will be $0.00;

(b) closed (through purchase) during the period from November 7, 2014 through and including the close of trading on February 4, 2015, the Recognized Loss Amount for each such option will be ***the least of***: (i) the Artificial Deflation for that option on the date of sale as set forth at www.SalixSecuritiesLitigation.com/options; (ii) the purchase price *minus* the sales price; or (iii) the average closing price for that option series between November 7, 2014 and the date of sale, as stated at www.SalixSecuritiesLitigation.com/options *minus* the sale price; and

(c) closed (through exercise or expiration) during the period from November 7, 2014 through and including the close of trading on February 4, 2015, the Recognized Loss Amount for each such option will be ***the least of***:  (i) the Artificial Deflation for that option on the date of sale as set forth at www.SalixSecuritiesLitigation.com/options; (ii) the value per option on the date of exercise or expiration[5] *minus* the sale price; or (iii) the average closing price for that option series between November 7, 2014 and the date of exercise or expiration, as stated at www.SalixSecuritiesLitigation.com/options, *minus* the sale price; and

(d) open as of the close of trading on February 4, 2015, the Recognized Loss Amount for each such option will be fifty percent (50%) of ***the lesser of***:  (i) the Artificial Deflation for that option on the date of sale as set forth at www.SalixSecuritiesLitigation.com/options; or (ii) the average closing price for that option series between November 7, 2014 and February 4, 2015, as stated at www.SalixSecuritiesLitigation.com/options *minus* the sale price.

59.  **Maximum Recovery for Options:**  The Settlement proceeds available for Salix Options shall be limited to an amount equal to four percent (4%) of the Net Settlement Fund.

## ADDITIONAL PROVISIONS

60.  **FIFO Matching:**  If a Settlement Class Member made more than one purchase/acquisition or sale of any Salix Security during the Class Period, all purchases/acquisitions and sales of the like security shall be matched on a First In, First Out ("FIFO") basis.  With respect to Salix common stock and Salix Call Options, Class Period sales will be matched first against any holdings at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.  For Salix Put Options, Class Period purchases will be matched first to close out positions open at the beginning of the Class Period, and then against Salix Put Options sold (written) during the Class Period in chronological order.

61.  **"Purchase/Sale" Dates:**  Purchases or acquisitions and sales of Salix Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, inheritance or operation of law of Salix Securities during the Class Period shall not be deemed a purchase, acquisition or sale of these Salix Securities for the calculation of a Claimant's Recognized Loss Amounts, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such Salix Securities unless (i) the donor or decedent purchased or otherwise acquired such Salix Securities during the Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (iii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Salix Securities.

62.  **Short Sales:**  With respect to Salix common stock, the date of covering a "short sale" is deemed to be the date of purchase or acquisition of the common stock.  The date of a "short sale" is deemed to be the date of sale of the Salix common stock.  In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero.

---

[5] The "value" of the put option on the date of exercise or expiration shall be the strike price of the option minus the closing price of Salix common stock on the date of exercise or expiration.  If this number is less than zero, the value of the put option is zero.

63.  In the event that a Claimant has an opening short position in Salix common stock, the earliest purchases or acquisitions during the Settlement Class Period shall be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered.

64.  If a Settlement Class Member has "written" Salix Call Options, thereby having a short position in the call options, the date of covering such a written position is deemed to be the date of purchase or acquisition of the call option. The date on which the call option was written is deemed to be the date of sale of the call option. In accordance with the Plan of Allocation, however, the Recognized Loss and Gain Amounts on "written" call options is zero. In the event that a Claimant has an opening written position in call options, the earliest purchases or acquisitions of like call options during the Settlement Class Period shall be matched against such opening written position, and not be entitled to a recovery, until that written position is fully covered.

65.  If a Settlement Class Member has purchased or acquired Salix Put Options, thereby having a long position in the put options, the date of purchase/acquisition is deemed to be the date of purchase/acquisition of the put option. The date on which the put option was sold, exercised, or expired is deemed to be the date of sale of the put option. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on purchased/acquired put options is zero. In the event that a Claimant has an opening long position in put options, the earliest sales or dispositions of like put options during the Class Period shall be matched against such opening position, and not be entitled to a recovery, until that long position is fully covered.

66.  **Common Stock Acquired/Sold Through the Exercise of Options:**  With respect to Salix common stock purchased or sold through the exercise of an option, the purchase/sale date of the common stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

67.  **Netting of Market Gains and Market Losses.**  As set forth in more detail in paragraphs 68 and 69 below, the amount of a Claimant's recognized claim under the Plan of Allocation with respect to (i) his, her or its transactions in Salix common stock and (ii) his, her or its transactions in Salix Options, will be limited by his her, her or its market loss on transactions during the Class Period in each of these two types of securities (and the Claimant will have no recognized claim for that type of security if he, she or it had an overall market gain in transactions in that type of security during the Class Period). However, market gains in common stock transactions during the Class Period will not be netted against market losses or recognized claims relating to Salix Options, and market gains in transactions in Salix Options will not be netted against market losses or recognized claims relating to common stock.

68.  **Calculation of "Recognized Common Stock Claim":**  For purposes of determining whether a Claimant had a market gain with respect to his, her, or its overall transactions in Salix common stock during the Class Period or suffered a market loss, the Claims Administrator will determine the difference between (i) the Total Purchase Amount[6] and (ii) the sum of the Total Sales Proceeds[7] and Holding Value[8] for all shares of Salix common stock purchased during the Class Period. This difference will be deemed a Claimant's "Common Stock Market Loss;" if this number is a negative number or zero, the Claimant's Common Stock Market Loss shall be zero. The Claimant's "Recognized Common Stock Claim" shall be **the lesser of**: (i) the sum of the Recognized Loss Amounts for all of the Claimant's Class Period purchases of Salix common stock as calculated under paragraph 53 above, or (ii) his, her or its Common Stock Market Loss.

---

[6] The "Total Purchase Amount" is the total amount the Claimant paid (excluding commissions and other charges) for Salix common stock purchased during the Class Period.

[7] The Claims Administrator will match any sales of Salix common stock during the Class Period first against the Claimant's opening position (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received (excluding commissions and other charges) for the remaining sales of Salix common stock sold during the Class Period will be the "Total Sales Proceeds."

[8] The Claims Administrator will ascribe a value of $91.47 per share for Salix common stock purchased during the Class Period and still held as of the close of trading on November 6, 2014 (the "Holding Value"). The Holding Value is based on the closing price of Salix common stock on November 7, 2014, the day after the last day of the Class Period.

69. **Calculation of "Recognized Options Claim":**

   (a) For Salix Call Options, the Claims Administrator will determine the difference between (i) the Claimant's Call Option Purchase Amount[9] and (ii) the sum of the Claimant's Call Option Sales Proceeds[10] and Call Option Holding Value.[11] If this is a positive number, that number will be the Claimant's Call Option Market Loss; if the number is a negative number or zero, that number will be the Claimant's Call Option Market Gain.

   (b) With respect to Salix Put Options, the Claims Administrator shall determine the difference between (i) the sum of the Claimant's Put Option Purchase Amount[12] and Put Option Holding Value;[13] and (ii) the Claimant's Put Option Sale Proceeds.[14] If this is a positive number, that number will be the Claimant's Put Option Market Loss; if the number is a negative number or zero, that number will be the Claimant's Put Option Market Gain.

   (c) The sum of a Claimant's Call Option Market Loss and Put Option Market Loss _less_ the sum of a Claimant's Call Option Market Gain and Put Option Market Gain shall be the Claimant's "Overall Options Market Loss." If this number is a negative number or zero, the Claimant's Overall Options Market Loss shall be zero.

   (d) The Claimant's "Recognized Options Claim" shall be the lesser of (i) the sum of the Recognized Loss Amounts for all of the Claimant's Class Period transactions in Salix Options as calculated under paragraphs 57 and 58 above, or (ii) his, her or its Overall Options Market Loss.

70. **Calculation of Claimant's "Recognized Claim":** A Claimant's "Recognized Claim" will be the sum of (a) his, her or its Recognized Common Stock Claim and (b) his, her or its Recognized Options Claim.

71. **Determination of Distribution Amount:** If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its _pro rata_ share of the Net Settlement Fund. The _pro rata_ share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

72. If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund shall be distributed _pro rata_ to all Authorized Claimants entitled to receive payment.

73. The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $10.00 or greater. If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation (_i.e._, the Recognized Claim will be deemed to be zero) and no distribution will be made to that Authorized Claimant. Any prorated amounts of less than $10.00 will be included in the pool distributed to those whose prorated payments are $10.00 or greater.

---

[9] The "Call Option Purchase Amount" is the total amount the Claimant paid (excluding commissions and other charges) for Salix Call Options purchased during the Class Period.

[10] The Claims Administrator will match any sales of Salix Call Options during the Class Period first against the Claimant's opening position in like Call Options (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received (excluding commissions and other charges) for the remaining sales of Salix Call Options sold during the Class Period will be the "Call Option Sales Proceeds."

[11] For each Salix Call Option purchased or acquired during the Class Period that was still held as of the close of trading on November 6, 2014, the Claims Administrator shall ascribe a "Holding Value" for that option series which shall be the Holding Price of that option as of November 7, 2014, as set forth in the table for that option series available at www.SalixSecuritiesLitigation.com/options.

[12] For Salix Put Options, the Claims Administrator shall match any purchases during the Class Period to close out positions in Salix Put Options first against the Claimant's opening position in like put options (the total amount paid with respect to those purchases will not be considered for purposes of calculating market gains or losses). The total amount paid for the remaining purchases during the Class Period to close out positions in Salix Put Options is the "Put Option Purchase Amount."

[13] For each Salix Put Option sold (written) during the Class Period that was still outstanding as of the close of trading on November 6, 2014, the Claims Administrator shall ascribe a "Holding Value" for that option series which shall be the Holding Price of that option as of November 7, 2014, as set forth in the table for that option series available at www.SalixSecuritiesLitigation.com/options.

[14] For Salix Put Options, the total amount received for put options sold (written) during the Class Period is the "Put Option Sales Proceeds."

74. After the initial distribution of the Net Settlement Fund, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the Net Settlement Fund nine (9) months after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so, the Claims Administrator will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution. Additional re-distributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional re-distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determines that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective. At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court.

75. Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, shall be conclusive against all Authorized Claimants. No person shall have any claim against Lead Plaintiff, Plaintiffs' Counsel, Lead Plaintiff's damages expert, Defendants, Defendants' Counsel, or any of the other Plaintiffs' Releasees or Defendants' Releasees, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court. Lead Plaintiff, Defendants and their respective counsel, and all other Defendants' Releasees, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund; the plan of allocation; the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Claims Administrator; the payment or withholding of Taxes; or any losses incurred in connection therewith.

76. The Plan of Allocation set forth herein is the plan that is being proposed to the Court for its approval by Lead Plaintiff after consultation with its damages expert. The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Settlement Class. Any Orders regarding any modification of the Plan of Allocation will be posted on the settlement website, www.SalixSecuritiesLitigation.com.

## WHAT PAYMENT ARE THE ATTORNEYS FOR THE SETTLEMENT CLASS SEEKING? HOW WILL THE LAWYERS BE PAID?

77. Plaintiffs' Counsel have not received any payment for their services in pursuing claims against the Defendants on behalf of the Settlement Class, nor have Plaintiffs' Counsel been reimbursed for their out-of-pocket expenses. Before final approval of the Settlement, Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP, 1251 Avenue of the Americas, 44th Floor, New York, NY 10020, will apply to the Court for an award of attorneys' fees, on behalf of all Plaintiffs' Counsel, in an amount not to exceed 22% of the Settlement Fund. Lead Counsel has fee-sharing agreements with the other Plaintiffs' Counsel firms, Robbins Geller Rudman & Dowd LLP and Hach Rose Schirripa & Cheverie, LLP, which provide that Lead Counsel will compensate these firms from the attorneys' fees that Lead Counsel receives in this Action in amounts commensurate with those firms' efforts in this litigation. At the same time, Lead Counsel also intends to apply to the Court for reimbursement of Litigation Expenses in an amount not to exceed $2.5 million, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class. The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses. Such sums as may be approved by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses.

## WHAT IF I DO NOT WANT TO BE A MEMBER OF THE SETTLEMENT CLASS? HOW DO I EXCLUDE MYSELF?

78. Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written Request for Exclusion from the Settlement Class, addressed to *In re Salix Pharmaceuticals, Ltd.*, EXCLUSIONS, c/o Epiq Systems, P.O. Box 3656, Portland, OR 97208-3656. The exclusion request must be **received no later than July 5, 2017**. You will not be able to exclude yourself from the Settlement Class after that date. Each Request for Exclusion must (a) state the name, address and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *In re Salix Pharmaceuticals, Ltd.*, Case No. 14 Civ. 8925 (KMW)"; (c) state the number of shares of Salix common stock, and publicly traded call or put options on Salix common stock that the person or entity requesting exclusion purchased, acquired and sold during the Class Period (*i.e.*, November 8, 2013 through November

6, 2014, inclusive), as well as the dates and prices of each such purchase/acquisition and sale; and (d) be signed by the person or entity requesting exclusion or an authorized representative.  A Request for Exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

79.  If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Plaintiffs' Claim against any of the Defendants' Releasees.

80.  If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Settlement Fund.

81.  Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Lead Plaintiff and Salix.

## WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?  DO I HAVE TO COME TO THE HEARING? MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?

82.  **Settlement Class Members do not need to attend the Settlement Hearing.  The Court will consider any submission made in accordance with the provisions below even if a Settlement Class Member does not attend the hearing.  You can participate in the Settlement without attending the Settlement Hearing.**

83.  The Settlement Hearing will be held on July 24, 2017 at 11:00 a.m., before the Honorable Kimba M. Wood at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, Courtroom 18B, 500 Pearl Street, New York, NY 10007-1312.  The Court reserves the right to approve the Settlement, the Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and/or any other matter related to the Settlement at or after the Settlement Hearing without further notice to the members of the Settlement Class.

84.  Any Settlement Class Member who or which does not request exclusion may object to the Settlement, the proposed Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Objections must be in writing.  You must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the Southern District of New York at the address set forth below on or before July 5, 2017.  You must also serve the papers on Lead Counsel and on Salix's Counsel at the addresses set forth below so that the papers are *received* on or before **July 5, 2017**.

| Clerk's Office | Lead Counsel | Salix's Counsel |
|---|---|---|
| United States District Court Southern District of New York Clerk of the Court Daniel Patrick Moynihan United States Courthouse 500 Pearl Street New York, NY 10007-1312 | **Bernstein Litowitz Berger & Grossmann LLP** Salvatore J. Graziano, Esq. 1251 Avenue of the Americas, 44th Floor New York, NY 10020 | **Cahill Gordon & Reindel LLP** Charles A. Gilman, Esq. 80 Pine Street New York, NY 10005 |

85.  Any objection (a) must state the name, address and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of each number of shares of Salix common stock, and publicly traded call or put options on Salix common stock that the person or entity requesting exclusion purchased, acquired and sold during the Class Period (from November 8, 2013 through November 6, 2014, inclusive), as well as the dates and prices of each such purchase/acquisition and sale.  You may not object to the Settlement, the Plan of Allocation or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses if you exclude yourself from the Settlement Class or if you are not a member of the Settlement Class.

86.   You may file a written objection without having to appear at the Settlement Hearing.  You may not, however, appear at the Settlement Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

87.   If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and if you timely file and serve a written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Lead Counsel and Salix's Counsel at the addresses set forth above so that it is *received on or before July 5, 2017*.  Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.  Such persons may be heard orally at the discretion of the Court.

88.   You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing.  However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Lead Counsel and Salix's Counsel at the addresses set forth in ¶ 84 above so that the notice is *received on or before July 5, 2017*.

89.   The Settlement Hearing may be adjourned by the Court without further written notice to the Settlement Class.  If you plan to attend the Settlement Hearing, you should confirm the date and time with Lead Counsel.

90.   **Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

## WHAT IF I BOUGHT SHARES OR OPTIONS ON SOMEONE ELSE'S BEHALF?

91.   If you purchased or otherwise acquired Salix common stock or publicly traded call options on Salix common stock, or sold publicly traded put options on Salix common stock, during the Class Period (November 8, 2013 through November 6, 2014, inclusive) for the beneficial interest of persons or organizations other than yourself, you must either (a) within seven (7) calendar days of receipt of this Notice, request from the Claims Administrator sufficient copies of the Notice and Claim Form (the "Notice Packet") to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Notice Packets forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of this Notice, provide a list of the names and addresses of all such beneficial owners to *In re Salix Pharmaceuticals, Ltd.*, c/o Epiq Systems, P.O. Box 3656, Portland, OR 97208-3656.  If you choose the second option, the Claims Administrator will send a copy of the Notice and the Claim Form to the beneficial owners.  Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.  Copies of this Notice and the Claim Form may also be obtained from the website maintained by the Claims Administrator, www.SalixSecuritiesLitigation.com, or by calling the Claims Administrator toll-free at 1-844-308-6864.

## CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

92.  This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007-1312.  Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.SalixSecuritiesLitigation.com.

All inquiries concerning this Notice and the Claim Form should be directed to:

| | | |
|---|---|---|
| *In re Salix Pharmaceuticals, Ltd.* | and/or | Salvatore J. Graziano, Esq. |
| c/o Epiq Systems | | BERNSTEIN LITOWITZ BERGER |
| P.O. Box 3656 | | & GROSSMANN LLP |
| Portland, OR 97208-3656 | | 1251 Avenue of the Americas, 44th Floor |
| (844) 308-6864 | | New York, NY 10020 |
| www.SalixSecuritiesLitigation.com | | (800) 380-8496 |
| | | blbg@blbglaw.com |

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF THE COURT, DEFENDANTS OR THEIR COUNSEL REGARDING THIS NOTICE.**

Dated: May 1, 2017

By Order of the Court
United States District Court
Southern District of New York

**TABLE A**

**Salix Common Stock Closing Price and Average Closing Price**
**November 7, 2014 – February 4, 2015**

| Date | Closing Price | Average Closing Price Between November 7, 2014 and Date Shown | Date | Closing Price | Average Closing Price Between November 7, 2014 and Date Shown |
|---|---|---|---|---|---|
| 11/7/2014 | $91.47 | $91.47 | 12/22/2014 | $117.46 | $104.40 |
| 11/10/2014 | $93.87 | $92.67 | 12/23/2014 | $116.10 | $104.76 |
| 11/11/2014 | $99.01 | $94.78 | 12/24/2014 | $114.92 | $105.07 |
| 11/12/2014 | $95.55 | $94.98 | 12/26/2014 | $118.09 | $105.45 |
| 11/13/2014 | $96.99 | $95.38 | 12/29/2014 | $118.02 | $105.81 |
| 11/14/2014 | $102.32 | $96.54 | 12/30/2014 | $116.20 | $106.10 |
| 11/17/2014 | $101.21 | $97.20 | 12/31/2014 | $114.94 | $106.34 |
| 11/18/2014 | $105.39 | $98.23 | 1/2/2015 | $114.74 | $106.56 |
| 11/19/2014 | $103.63 | $98.83 | 1/5/2015 | $112.84 | $106.72 |
| 11/20/2014 | $100.43 | $98.99 | 1/6/2015 | $115.99 | $106.95 |
| 11/21/2014 | $102.90 | $99.34 | 1/7/2015 | $120.21 | $107.28 |
| 11/24/2014 | $102.91 | $99.64 | 1/8/2015 | $118.93 | $107.55 |
| 11/25/2014 | $102.34 | $99.85 | 1/9/2015 | $118.09 | $107.80 |
| 11/26/2014 | $103.25 | $100.09 | 1/12/2015 | $119.87 | $108.07 |
| 11/28/2014 | $102.69 | $100.26 | 1/13/2015 | $119.80 | $108.33 |
| 12/1/2014 | $101.59 | $100.35 | 1/14/2015 | $120.21 | $108.59 |
| 12/2/2014 | $103.27 | $100.52 | 1/15/2015 | $119.11 | $108.82 |
| 12/3/2014 | $104.05 | $100.72 | 1/16/2015 | $120.19 | $109.05 |
| 12/4/2014 | $105.88 | $100.99 | 1/20/2015 | $125.83 | $109.40 |
| 12/5/2014 | $105.62 | $101.22 | 1/21/2015 | $124.49 | $109.70 |
| 12/8/2014 | $108.00 | $101.54 | 1/22/2015 | $125.99 | $110.02 |
| 12/9/2014 | $107.98 | $101.83 | 1/23/2015 | $125.92 | $110.32 |
| 12/10/2014 | $105.68 | $102.00 | 1/26/2015 | $127.00 | $110.64 |
| 12/11/2014 | $106.15 | $102.17 | 1/27/2015 | $126.30 | $110.93 |
| 12/12/2014 | $103.36 | $102.22 | 1/28/2015 | $127.89 | $111.24 |
| 12/15/2014 | $103.03 | $102.25 | 1/29/2015 | $135.14 | $111.66 |
| 12/16/2014 | $110.11 | $102.54 | 1/30/2015 | $134.67 | $112.07 |
| 12/17/2014 | $114.49 | $102.97 | 2/2/2015 | $133.65 | $112.44 |
| 12/18/2014 | $118.45 | $103.50 | 2/3/2015 | $140.47 | $112.91 |
| 12/19/2014 | $117.20 | $103.96 | 2/4/2015 | $139.78 | $113.36 |

R38618 v.04 04.17.2017

*In re Salix Pharmaceuticals, Ltd.*
**c/o Epiq Systems**
**P.O. Box 3656**
**Portland, OR  97208-3656**

**Toll-Free Number: (844) 308-6864**
**Email: info@SalixSecuritiesLitigation.com**
**Settlement Website: www.SalixSecuritiesLitigation.com**

# PROOF OF CLAIM AND RELEASE FORM

To be eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must complete and sign this Proof of Claim and Release Form ("Claim Form") and mail it by first-class mail to the above address, **postmarked no later than August 9, 2017**.

Failure to submit your Claim Form by the date specified will subject your claim to rejection and may preclude you from being eligible to receive any money in connection with the Settlement.

**Do not mail or deliver your Claim Form to the Court, the parties to the Action, or their counsel.  Submit your Claim Form only to the Claims Administrator at the address set forth above.**

| TABLE OF CONTENTS | PAGE # |
|---|---|
| **PART I – CLAIMANT INFORMATION** | **2** |
| **PART II – GENERAL INSTRUCTIONS** | **3** |
| **PART III – SCHEDULE OF TRANSACTIONS IN SALIX COMMON STOCK** | **5** |
| **PART IV – SCHEDULE OF TRANSACTIONS IN SALIX CALL OPTIONS** | **6** |
| **PART V – SCHEDULE OF TRANSACTIONS IN SALIX PUT OPTIONS** | **9** |
| **PART VI – RELEASE OF CLAIMS AND SIGNATURE** | **12** |

## PART I - CLAIMANT INFORMATION

The Claims Administrator will use this information for all communications regarding this Claim Form.  If this information changes, you MUST notify the Claims Administrator in writing at the address above.

Beneficial Owner's First Name                              MI        Beneficial Owner's Last Name

Co-Beneficial Owner's First Name                         MI        Co-Beneficial Owner's Last Name

Entity Name (if Beneficial Owner is not an individual)

Representative or Custodian Name (if different from Beneficial Owner(s) listed above)

Address 1 (street name and number)

Address 2 (apartment, unit or box number)

City                                                                        State        Zip Code

Country

Last four digits of Social Security Number or Taxpayer Identification Number

Telephone Number (home)                                          Telephone Number (work)

Email address (Email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.):

Account Number (where securities were traded)[1]:

Claimant Account Type (check appropriate box):

☐ Individual (includes joint owner accounts)        ☐ Pension Plan                 ☐ Trust

☐ Corporation                                                   ☐ Estate

☐ IRA/401K                                                      ☐ Other _____ (please specify)

---

[1] If the account number is unknown, you may leave blank.  If filing for more than one account for the same legal entity you may write "multiple."  Please see paragraph 8 below for more information on when to file separate Claim Forms for multiple accounts.

## PART II – GENERAL INSTRUCTIONS

1.      It is important that you completely read and understand the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") that accompanies this Claim Form, including the Plan of Allocation of the Net Settlement Fund set forth in the Notice. The Notice describes the proposed Settlement, how Settlement Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court. The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form. By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Notice, including the terms of the releases described therein and provided for herein.

2.      This Claim Form is directed to all persons and entities that purchased or acquired publicly traded Salix common stock or publicly traded call options on Salix common stock ("Salix Call Options"), or sold publicly traded put options on Salix common stock ("Salix Put Options"), during the period from November 8, 2013 through November 6, 2014, inclusive (the "Class Period"), and were damaged thereby (the "Settlement Class"). Certain persons and entities are excluded from the Settlement Class by definition as set forth in paragraph 21 of the Notice. Salix common stock, Salix Call Options and Salix Put Options are referred to collectively as the "Salix Securities."

3.      By submitting this Claim Form, you will be making a request to share in the proceeds of the Settlement described in the Notice. IF YOU ARE NOT A SETTLEMENT CLASS MEMBER (see the definition of the Settlement Class on page 5 of the Notice, which sets forth who is included in and who is excluded from the Settlement Class), OR IF YOU, OR SOMEONE ACTING ON YOUR BEHALF, SUBMITTED A REQUEST FOR EXCLUSION FROM THE SETTLEMENT CLASS, DO NOT SUBMIT A CLAIM FORM. **YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A SETTLEMENT CLASS MEMBER.** THUS, IF YOU ARE EXCLUDED FROM THE SETTLEMENT CLASS, ANY CLAIM FORM THAT YOU SUBMIT, OR THAT MAY BE SUBMITTED ON YOUR BEHALF, WILL NOT BE ACCEPTED.

4.      **Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlement. The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Notice, if it is approved by the Court, or by such other plan of allocation as the Court approves.**

5.      Use the Schedules of Transactions in Parts III to V of this Claim Form to supply all required details of your transaction(s) (including free transfers and deliveries) in and holdings of the applicable Salix Securities. On these schedules, please provide all of the requested information with respect to your holdings, purchases, acquisitions, and sales of the applicable Salix Securities, whether such transactions resulted in a profit or a loss. **Failure to report all transaction and holding information during the requested time period may result in the rejection of your claim.**

6.      <u>Please note</u>: Only Salix common stock and Salix Call Options purchased or otherwise acquired, and Salix Put Options sold, during the Class Period (*i.e.*, from November 8, 2013 through November 6, 2014, inclusive) are eligible under the Settlement. However, under the "90-day look-back period" (described in the Plan of Allocation set forth in the Notice), your sales of Salix common stock and Salix Call Options contracts and purchases of Salix Put Options during the period from November 7, 2014 through February 4, 2015, inclusive, will be used for purposes of calculating your claim under the Plan of Allocation. Therefore, in order for the Claims Administrator to be able to balance your claim, the requested purchase/acquisition information for Salix common stock and Salix Call Options and sales information for Salix Put Options during this period must also be provided.

7.      You are required to submit genuine and sufficient documentation for all of your transactions in and holdings of the applicable Salix Securities set forth in the Schedules of Transactions in Parts III to V of this Claim Form. Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement. The Parties, including Salix, and the Claims Administrator do not independently have information about your investments in Salix common stock. IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OF THE DOCUMENTS OR EQUIVALENT DOCUMENTS FROM YOUR BROKER. FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM. DO NOT SEND ORIGINAL DOCUMENTS. **Please keep a copy of all documents that you send to the Claims Administrator. Also, please do not highlight any portion of the Claim Form or any supporting documents.**

8.      Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in the individual's name). Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity on one Claim Form, no matter how many separate accounts that entity has (*e.g.*, a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

9.      All joint beneficial owners must each sign this Claim Form and their names must appear as "Beneficial Owners" in Part I of this Claim Form.  If you purchased or otherwise acquired Salix common stock or Salix Call Options, or sold Salix Put Options, during the Class Period and held the securities in your name, you are the beneficial owner as well as the record owner and you must sign this Claim Form to participate in the Settlement.  If, however, you purchased or otherwise acquired Salix common stock or Salix Call Options, or sold Salix Put Options, during the Class Period and the securities were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these shares, but the third party is the record owner.  The beneficial owner, not the record owner, must sign this Claim Form.

10.     Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

   (a)   expressly state the capacity in which they are acting;

   (b)   identify the name, account number, Social Security Number (or taxpayer identification number), address and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the Salix Securities; and

   (c)   furnish herewith evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting. (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade securities in another person's accounts.)

11.     By submitting a signed Claim Form, you will be swearing that you:

   (a)   owned the Salix Securities you have listed in the Claim Form; or

   (b)   are expressly authorized to act on behalf of the owner thereof.

12.     By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America.  The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

13.     If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after any appeals are resolved, and after the completion of all claims processing.  The claims process will take substantial time to complete fully and fairly.  Please be patient.

14.     **PLEASE NOTE:**  As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund.  If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

15.     If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, Epiq Systems, at the above address, by email at info@SalixSecuritiesLitigation.com, or by toll-free phone at (844) 308-6864, or you can visit the Settlement website, www.SalixSecuritiesLitigation.com, where copies of the Claim Form and Notice are available for downloading.

16.     NOTICE REGARDING ELECTRONIC FILES:   Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files.  To obtain the mandatory electronic filing requirements and file layout, you may visit the settlement website at www.SalixSecuritiesLitigation.com or you may email the Claims Administrator's electronic filing department at info@SalixSecuritiesLitigation.com.  Any file not in accordance with the required electronic filing format will be subject to rejection.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email to that effect after processing your file with your claim numbers and respective account information.  **Do not assume that your file has been received or processed until you receive this email.  If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at info@SalixSecuritiesLitigation.com to inquire about your file and confirm it was received and acceptable.**

## IMPORTANT: PLEASE NOTE

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD.  THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL, WITHIN 60 DAYS.  IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT POSTCARD WITHIN 60 DAYS, PLEASE CALL THE CLAIMS  ADMINISTRATOR TOLL FREE AT (844) 308-6864.**

PART III – SCHEDULE OF TRANSACTIONS IN SALIX COMMON STOCK

Complete this Part III if and only if you purchased or acquired Salix common stock during the period from November 8, 2013 through and including November 6, 2014. Please be sure to include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 7, above. Do not include information regarding securities other than Salix common stock in this section.

---

**1. HOLDINGS AS OF NOVEMBER 8, 2013 –** State the total number of shares of Salix common stock held as of the opening of trading on November 8, 2013. (Must be documented.) If none, write "zero" or "0."

| | | | | | | | . | | |
|---|---|---|---|---|---|---|---|---|---|

---

**2. PURCHASES/ACQUISITIONS FROM NOVEMBER 8, 2013 THROUGH NOVEMBER 6, 2014 –** Separately list each and every purchase/acquisition (including free receipts) of Salix common stock from after the opening of trading on November 8, 2013 through and including November 6, 2014. (Must be documented.)

| Date of Purchase/Acquisition (List Chronologically) (MMDDYY) | Number of Shares Purchased/Acquired | Purchase/Acquisition Price Per Share | Total Purchase/Acquisition Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

---

**3. PURCHASES/ACQUISITIONS FROM NOVEMBER 7, 2014 THROUGH FEBRUARY 4, 2015 –** State the total number of shares of Salix common stock purchased/acquired (including free receipts) from November 7, 2014 through and including the close of trading on February 4, 2015. If none, write "zero" or "0."[2]

| | | | | | | | . | | |
|---|---|---|---|---|---|---|---|---|---|

---

**4. SALES FROM NOVEMBER 8, 2013 THROUGH FEBRUARY 4, 2015 –** Separately list each and every sale/disposition (including free deliveries) of Salix common stock from after the opening of trading on November 8, 2013 through and including the close of trading on February 4, 2015. (Must be documented.)

**IF NONE, CHECK HERE** ☐

| Date of Sale (List Chronologically) (MMDDYY) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

---

**5. HOLDINGS AS OF FEBRUARY 4, 2015 –** State the total number of shares of Salix common stock held as of the close of trading on February 4, 2015. (Must be documented.) If none, write "zero" or "0."

| | | | | | | | . | | |
|---|---|---|---|---|---|---|---|---|---|

---

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS/HOLDINGS IN SALIX COMMON STOCK YOU MUST PHOTOCOPY THIS PAGE, PRINT THE BENEFICIAL OWNER'S FULL NAME AND LAST FOUR DIGITS OF SOCIAL SECURITY/TAXPAYER IDENTIFICATION NUMBER ON EACH ADDITIONAL PAGE, AND CHECK THIS BOX.** ☐

---

[2] **Please note**: Information requested with respect to your purchases/acquisitions of Salix common stock from November 7, 2014 through and including February 4, 2015 is needed in order to balance your claim; purchases during this period, however, are not eligible under the Settlement and will not be used for purposes of calculating your Recognized Claim pursuant to the Plan of Allocation.



05-CA9538

R3875 v.06 04.17.2017

## PART IV – SCHEDULE OF TRANSACTIONS IN SALIX CALL OPTIONS

Complete this Part IV if and only if you purchased or acquired publicly traded call options on Salix common stock ("Salix Call Options") during the period from November 8, 2013 through and including November 6, 2014.  Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 7, above.  Do not include information regarding securities other than Salix Call Options in this section.

**IF NONE, CHECK HERE** ☐

**1. HOLDINGS AS OF NOVEMBER 8, 2013** – Separately list all positions in Salix Call Option contracts in which you had an open interest as of the opening of trading on November 8, 2013.  (Must be documented.)

| Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts in Which You Had an Open Interest |
|---|---|---|
| $ | | |
| $ | | |
| $ | | |
| $ | | |

**2. PURCHASES/ACQUISITIONS FROM NOVEMBER 8, 2013 THROUGH NOVEMBER 6, 2014** – Separately list each and every purchase and acquisition (including free receipts) of Salix Call Options contracts from after the opening of trading on November 8, 2013, through and including the close of trading on November 6, 2014. (Must be documented.)

| Date of Purchase/ Acquisition (List Chronologically) (MMDDYY) | Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts Purchased/Acquired | Purchase/ Acquisition Price Per Call Option Contract | Total Purchase/ Acquisition Price (excluding taxes, commissions, and fees) | Insert an "E" if Exercised | Insert an "X" if Expired | Exercise Date (MMDDYY) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Page 6

**3.  PURCHASES/ACQUISITIONS FROM NOVEMBER 7, 2014 THROUGH FEBRUARY 4, 2015** – State the total number of each series of Salix Call Options that you purchased or acquired (including free receipts) from after the opening of trading on November 7, 2014 through and including the close of trading on February 4, 2015.[3]

IF NONE, CHECK HERE ☐

| Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts You Purchased/Acquired from Nov. 7, 2014 through Feb. 4, 2015 |
|---|---|---|
| $ | | |
| $ | | |
| $ | | |
| $ | | |

**4.  SALES FROM NOVEMBER 8, 2013 THROUGH FEBRUARY 4, 2015** – Separately list each and every sale or disposition (including free deliveries) of Salix Call Options from after the opening of trading on November 8, 2013, through and including the close of trading on February 4, 2015. (Must be documented.)

IF NONE, CHECK HERE ☐

| Date of Sale (List Chronologically) (MMDDYY) | Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts Sold | Sale Price Per Call Option Contract | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

[3] **Please note**:  Information requested with respect to your purchases/acquisitions of Salix Call Options contracts from November 7, 2014 through and including February 4, 2015 is needed in order to balance your claim; purchases during this period, however, are not eligible under the Settlement and will not be used for purposes of calculating your Recognized Claim pursuant to the Plan of Allocation.

Page 7

07-CA9538
R3877.V.06 04.17.2017

**IF NONE, CHECK HERE** ☐

**5. HOLDINGS AS OF FEBRUARY 4, 2015** – Separately list all positions in Salix Call Option contracts in which you had an open interest as on February 4, 2015. (Must be documented.)

| Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts in Which You Had an Open Interest |
|---|---|---|
| $ ___ • ___ | ___ | ___ |
| $ ___ • ___ | ___ | ___ |
| $ ___ • ___ | ___ | ___ |
| $ ___ • ___ | ___ | ___ |

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS/HOLDINGS IN SALIX CALL OPTIONS YOU MUST PHOTOCOPY THE RELEVANT PAGES, PRINT THE BENEFICIAL OWNER'S FULL NAME AND LAST FOUR DIGITS OF SOCIAL SECURITY/TAXPAYER IDENTIFICATION NUMBER ON EACH ADDITIONAL PAGE, AND CHECK THIS BOX. ☐

Page 8

08-CA9538
R3878 V.06 04.17.2017

# PART V – SCHEDULE OF TRANSACTIONS IN SALIX PUT OPTIONS

Complete this Part V if and only if you sold (wrote) publicly traded put options on Salix common stock ("Salix Put Options") during the period from November 8, 2013 through and including November 6, 2014. Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 7, above. Do not include information regarding securities other than Salix Put Options in this section.

**IF NONE, CHECK HERE** ☐

**1. HOLDINGS AS OF NOVEMBER 8, 2013** – Separately list all positions in Salix Put Option contracts in which you had an open interest as of the opening of trading on November 8, 2013. (Must be documented.)

| Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts in Which You Had an Open Interest |
|---|---|---|
| $ _____ . __ | __ __ __ __ __ __ | __ __ __ __ |
| $ _____ . __ | __ __ __ __ __ __ | __ __ __ __ |
| $ _____ . __ | __ __ __ __ __ __ | __ __ __ __ |
| $ _____ . __ | __ __ __ __ __ __ | __ __ __ __ |

**2. SALES (WRITING) FROM NOVEMBER 8, 2013 THROUGH NOVEMBER 6, 2014** – Separately list each and every sale (writing) (including free deliveries) of Salix Put Options contracts from after the opening of trading on November 8, 2013, through and including the close of trading on November 6, 2014. (Must be documented.)

| Date of Sale (Writing) (List Chronologically) (MMDDYY) | Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts Sold (Written) | Sale Price Per Put Option Contract | Total Sale Price (excluding taxes, commissions, and fees) | Insert an "E" if Exercised / Insert an "X" if Expired | Exercise Date (MMDDYY) |
|---|---|---|---|---|---|---|---|
| __ __ __ __ __ __ | __ __ __ . __ | __ __ __ __ __ __ | __ __ __ __ | __ __ __ . __ | __ __ __ __ . __ | __ | __ __ __ __ __ __ |
| __ __ __ __ __ __ | __ __ __ . __ | __ __ __ __ __ __ | __ __ __ __ | __ __ __ . __ | __ __ __ __ . __ | __ | __ __ __ __ __ __ |
| __ __ __ __ __ __ | __ __ __ . __ | __ __ __ __ __ __ | __ __ __ __ | __ __ __ . __ | __ __ __ __ . __ | __ | __ __ __ __ __ __ |
| __ __ __ __ __ __ | __ __ __ . __ | __ __ __ __ __ __ | __ __ __ __ | __ __ __ . __ | __ __ __ __ . __ | __ | __ __ __ __ __ __ |

Page 9

**09-CA9538**
R3879 V.06 04.17.2017

**3. SALES (WRITING) FROM NOVEMBER 7, 2014 THROUGH FEBRUARY 4, 2015** – State the total number of each series of Salix Put Options that you sold (wrote) (including free deliveries) from after the opening of trading on November 7, 2014 through and including the close of trading on February 4, 2015.[4]

IF NONE, CHECK HERE ☐

| Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts You Sold (Wrote) from Nov. 7, 2014 through Feb. 4, 2015 |
|---|---|---|
| $ ☐☐☐·☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐ |
| $ ☐☐☐·☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐ |
| $ ☐☐☐·☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐ |
| $ ☐☐☐·☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐ |

**4. PURCHASES/ACQUISITIONS FROM NOVEMBER 8, 2013 THROUGH FEBRUARY 4, 2015** – Separately list each and every purchase and acquisition (including free receipts) of Salix Put Options contacts from after the opening of trading on November 8, 2013, through and including the close of trading on February 4, 2015. (Must be documented.)

IF NONE, CHECK HERE ☐

| Date of Purchase/ Acquisition (List Chronologically) (MMDDYY) | Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts Purchased/ Acquired | Purchase/ Acquisition Price Per Put Option Contract | Total Purchase/Acquisition Price (excluding taxes, commissions, and fees) |
|---|---|---|---|---|---|
| ☐☐☐☐☐☐ | ☐☐☐·☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐ | ☐☐☐·☐☐ | ☐☐☐☐☐·☐☐ |
| ☐☐☐☐☐☐ | ☐☐☐·☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐ | ☐☐☐·☐☐ | ☐☐☐☐☐·☐☐ |
| ☐☐☐☐☐☐ | ☐☐☐·☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐ | ☐☐☐·☐☐ | ☐☐☐☐☐·☐☐ |
| ☐☐☐☐☐☐ | ☐☐☐·☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐ | ☐☐☐·☐☐ | ☐☐☐☐☐·☐☐ |

[4] **Please note:** Information requested with respect to your sales (writing) of Salix Put Options contracts from November 7, 2014 through and including February 4, 2015 is needed in order to balance your claim; sales during this period, however, are not eligible under the Settlement and will not be used for purposes of calculating your Recognized Claim pursuant to the Plan of Allocation.

**010-CA9538**
R08710 v06 04 17 2017

**5. HOLDINGS AS OF FEBRUARY 4, 2015** – Separately list all positions in Salix Put Option contracts in which you had an open interest as on February 4, 2015. (Must be documented.)

**IF NONE, CHECK HERE** ☐

| Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts in Which You Had an Open Interest |
|---|---|---|
| $ ☐☐☐ • ☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐☐ |
| $ ☐☐☐ • ☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐☐ |
| $ ☐☐☐ • ☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐☐ |
| $ ☐☐☐ • ☐☐ | ☐☐☐☐☐☐ | ☐☐☐☐☐ |

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS/HOLDINGS IN SALIX PUT OPTIONS YOU MUST PHOTOCOPY THE RELEVANT PAGES, PRINT THE BENEFICIAL OWNER'S FULL NAME AND LAST FOUR DIGITS OF SOCIAL SECURITY/TAXPAYER IDENTIFICATION NUMBER ON EACH ADDITIONAL PAGE, AND CHECK THIS BOX. ☐

Page 11

**011-CA9538**
R38711 v06 04.17.2017



## PART VI - RELEASE OF CLAIMS AND SIGNATURE

### YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW
### AND SIGN ON PAGE 13 OF THIS CLAIM FORM.

I (we) hereby acknowledge that, pursuant to the terms set forth in the Stipulation, without further action by anyone, upon the Effective Date of the Settlement, I (we), on behalf of myself (ourselves) and my (our) heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiff's Claim (including, without limitation, any Unknown Claims) against the Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiff's Claims against any of the Defendants' Releasees.

## CERTIFICATION

By signing and submitting this Claim Form, the claimant(s) or the person(s) who represent(s) the claimant(s) agree(s) to the release above and certifies (certify) as follows:

      1.     that I (we) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

      2.     that the claimant(s) is a (are) Settlement Class Member(s), as defined in the Notice, and is (are) not excluded by definition from the Settlement Class as set forth in the Notice;

      3.     that the claimant has **not** submitted a request for exclusion from the Settlement Class;

      4.     that I (we) owned the Salix Securities identified in the Claim Form and have not assigned the claim against any of the Defendants or any of the other Defendants' Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

      5.     that the claimant(s) has (have) not submitted any other claim covering the same purchases or sales of Salix Securities and knows (know) of no other person having done so on the claimant's (claimants') behalf;

      6.     that the claimant(s) submit(s) to the jurisdiction of the Court with respect to claimant's (claimants') claim and for purposes of enforcing the releases set forth herein;

      7.     that I (we) agree to furnish such additional information with respect to this Claim Form as Lead Counsel, the Claims Administrator or the Court may require;

      8.     that the claimant(s) waive(s) the right to trial by jury, to the extent it exists, and agree(s) to the Court's summary disposition of the determination of the validity or amount of the claim made by this Claim Form;

      9.     that I (we) acknowledge that the claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

      10.     that the claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (a) the claimant(s) is (are) exempt from backup withholding or (b) the claimant(s) has (have) not been notified by the IRS that he/she/it/they is (are) subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified the claimant(s) that he/she/it/they is (are) no longer subject to backup withholding.  **If the IRS has notified the claimant(s) that he/she/it/they is (are) subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

Signature of claimant

Date  ☐☐ – ☐☐ – ☐☐
       MM      DD      YY

Print your name here

Signature of joint claimant, if any

Date  ☐☐ – ☐☐ – ☐☐
       MM      DD      YY

Print your name here

*If the claimant is other than an individual, or is not the person completing this form, the following also must be provided:*

Signature of person signing on behalf of claimant

Date  ☐☐ – ☐☐ – ☐☐
       MM      DD      YY

Print your name here

Capacity of person signing on behalf of claimant, if other than an individual, *e.g.*, executor, president, trustee, custodian, etc.  (Must provide evidence of authority to act on behalf of claimant – see paragraph 10 on page 4 of this Claim Form.)

## REMINDER CHECKLIST:

1.  Please sign the above release and certification.  If this Claim Form is being made on behalf of joint claimants, then both must sign.

2.  Remember to attach only **copies** of acceptable supporting documentation as these documents will not be returned to you.

3.  Please do not highlight any portion of the Claim Form or any supporting documents.

4.  Keep copies of the completed Claim Form and documentation for your own records.

5.  The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days.  Your claim is not deemed filed until you receive an acknowledgement postcard.  **If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll free at (844) 308-6864.**

6.  If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, please send the Claims Administrator written notification of your new address.  If you change your name, please inform the Claims Administrator.

7.  If you have any questions or concerns regarding your claim, please contact the Claims Administrator at the address below, by email at info@SalixSecuritiesLitigation.com, or by toll-free phone at (844) 308-6864, or you may visit www.SalixSecuritiesLitigation.com.  Please DO NOT call Salix or any of the other Defendants or their counsel with questions regarding your claim.

THIS CLAIM FORM MUST BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN AUGUST 9, 2017**, ADDRESSED AS FOLLOWS:

*In re Salix Pharmaceuticals, Ltd.*
c/o Epiq Systems
P.O. Box 3656
Portland, OR  97208-3656

(844) 308-6864
www.SalixSecuritiesLitigation.com

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before August 9, 2017 is indicated on the envelope and it is mailed First Class, and addressed in accordance with the above instructions.  In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms.  Please be patient and notify the Claims Administrator of any change of address.

Exhibit B

# CONFIRMATION OF PUBLICATION

**IN THE MATTER OF:** *In re Salix Pharmaceuticals, Ltd.*

I, Kathleen Komraus, hereby certify that

(a) I am the Media Coordinator at Epiq Systems Class Action & Claims Solutions, a noticing administrator, and;

(b) The Notice of which the annexed is a copy was published in the following publications on the following dates:

*5.12.17 – Wall Street Journal*
*5.12.17 – PR Newswire*

X _Kathleen Komraus_
**(Signature)**

_Media Coordinator_
**(Title)**

**ADVERTISEMENT**

## Legal Notices
To advertise: 800-366-3975 or WSJ.com/classifieds

### CLASS ACTIONS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE SALIX PHARMACEUTICALS, LTD    Case No. 14 Civ. 8925 (KMW)
CLASS ACTION

SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

TO: All persons or entities who purchased or otherwise acquired publicly traded common stock of Salix Pharmaceuticals, Ltd. ("Salix") or publicly traded call options on Salix common stock, or sold publicly traded put options on Salix common stock, during the period from November 8, 2013 through November 6, 2014, inclusive (the "Class Period"), and were damaged thereby (the "Settlement Class"):

PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York, that the above-captioned litigation (the "Action") has been certified for settlement purposes only as a class action on behalf of the Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full printed Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

YOU ARE ALSO NOTIFIED that Lead Plaintiff in the Action has reached a proposed settlement of the Action for $210,000,000 in cash (the "Settlement"), that, if approved, will fully, finally, and completely resolve all claims in the Action.

A hearing will be held on July 24, 2017 at 11:00 a.m., before the Honorable Kimba M. Wood at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, Courtroom 18B, 500 Pearl Street, New York, NY 10007-1312, to determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the Releases specified and described in the Stipulation and Agreement of Settlement dated March 24, 2017 (and in the Notice) should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses should be granted.

If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund. If you have not yet received the Notice and Claim Form, you may obtain copies of these documents by contacting the Claims Administrator at *In re Salix Pharmaceuticals, Ltd., c/o Epiq Systems,* P.O. Box 3656, Portland, OR 97208-3656, 1-844-308-6864. Copies of the Notice and Claim Form can also be downloaded from the website maintained by the Claims Administrator, http://www.SalixSecuritiesLitigation.com.

If you are a member of the Settlement Class, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form *postmarked* no later than August 9, 2017. If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is *received* no later than July 5, 2017, in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of expenses, must be filed with the Court and delivered to Lead Counsel and Salix's Counsel such that they are *received* no later than July 5, 2017, in accordance with the instructions set forth in the Notice.

Please do not contact the Court, the Clerk's office, Salix, or its counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Lead Counsel or the Claims Administrator.

Inquiries, other than requests for the Notice and Claim Form, should be made to Lead Counsel:

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
Salvatore J. Graziano, Esq.
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
(800) 380-8496
blbg@blbglaw.com

Requests for the Notice and Claim Form should be made to:
*In re Salix Pharmaceuticals, Ltd.,*
c/o Epiq Systems
P.O. Box 3656
Portland, OR 97208-3656
(844) 308-6864
www.SalixSecuritiesLitigation.com

By Order of the Court

### NOTICE OF SALE

[property sale table — Notice of Public Sale, Public Sale No. 1: Tuesday May 16, 2017, 10:00 a.m. EDT; Public Sale No. 2: Tuesday, May 16, 2017, 1:00 p.m. EDT]

NOTICE IS HEREBY GIVEN that the Scheme Administrators of Folksam International Insurance Company (UK) Limited (In Administration) ("Folksam") (Company number: 01287764) will be conducting a public sale of certain collateral pledged to the Trustee. The Collateral (as defined below) will be offered and sold by the Trustee without recourse, representations or covenants, express or implied, being made by the Trustee with respect to the Collateral (except as to title to the Collateral or with respect to any other information then in the Trustee's possession, including without limitation any offering circular or other financial information).

Location of Sales. The sales will be held at 575-B Riverside Avenue, Westport, CT 06880 Additional Information. Please be advised that the sale of each security listed above may be made only on the best bidder basis and is also a qualified bidder. For additional information, including with respect to qualified bidder status, and to obtain copies of an Investor Representation and Confidentiality Agreement, contact David Onore or Jeffrey Hohman by email at donore@stockerbrokerage.com or jhohman@stockerbrokerage.com. The Trustee is authorized at any time, for any reason, to resell the properties listed above (the "Collateral") to be sold to those who will represent and agree that they are purchasing for their own account for investment and not with a view to the distribution or resale of any of such assets, (ii) verify that each certificate for each security to be sold that has not been registered under the Securities Act of 1933 bears a legend to the effect that such security has not been registered under the Securities Act of 1933, as amended, and may not be disposed of in violation of the provisions of said Act, (iii) to disclaim and to refuse to give any warranty (other than as to title), and (iv) to impose such other limitations or conditions in connection with any such sale as the Trustee deems necessary or advisable.



## THE WALL STREET JOURNAL.

# LEGAL NOTICES
## ADVERTISE TODAY
(800) 366-3975
sales.legalnotices
@wsj.com

For more
information visit
wsj.com/classifieds

### INTERNATIONAL NOTICES

Folksam International Insurance Company (UK) Limited (In Administration) ("Folksam") (Company number: 01287764)

Notice of termination of Folksam's Scheme of Arrangement pursuant to section 895 of the Companies Act 2006 (the "Scheme")

NOTICE IS HEREBY GIVEN that the Scheme terminated on 10 May 2017 when the Scheme Administrators (Dan Schwarzmann and Nigel Rackham of PricewaterhouseCoopers LLP) gave notice to Folksam under clause 74.11 of the Scheme that there was no further property or other assets of Folksam that could be cost effectively collected and distributed in accordance with the provisions of the Scheme.

Under Folksam's Scheme the Scheme Administrators declared and paid dividends totalling 42% to Scheme Creditors in respect of their Agreed Claims. In addition, a further dividend of 4% was declared and paid to Scheme Creditors in respect of their Agreed ILU (Institute of London Underwriters) Claims.

Dated this 10th day of May 2017



## THE WALL STREET JOURNAL.
# THE MART
## ADVERTISE TODAY
(800) 366-3975
sales.mart@wsj.com

For more information visit:
wsj.com/classifieds

© 2017 Dow Jones & Company, Inc.
All Rights Reserved.

---



Taxi drivers protested in Valencia, Spain, last month, claiming government policies give Uber's service an unfair advantage.
MANUEL BRUQUE/EUROPEAN PRESSPHOTO AGENCY

# Uber Takes Hit in Europe

Court adviser says company should be regulated as a transportation service

By Natalia Drozdiak

BRUSSELS—An influential adviser to Europe's highest court delivered a big blow to **Uber** Technologies Inc. on Thursday, recommending the court rule the U.S. ride-hailing company should be regulated as a transportation company, not an online platform as Uber had argued.

The recommendation isn't binding, but the European Court of Justice typically—but not always—sides with such advice. If it does in this case later this year, it would effectively end Uber's long-fought legal attempt to lighten its heavy regulatory load across the Continent, where municipalities, national governments and regulators have sought to hold it to often strict rules and licensing requirements that apply to transportation companies, such as taxi and traditional car-hire services.

Uber has been embroiled in numerous legal battles with taxi companies and regulators around the world, but the scrutiny has been especially intense in Europe. There it has faced local or national bans on at least some of its services in Italy, Germany, Belgium, the Netherlands, Spain and Hungary.

Uber has long tried to fight local transportation laws by saying it isn't a transportation company at all.

Under current EU law, transportation regulations are exempt from some EU-wide directives, giving countries more of a free rein to regulate those companies and require greater freedom from some kinds of regulatory intervention, such as strict licensing requirements.

"The service offered by

### Transport Vs. Tech

| Uber | European Court of Justice |
|---|---|
| **Uber argues it's an online service company because:** | **An ECJ advisor says Uber is a transport company because:** |
| ◆ Uber is a smartphone app used in 21 EU countries | ◆ Transport is the main source of economic value, the app is secondary |
| ◆ Several court judgments in Barcelona support that view | ◆ Uber sets the prices of rides and can exclude drivers from its platform |
| **What it means for regulation:** | ◆ Strict national laws and regulations govern transportation firms |
| ◆ EU laws protect online services from disproportionate licensing requirements | THE WALL STREET JOURNAL. |

Sources: ECJ; the company

Uber cannot be classified as an 'information society service,'" said Maciej Szpunar, an advocate general at the ECJ, referencing the legal designation for online services. "Uber can thus be required to obtain the necessary licenses and authorizations under national law."

In his opinion, Mr. Szpunar said Uber should be regulated as a transport company because transportation offers the primary economic value behind Uber's service. The California firm also controls the economically important aspects of the service, such as the price of rides and the conditions its drivers need to fulfill to use the platform, he said.

"We have taken today's statement and await the final ruling later this year," said Uber spokeswoman Marloes van der Laan, adding that being designated a transportation company wouldn't change the way it is already regulated in most EU countries.

—Laurence Norman contributed to this article.

---

## CHINA CIRCUIT | By Li Yuan

# Facebook in China? Better Add Staff



To get **Facebook** unblocked in China, Chief Executive Mark Zuckerberg has tried everything from lobbying Chinese leaders to taking a run past smoggy Tiananmen Square. Facebook's recent difficulties with violent videos posted to the social network are giving Mr. Zuckerberg a taste of what it would be like to operate in China.

In Facebook's latest problem, a live video of a man in Thailand killing his 11-month-old daughter stayed online for 24 hours before being removed. As a result, Facebook said last week that it will add 3,000 more people to review content, bringing the total to 7,500.

Chinese social media called in response to the news, with many comments noting that China has plenty of censorship experience to offer. "Come learn from us," said one post on the popular microblogging platform Weibo.

There's a vast difference between trying to get rid of fake news and violent videos and the severe censorship imposed by an authoritarian government. Content banned in China goes beyond the violent and pornographic to include the politically unacceptable. China's sophisticated internet censorship system employs filtering technologies and squads of actual police and requires private companies to self-censor—or risk losing their business licenses.

If Mr. Zuckerberg is serious about getting unblocked in China, he might want to consider the advice of Chinese counterparts about what it takes to survive in such a restrictive climate.

A Facebook spokeswoman said the company remains interested in China and has yet to make any decision "on our approach to China."

According to Chinese executives, effectively monitoring online content comes down to three things: lots of bodies and multiple layers of monitoring, plus the help of artificial intelligence.

Facebook's announced total of 7,500 content reviewers might sound like a huge commitment of resources, but Chinese executives say it would be far from adequate to meet government standards in China.

Inke, a live-streaming video app, has 1,000 full-time employees monitoring live videos—from big events such as concerts to clips of daily life such as a woman eating a bowl of noodles. Though the two-year-old startup won't disclose its current tally of active users, a year ago it said 50 million



Mark Zuckerberg at China Development Forum in Beijing last year.
LI XIN/XINHUA/ZUMA PRESS

users have downloaded the app and activated accounts.

Facebook, by contrast, has 1.9 billion monthly active users. "If Facebook were in China, it would have to hire at least 20,000 reviewers for videos alone," said Feng Yousheng, Inke's CEO.

Mr. Feng said Facebook would need many times more than that number if it had to police photos and text as Chinese social media do.

Chinese executives envy Facebook's freedom to decide what content it polices and how. Censoring content is a life-or-death matter for their businesses.

With their greater experience, Inke's Mr. Feng said, perhaps Facebook should consider offshoring. "It can put its monitoring team in China. We can help. Their monitoring task is so much easier than ours," he said.

*Follow Li Yuan on Twitter @LiYuan6 or write to li.yuan@wsj.com*

---

# Net-Neutrality Debate Gets Nastier Online

By John D. McKinnon

WASHINGTON—A debate over how to ensure fairness on the internet is quickly becoming an online brawl, with allegations of misdeeds including denial-of-service attacks and bot-generated comments.

The accusations suggest the political battle over net neutrality will be a dirty one, even by Washington standards.

The problems began to surface when the Federal Communications Commission's electronic comment system was intermittently disrupted this week following the release of the agency's proposal for rolling back Obama-era net-neutrality standards.

The Obama-era rules were aimed at requiring internet service providers such as cable and wireless firms to treat all traffic the same. New FCC Chairman Ajit Pai believes the rules went too far in imposing regulatory burdens on broadband providers, however, and is launching a proceeding aimed at paring back or even eliminating many of the rules.

The debate quickly generated a lot of heat. As of Thursday, the number of comments submitted on the new net-neutrality proposal had exceeded 700,000, according to the comment site, with months to go in the agency's deliberation. But doubts about the integrity of the comment process suggest it might not generate much light in the end.

Early in the week, the FCC itself said hackers had launched a series of distributed denial-of-service, or DDoS, attacks against its system that bogged it down to the point that many people couldn't submit legitimate comments. According to the FCC, the online attacks began shortly after Sunday night's airing of HBO's "Last Week Tonight with John Oliver," in which Mr. Oliver delivered a 20-minute comic riff opposing the rollback, and pleaded for viewers to submit comments.

A similar John Oliver segment in 2014 had been widely credited with generating so many online comments that the FCC site crashed.

Sure enough, the site again became intermittently unusable for many visitors shortly after Mr. Oliver's show on Sunday, and activists gave credit to Mr. Oliver. But FCC officials on Monday said that the DDoS attacks were to blame for the balky site, not the volume of legitimate comments.

© 2017 Dow Jones & Company, Inc. All Rights Reserved.

Exhibit C



# Bernstein Litowitz Berger & Grossmann Announces Proposed Settlement of In re Salix Pharmaceuticals, Ltd. Securities Litigation

NEWS PROVIDED BY
**Bernstein Litowitz Berger & Grossmann LLP** ➜
07:59 ET

NEW YORK, May 12, 2017 /PRNewswire/ —

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SALIX PHARMACEUTICALS, LTD. | Case No. 14 Civ. 8925 (KMW)<br>CLASS ACTION |

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION AND**

**PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING;**

**AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES**

<u>**AND REIMBURSEMENT OF LITIGATION EXPENSES**</u>

**TO: All persons or entities who purchased or otherwise acquired publicly traded common stock of Salix Pharmaceuticals, Ltd. ("Salix") or publicly traded call options on Salix common stock, or sold publicly traded put options on Salix common stock, during the period from November 8, 2013 through November 6, 2014, inclusive (the "Class Period"), and were damaged thereby (the "Settlement Class"):**

**PLEASE READ THIS NOTICE CAREFULLY.  YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York, that the above-captioned litigation (the "Action") has been certified for settlement purposes only as a class action on behalf of the Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full printed Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

YOU ARE ALSO NOTIFIED that Lead Plaintiff in the Action has reached a proposed settlement of the Action for $210,000,000 in cash (the "Settlement"), that, if approved, will fully, finally, and completely resolve all claims in the Action.

A hearing will be held on July 24, 2017 at 11:00 a.m., before the Honorable Kimba M. Wood at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, Courtroom 18B, 500 Pearl Street, New York, NY 10007-1312, to determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the Releases specified and described in the Stipulation and Agreement of Settlement dated March 24, 2017 (and in the Notice) should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund.** If you have not yet received the Notice and Claim Form, you may obtain copies of these documents by contacting the Claims Administrator at *In re Salix Pharmaceuticals, Ltd.*, c/o Epiq Systems, P.O. Box 3656, Portland, OR 97208-3656, 1-844-308-6864. Copies of the Notice and Claim Form can also be downloaded from the website maintained by the Claims Administrator, http://www.SalixSecuritiesLitigation.com.

If you are a member of the Settlement Class, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form *postmarked* no later than August 9, 2017. If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is *received* no later than July 5, 2017, in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of expenses, must be filed with the Court and delivered to Lead Counsel and Salix's Counsel such that they are *received* no later than July 5, 2017, in accordance with the instructions set forth in the Notice.

**Please do not contact the Court, the Clerk's office, Salix, or its counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Lead Counsel or the Claims Administrator.**

Inquiries, other than requests for the Notice and Claim Form, should be made to Lead Counsel:

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Salvatore J. Graziano, Esq.

1251 Avenue of the Americas, 44th Floor

New York, NY 10020

(800) 380-8496

blbg@blbglaw.com

Requests for the Notice and Claim Form should be made to:

*In re Salix Pharmaceuticals, Ltd.*,

c/o Epiq Systems

P.O. Box 3656

Portland, OR 97208-3656

(844) 308-6864

www.SalixSecuritiesLitigation.com

By Order of the Court

URL: www.SalixSecuritiesLitigation.com

SOURCE Bernstein Litowitz Berger & Grossmann LLP