# Exhibit 3A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| | ) Case No. 14 Civ. 8925 (KMW) |
| IN RE SALIX PHARMACEUTICALS, LTD. | ) CLASS ACTION |
| | ) |
| | ) |

**DECLARATION OF SALVATORE J. GRAZIANO IN SUPPORT OF LEAD
COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES FILED ON
BEHALF OF BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

I, SALVATORE J. GRAZIANO, declare as follows:

1.      I am a partner of the law firm of Bernstein Litowitz Berger & Grossmann LLP, the Court-appointed Lead Counsel in the above-captioned action (the "Action").  I submit this declaration in support of Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses.  I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

2.      My firm, as Lead Counsel, was involved in all aspects of the litigation and its settlement as set forth in my Declaration in Support of: (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

3.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by attorneys and professional support staff employees of my firm who, from inception of the Action through May 31, 2017, billed ten or more hours to the Action, and the lodestar calculation for those individuals based on my firm's current billing rates.  For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by

my firm.  Time expended on the application for fees and reimbursement of expenses has not been included.

4.       The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular rates charged for their services, which have been accepted in other securities or shareholder litigation.

5.       The total number of hours reflected in Exhibit 1 from inception through and including May 31, 2017, is 29,758.25.  The total lodestar reflected in Exhibit 1 for that period is $12,349,533.75, consisting of $11,718,620.00 for attorneys' time and $630,913.75 for professional support staff time.

6.       My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.       As detailed in Exhibit 2, my firm is seeking reimbursement for a total of $1,924,023.98 in expenses incurred in connection with the prosecution of this Action from its inception through and including May 31, 2017.

8.       The expenses reflected in Exhibit 2 are the expenses actually incurred by my firm or reflect "caps" based on the application of the following criteria:

(a)  Out-of-town travel - airfare is at coach rates, hotel charges per night are capped at $350 for large cities and $250 for small cities (the relevant cities and how they are categorized are reflected on Exhibit 2); meals are capped at $20 per person for breakfast, $25 per person for lunch, and $50 per person for dinner.

(b)  Out-of-Office Meals - Capped at $25 per person for lunch and $50 per person for dinner.

2

(c) In-Office Working Meals - Capped at $20 per person for lunch and $30 per person for dinner.

(d) Internal Copying - Charged at $0.10 per page.

(e) On-Line Research - Charges reflected are for out-of-pocket payments to the vendors for research done in connection with this litigation.  On-line research is billed to each case based on actual time usage at a set charge by the vendor.  There are no administrative charges included in these figures.

9.    The expenses incurred in this Action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

10.    With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were involved in this Action.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 19, 2017.

*/s Salvatore J. Graziano*
Salvatore J. Graziano

#108924.1

3

**EXHIBIT 1**

*In re Salix Pharmaceuticals, Ltd.,*
Case No. 14 Civ. 8925 (KMW)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**TIME REPORT**

Inception through May 31, 2017

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Max W. Berger | 196.50 | $995 | $195,517.50 |
| Michael Blatchley | 400.00 | $700 | 280,000.00 |
| Salvatore J. Graziano | 485.75 | $945 | 459,033.75 |
| Avi Josefson | 26.00 | $800 | 20,800.00 |
| Mark Lebovitch | 32.75 | $875 | 28,656.25 |
| John Rizio-Hamilton | 797.50 | $750 | 598,125.00 |
| Gerald H. Silk | 171.50 | $945 | 162,067.50 |
| Katherine M. Sinderson | 817.25 | $700 | 572,075.00 |
| | | | |
| **Associates** | | | |
| David L. Duncan | 113.50 | $600 | 68,100.00 |
| Scott Foglietta | 317.00 | $500 | 158,500.00 |
| Adam Hollander | 660.00 | $600 | 396,000.00 |
| Angus Fei Ni | 568.00 | $450 | 255,600.00 |
| David Schwartz | 232.25 | $575 | 133,543.75 |
| Katherine A. Stefanou | 493.00 | $500 | 246,500.00 |
| | | | |
| **Staff Attorneys** | | | |
| Erwin Abalos | 1,752.50 | $375 | 657,187.50 |
| Sheela Aiyappasamy | 599.75 | $375 | 224,906.25 |
| Pedro Ariston | 1,676.25 | $340 | 569,925.00 |
| Jim Briggs | 1,497.50 | $340 | 509,150.00 |
| Girolamo Brunetto | 87.75 | $340 | 29,835.00 |
| Ryan Candee | 614.00 | $395 | 242,530.00 |
| Brian Chau | 985.50 | $375 | 369,562.50 |
| Anne T. Cirasuolo | 514.00 | $395 | 203,030.00 |
| Chris Clarkin | 719.00 | $375 | 269,625.00 |
| Alex Dickin | 1,874.50 | $340 | 637,330.00 |
| George Doumas | 625.00 | $395 | 246,875.00 |
| Michael Graff | 761.25 | $340 | 258,825.00 |

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Daniel Gruttadaro | 1,544.00 | $340 | 524,960.00 |
| Keith Guilfoyle | 803.00 | $395 | 317,185.00 |
| Stephen Imundo | 1,699.50 | $395 | 671,302.50 |
| Merlyne Jean-Louis | 738.75 | $340 | 251,175.00 |
| Laura Lefkowitz | 594.75 | $395 | 234,926.25 |
| Danielle Leon | 810.00 | $340 | 275,400.00 |
| Maureen McCarren | 605.50 | $395 | 239,172.50 |
| John Moore | 449.50 | $340 | 152,830.00 |
| Jeff Powell | 635.00 | $395 | 250,825.00 |
| Prashantha Ratnayake | 611.25 | $395 | 241,443.75 |
| Daniel Renehan | 865.75 | $395 | 341,971.25 |
| Madeleine Severin | 564.00 | $375 | 211,500.00 |
| Christina Suarez | 216.25 | $375 | 81,093.75 |
| Catherine Van Kampen | 333.00 | $395 | 131,535.00 |
| | | | |
| **Financial Analysts** | | | |
| Nick DeFilippis | 21.00 | $500 | 10,500.00 |
| Sharon Safran | 91.25 | $325 | 29,656.25 |
| Adam Weinschel | 112.75 | $415 | 46,791.25 |
| | | | |
| **Investigators** | | | |
| Chris Altiery | 114.50 | $245 | 28,052.50 |
| Lisa C. Williams (Burr) | 271.50 | $290 | 78,735.00 |
| | | | |
| **Paralegals** | | | |
| Martin Braxton | 19.50 | $245 | 4,777.50 |
| Jose Echegaray | 704.00 | $245 | 172,480.00 |
| Ellen Jordan | 370.00 | $245 | 90,650.00 |
| Matthew Mahady | 52.00 | $310 | 16,120.00 |
| Gary Weston | 178.75 | $325 | 58,093.75 |
| | | | |
| **Litigation Support** | | | |
| Babatunde Pedro | 142.50 | $275 | 39,187.50 |
| Andrea R. Webster | 18.50 | $310 | 5,735.00 |
| Jessica M. Wilson | 106.50 | $275 | 29,287.50 |
| | | | |
| **Managing Clerk** | | | |
| Errol Hall | 67.25 | $310 | 20,847.50 |
| | | | |
| **TOTALS** | **29,758.25** | | **$12,349,533.75** |

**EXHIBIT 2**

*In re Salix Pharmaceuticals, Ltd.,*
Case No. 14 Civ. 8925 (KMW)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**EXPENSE REPORT**

Inception through May 31, 2017

| CATEGORY | AMOUNT |
|---|---|
| Service of Process | 6,775.40 |
| On-Line Legal Research | 49,720.40 |
| On-Line Factual Research | 14,144.40 |
| Document Management/Litigation Support | 8,723.21 |
| Telephones/Faxes | 333.54 |
| Postage & Express Mail | 3,2014.24 |
| Hand Delivery Charges | 220.00 |
| Local Transportation | 7,389.52 |
| Internal Copying | 10,459.40 |
| Outside Copying | 10,016.51 |
| Out-of-Town Travel* | 18,639.78 |
| Working Meals | 7,833.39 |
| Court Reporting and Transcripts | 6,051.04 |
| Deposition/Meeting Hosting | 1,988.93 |
| Experts | 1,437,077.61 |
| **Total Paid:** | **$1,582,387.37** |
| | |
| **Outstanding Expenses:** | |
| Document Management/Litigation Support | 102,973.68 |
| Court Reporting and Transcripts | 10,122.93 |
| Experts | 228,540.00 |
| | |
| **Total Outstanding:** | **$341,636.61** |
| | |
| **TOTAL EXPENSES:** | **$1,924,023.98** |

\* Out of town travel includes hotels in the following "large cities" capped at $350 per night: Columbus, Ohio, Washington, DC, and San Francisco, California; and the following "small" city capped at $250 per night: Costa Mesa, California.

**EXHIBIT 3**

FIRM RESUME AND BIOGRAPHIES





Bernstein Litowitz Berger & Grossmann LLP

Attorneys at Law

# Firm Resume

**New York**
1251 Avenue of the
Americas, 44th Floor
New York, NY 10020
Tel: 212-554-1400
Fax: 212-554-1444

**California**
12481 High Bluff
Drive, Suite 300
San Diego, CA 92130
Tel: 858-793-0070
Fax: 858-793-0323

**Louisiana**
2727 Prytania Street,
Suite 14
New Orleans, LA 70130
Tel: 504-899-2339
Fax: 504-899-2342

**Illinois**
875 North Michigan
Avenue, Suite 3100
Chicago, IL 60611
Tel: 312-373-3880
Fax: 312-794-7801



## TABLE OF CONTENTS

FIRM OVERVIEW ....................................................................................................................1
   More Top Securities Recoveries.................................................................................................1
   Giving Shareholders a Voice and Changing Business Practices for the Better .........................2
   Advocacy for Victims of Corporate Wrongdoing....................................................................2
PRACTICE AREAS ................................................................................................................4
  Securities Fraud Litigation.......................................................................................................4
  Corporate Governance and Shareholders' Rights .....................................................................4
  Employment Discrimination and Civil Rights ...........................................................................4
  General Commercial Litigation and Alternative Dispute Resolution ..........................................5
  Distressed Debt and Bankruptcy Creditor Negotiation .............................................................5
  Consumer Advocacy ................................................................................................................5
THE COURTS SPEAK ...........................................................................................................6
RECENT ACTIONS & SIGNIFICANT RECOVERIES ......................................................7
  Securities Class Actions ..........................................................................................................7
  Corporate Governance and Shareholders' Rights ...................................................................12
  Employment Discrimination and Civil Rights .........................................................................15
CLIENTS AND FEES ...........................................................................................................16
IN THE PUBLIC INTEREST ..............................................................................................17
   Bernstein Litowitz Berger & Grossmann Public Interest Law Fellows ....................................17
   Firm sponsorship of Her Justice .............................................................................................17
   The Paul M. Bernstein Memorial Scholarship..........................................................................17
   Firm sponsorship of City Year New York ...............................................................................17
   Max W. Berger Pre-Law Program .........................................................................................17
   New York Says Thank You Foundation ..................................................................................17
OUR ATTORNEYS ..............................................................................................................18
  Members ................................................................................................................................18
    Max W. Berger .................................................................................................................18
    Gerald H. Silk ..................................................................................................................19
    Salvatore J. Graziano ........................................................................................................21
    Mark Lebovitch ................................................................................................................21
    Avi Josefson .....................................................................................................................23
    John Rizio-Hamilton..........................................................................................................23
    Katherine M. Sinderson .....................................................................................................24
    Michael D. Blatchley .........................................................................................................25
  Associates ..............................................................................................................................26
    David L. Duncan ...............................................................................................................26
    Scott R. Foglietta ..............................................................................................................26
    Adam Hollander ................................................................................................................26
    Angus Fei Ni .....................................................................................................................27
    David Schwartz ..................................................................................................................27
    Katherine A. Stefanou .......................................................................................................27
  Staff Attorneys .......................................................................................................................28
    Erwin Abalos ....................................................................................................................28
    Sheela Aiyappasamy .........................................................................................................28
    Pedro Ariston ....................................................................................................................28
    Jim Briggs .........................................................................................................................28
    Girolamo Brunetto ............................................................................................................29
    Ryan Candee .....................................................................................................................29
    Brian Chau ........................................................................................................................29
    Anne Cirasuolo .................................................................................................................29
    Christopher Clarkin ...........................................................................................................30
    Alex Dickin .......................................................................................................................30
    George Doumas .................................................................................................................30
    Michael Graff ....................................................................................................................30



Daniel Gruttadaro ...................................................................................................................31
Keith Guilfoyle .......................................................................................................................31
Stephen Imundo ......................................................................................................................31
Merlyne Jean-Louis ................................................................................................................31
Laura Lefkowitz .....................................................................................................................32
Danielle Leon .........................................................................................................................32
Maureen McCarren .................................................................................................................32
John Moore .............................................................................................................................32
Robert Jeffrey Powell .............................................................................................................33
Prashantha Ratnayake ............................................................................................................33
Daniel Renehan ......................................................................................................................33
Madeleine Severin ..................................................................................................................34
Christina Suarez .....................................................................................................................34
Catherine Van Kampen ..........................................................................................................34



Since our founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has obtained many of the largest monetary recoveries in history – over $30 billion on behalf of investors. Unique among our peers, the firm has obtained the largest settlements ever agreed to by public companies related to securities fraud, including four of the ten largest in history.  Working with our clients, we have also used the litigation process to achieve precedent-setting reforms which have increased market transparency, held wrongdoers accountable and improved corporate business practices in groundbreaking ways.

## FIRM OVERVIEW

Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), a national law firm with offices located in New York, California, Louisiana and Illinois, prosecutes class and private actions on behalf of individual and institutional clients.  The firm's litigation practice areas include securities class and direct actions in federal and state courts; corporate governance and shareholder rights litigation, including claims for breach of fiduciary duty and proxy violations; mergers and acquisitions and transactional litigation; alternative dispute resolution; distressed debt and bankruptcy; civil rights and employment discrimination; consumer class actions and antitrust.  We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud, and negligence.

We are the nation's leading firm in representing institutional investors in securities fraud class action litigation.  The firm's institutional client base includes the New York State Common Retirement Fund; the California Public Employees' Retirement System (CalPERS); the Ontario Teachers' Pension Plan Board (the largest public pension funds in North America); the Los Angeles County Employees Retirement Association (LACERA); the Chicago Municipal, Police and Labor Retirement Systems; the Teacher Retirement System of Texas; the Arkansas Teacher Retirement System; Forsta AP-fonden ("AP1"); Fjarde AP-fonden ("AP4"); the Florida State Board of Administration; the Public Employees' Retirement System of Mississippi; the New York State Teachers' Retirement System; the Ohio Public Employees Retirement System; the State Teachers Retirement System of Ohio; the Oregon Public Employees Retirement System; the Virginia Retirement System; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities.

## MORE TOP SECURITIES RECOVERIES

Since its founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has litigated some of the most complex cases in history and has obtained over $30 billion on behalf of investors.  Unique among its peers, the firm has negotiated the largest settlements ever agreed to by public companies related to securities fraud, and obtained many of the largest securities recoveries in history (including 5 of the top 10):



- *In re WorldCom, Inc. Securities Litigation* – $6.19 billion recovery
- *In re Cendant Corporation Securities Litigation* – $3.3 billion recovery
- *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation* – $2.43 billion recovery
- *In re Nortel Networks Corporation Securities Litigation* ("Nortel II") – $1.07 billion recovery
- *In re Merck & Co., Inc. Securities Litigation* – $1.06 billion recovery
- *In re McKesson HBOC, Inc. Securities Litigation* – $1.05 billion recovery

For over a decade, Securities Class Action Services (SCAS – a division of ISS Governance) has compiled and published data on securities litigation recoveries and the law firms prosecuting the cases. BLB&G has been at or near the top of their rankings every year – often with the highest total recoveries, the highest settlement average, or both.

BLB&G also eclipses all competitors on SCAS's "Top 100 Settlements" report, having recovered 37% of all the settlement dollars represented in the report (nearly $23 billion), and having prosecuted nearly a third of all the cases on the list (29 of 100).

## GIVING SHAREHOLDERS A VOICE AND CHANGING BUSINESS PRACTICES FOR THE BETTER

BLB&G was among the first law firms ever to obtain meaningful corporate governance reforms through litigation. In courts throughout the country, we prosecute shareholder class and derivative actions, asserting claims for breach of fiduciary duty and proxy violations wherever the conduct of corporate officers and/or directors, as well as M&A transactions, seek to deprive shareholders of fair value, undermine shareholder voting rights, or allow management to profit at the expense of shareholders.

We have prosecuted seminal cases establishing precedents which have increased market transparency, held wrongdoers accountable, addressed issues in the boardroom and executive suite, challenged unfair deals, and improved corporate business practices in groundbreaking ways.

From setting new standards of director independence, to restructuring board practices in the wake of persistent illegal conduct; from challenging the improper use of defensive measures and deal protections for management's benefit, to confronting stock options backdating abuses and other self-dealing by executives; we have confronted a variety of questionable, unethical and proliferating corporate practices. Seeking to reform faulty management structures and address breaches of fiduciary duty by corporate officers and directors, we have obtained unprecedented victories on behalf of shareholders seeking to improve governance and protect the shareholder franchise.

## ADVOCACY FOR VICTIMS OF CORPORATE WRONGDOING

While BLB&G is widely recognized as one of the leading law firms worldwide advising institutional investors on issues related to corporate governance, shareholder rights, and securities litigation, we have also prosecuted some of the most significant employment discrimination, civil rights and consumer protection cases on record. Equally important, the firm has advanced novel and socially beneficial principles by developing important new law in the areas in which we litigate.



The firm served as co-lead counsel on behalf of Texaco's African-American employees in *Roberts v. Texaco Inc.*, which resulted in a recovery of $176 million, the largest settlement ever in a race discrimination case. The creation of a Task Force to oversee Texaco's human resources activities for five years was unprecedented and served as a model for public companies going forward.

In the consumer field, the firm has gained a nationwide reputation for vigorously protecting the rights of individuals and for achieving exceptional settlements. In several instances, the firm has obtained recoveries for consumer classes that represented the entirety of the class's losses – an extraordinary result in consumer class cases.



# PRACTICE AREAS

## SECURITIES FRAUD LITIGATION

Securities fraud litigation is the cornerstone of the firm's litigation practice. Since its founding, the firm has had the distinction of having tried and prosecuted many of the most high-profile securities fraud class actions in history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients. BLB&G continues to play a leading role in major securities litigation pending in federal and state courts, and the firm remains one of the nation's leaders in representing institutional investors in securities fraud class and derivative litigation.

The firm also pursues direct actions in securities fraud cases when appropriate. By selectively opting out of certain securities class actions, we seek to resolve our clients' claims efficiently and for substantial multiples of what they might otherwise recover from related class action settlements.

The attorneys in the securities fraud litigation practice group have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many of the attorneys in this practice group also have accounting backgrounds. The group has access to state-of-the-art, online financial wire services and databases, which enable it to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities.

## CORPORATE GOVERNANCE AND SHAREHOLDERS' RIGHTS

The Corporate Governance and Shareholders' Rights Practice Group prosecutes derivative actions, claims for breach of fiduciary duty, and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. The group has obtained unprecedented victories on behalf of shareholders seeking to improve corporate governance and protect the shareholder franchise, prosecuting actions challenging numerous highly publicized corporate transactions which violated fair process and fair price, and the applicability of the business judgment rule. We have also addressed issues of corporate waste, shareholder voting rights claims, and executive compensation. As a result of the firm's high-profile and widely recognized capabilities, the corporate governance practice group is increasingly in demand by institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the board's accountability to shareholders.

The firm is actively involved in litigating numerous cases in this area of law, an area that has become increasingly important in light of efforts by various market participants to buy companies from their public shareholders "on the cheap."

## EMPLOYMENT DISCRIMINATION AND CIVIL RIGHTS

The Employment Discrimination and Civil Rights Practice Group prosecutes class and multi-plaintiff actions, and other high-impact litigation against employers and other societal institutions that violate federal or state employment, anti-discrimination, and civil rights laws. The practice group represents diverse clients on a wide range of issues including Title VII actions: race, gender, sexual orientation and age discrimination suits; sexual harassment, and "glass ceiling" cases in which otherwise qualified employees are passed over for promotions to managerial or executive positions.



Bernstein Litowitz Berger & Grossmann LLP is committed to effecting positive social change in the workplace and in society. The practice group has the necessary financial and human resources to ensure that the class action approach to discrimination and civil rights issues is successful. This litigation method serves to empower employees and other civil rights victims, who are usually discouraged from pursuing litigation because of personal financial limitations, and offers the potential for effecting the greatest positive change for the greatest number of people affected by discriminatory practice in the workplace.

## GENERAL COMMERCIAL LITIGATION AND ALTERNATIVE DISPUTE RESOLUTION

The General Commercial Litigation practice group provides contingency fee representation in complex business litigation and has obtained substantial recoveries on behalf of investors, corporations, bankruptcy trustees, creditor committees and other business entities. We have faced down powerful and well-funded law firms and defendants – and consistently prevailed. However, not every dispute is best resolved through the courts. In such cases, BLB&G Alternative Dispute practitioners offer clients an accomplished team and a creative venue in which to resolve conflicts outside of the litigation process. BLB&G has extensive experience – and a marked record of successes – in ADR practice. For example, in the wake of the credit crisis, we successfully represented numerous former executives of a major financial institution in arbitrations relating to claims for compensation. Our attorneys have led complex business-to-business arbitrations and mediations domestically and abroad representing clients before all the major arbitration tribunals, including the American Arbitration Association (AAA), FINRA, JAMS, International Chamber of Commerce (ICC) and the London Court of International Arbitration.

## DISTRESSED DEBT AND BANKRUPTCY CREDITOR NEGOTIATION

The BLB&G Distressed Debt and Bankruptcy Creditor Negotiation Group has obtained billions of dollars through litigation on behalf of bondholders and creditors of distressed and bankrupt companies, as well as through third-party litigation brought by bankruptcy trustees and creditors' committees against auditors, appraisers, lawyers, officers and directors, and other defendants who may have contributed to client losses. As counsel, we advise institutions and individuals nationwide in developing strategies and tactics to recover assets presumed lost as a result of bankruptcy. Our record in this practice area is characterized by extensive trial experience in addition to completion of successful settlements.

## CONSUMER ADVOCACY

The Consumer Advocacy Practice Group at Bernstein Litowitz Berger & Grossmann LLP prosecutes cases across the entire spectrum of consumer rights, consumer fraud, and consumer protection issues. The firm represents victimized consumers in state and federal courts nationwide in individual and class action lawsuits that seek to provide consumers and purchasers of defective products with a means to recover their damages. The attorneys in this group are well versed in the vast array of laws and regulations that govern consumer interests and are aggressive, effective, court-tested litigators. The Consumer Practice Advocacy Group has recovered hundreds of millions of dollars for millions of consumers throughout the country. Most notably, in a number of cases, the firm has obtained recoveries for the class that were the entirety of the potential damages suffered by the consumer. For example, in actions against MCI and Empire Blue Cross, the firm recovered all of the damages suffered by the class. The group achieved its successes by advancing innovative claims and theories of liabilities, such as obtaining decisions in Pennsylvania and Illinois appellate courts that adopted a new theory of consumer damages in mass marketing cases. Bernstein Litowitz Berger & Grossmann LLP is, thus, able to lead the way in protecting the rights of consumers.



## THE COURTS SPEAK

Throughout the firm's history, many courts have recognized the professional excellence and diligence of the firm and its members.  A few examples are set forth below.

### IN RE WORLDCOM, INC. SECURITIES LITIGATION

**THE HONORABLE DENISE COTE OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

> *"I have the utmost confidence in plaintiffs' counsel...they have been doing a superb job....  The Class is extraordinarily well represented in this litigation."*
>
> *"The magnitude of this settlement is attributable in significant part to Lead Counsel's advocacy and energy....   The quality of the representation given by Lead Counsel...has been superb...and is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation."*
>
> *"Lead Counsel has been energetic and creative. . . . Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions."*

### IN RE CLARENT CORPORATION SECURITIES LITIGATION

**THE HONORABLE CHARLES R. BREYER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

> *"It was the best tried case I've witnessed in my years on the bench . . ."*
>
> *"[A]n extraordinarily civilized way of presenting the issues to you [the jury]. . . . We've all been treated to great civility and the highest professional ethics in the presentation of the case...."*
>
> *"These trial lawyers are some of the best I've ever seen."*

### LANDRY'S RESTAURANTS, INC. SHAREHOLDER LITIGATION

**VICE CHANCELLOR J. TRAVIS LASTER OF THE DELAWARE COURT OF CHANCERY**

> *"I do want to make a comment again about the excellent efforts . . . put into this case. . . . This case, I think, shows precisely the type of benefits that you can achieve for stockholders and how representative litigation can be a very important part of our corporate governance system . . . you hold up this case as an example of what to do."*

### MCCALL V. SCOTT (COLUMBIA/HCA DERIVATIVE LITIGATION)

**THE HONORABLE THOMAS A. HIGGINS OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE**

> *"Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."*



# RECENT ACTIONS & SIGNIFICANT RECOVERIES

Bernstein Litowitz Berger & Grossmann LLP is counsel in many diverse nationwide class and individual actions and has obtained many of the largest and most significant recoveries in history. Some examples from our practice groups include:

## SECURITIES CLASS ACTIONS

**CASE:**            ***IN RE WORLDCOM, INC. SECURITIES LITIGATION***

**COURT:**           **United States District Court for the Southern District of New York**

**HIGHLIGHTS:**      $6.19 billion securities fraud class action recovery – the second largest in history; unprecedented recoveries from Director Defendants.

**CASE SUMMARY:**    Investors suffered massive losses in the wake of the financial fraud and subsequent bankruptcy of former telecom giant WorldCom, Inc.  This litigation alleged that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws.  It further alleged a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom, and by WorldCom's former CEO and CFO.  As Court-appointed Co-Lead Counsel representing Lead Plaintiff the **New York State Common Retirement Fund**, we obtained unprecedented settlements totaling more than $6 billion from the Investment Bank Defendants who underwrote WorldCom bonds, including a $2.575 billion cash settlement to settle all claims against the Citigroup Defendants.  On the eve of trial, the 13 remaining "Underwriter Defendants," including J.P. Morgan Chase, Deutsche Bank and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them.  Additionally, the day before trial was scheduled to begin, all of the former WorldCom Director Defendants had agreed to pay over $60 million to settle the claims against them.  An unprecedented first for outside directors, $24.75 million of that amount came out of the pockets of the individuals – 20% of their collective net worth.  *The Wall Street Journal*, in its coverage, profiled the settlement as literally having "shaken Wall Street, the audit profession and corporate boardrooms." After four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million.  Subsequent settlements were reached with the former executives of WorldCom, and then with Andersen, bringing the total obtained for the Class to over $6.19 billion.

**CASE:**            ***IN RE CENDANT CORPORATION SECURITIES LITIGATION***

**COURT:**           **United States District Court for the District of New Jersey**

**HIGHLIGHTS:**      $3.3 billion securities fraud class action recovery – the third largest in history; significant corporate governance reforms obtained.

**CASE SUMMARY:**    The firm was Co-Lead Counsel in this class action against Cendant Corporation, its officers and directors and Ernst & Young (E&Y), its auditors, for their role in disseminating materially false and misleading financial statements concerning the company's revenues, earnings and expenses for its 1997 fiscal year.  As a result of company-wide accounting irregularities, Cendant restated its financial results for its 1995, 1996 and 1997 fiscal years and all fiscal quarters therein.  Cendant agreed to settle the action for $2.8 billion to adopt some of the most extensive corporate governance changes in history.  E&Y settled for $335 million.  These settlements remain the largest sums ever recovered from a public company and a public accounting firm through securities class action litigation.  BLB&G represented Lead Plaintiffs **CalPERS – the California Public Employees' Retirement System**, the **New York State Common Retirement Fund** and the **New York City Pension Funds**, the three largest public pension funds in America, in this action.


Bernstein Litowitz
Berger & Grossmann LLP

| | |
|---|---|
| **CASE:** | **IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE, AND EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION** |
| **COURT:** | United States District Court for the Southern District of New York |
| **HIGHLIGHTS:** | $2.425 billion in cash; significant corporate governance reforms to resolve all claims.  This recovery is by far the largest shareholder recovery related to the subprime meltdown and credit crisis; the single largest securities class action settlement ever resolving a Section 14(a) claim – the federal securities provision designed to protect investors against misstatements in connection with a proxy solicitation; the largest ever funded by a single corporate defendant for violations of the federal securities laws; the single largest settlement of a securities class action in which there was neither a financial restatement involved nor a criminal conviction related to the alleged misconduct; and one of the 10 largest securities class action recoveries in history. |
| **DESCRIPTION:** | The firm represented Co-Lead Plaintiffs the **State Teachers Retirement System of Ohio**, the **Ohio Public Employees Retirement System**, and the **Teacher Retirement System of Texas** in this securities class action filed on behalf of shareholders of Bank of America Corporation ("BAC") arising from BAC's 2009 acquisition of Merrill Lynch & Co., Inc.  The action alleges that BAC, Merrill Lynch, and certain of the companies' current and former officers and directors violated the federal securities laws by making a series of materially false statements and omissions in connection with the acquisition.  These violations included the alleged failure to disclose information regarding billions of dollars of losses which Merrill had suffered before the BAC shareholder vote on the proposed acquisition, as well as an undisclosed agreement allowing Merrill to pay billions in bonuses before the acquisition closed despite these losses.  Not privy to these material facts, BAC shareholders voted to approve the acquisition. |
| **CASE:** | **IN RE NORTEL NETWORKS CORPORATION SECURITIES LITIGATION ("NORTEL II")** |
| **COURT:** | United States District Court for the Southern District of New York |
| **HIGHLIGHTS:** | Over $1.07 billion in cash and common stock recovered for the class. |
| **DESCRIPTION:** | This securities fraud class action charged Nortel Networks Corporation and certain of its officers and directors with violations of the Securities Exchange Act of 1934, alleging that the Defendants knowingly or recklessly made false and misleading statements with respect to Nortel's financial results during the relevant period.  BLB&G clients the **Ontario Teachers' Pension Plan Board** and the **Treasury of the State of New Jersey and its Division of Investment** were appointed as Co-Lead Plaintiffs for the Class in one of two related actions (Nortel II), and BLB&G was appointed Lead Counsel for the Class.  In a historic settlement, Nortel agreed to pay $2.4 billion in cash and Nortel common stock (all figures in US dollars) to resolve both matters.  Nortel later announced that its insurers had agreed to pay $228.5 million toward the settlement, bringing the total amount of the global settlement to approximately $2.7 billion, and the total amount of the Nortel II settlement to over $1.07 billion. |
| **CASE:** | **IN RE MERCK & CO., INC. SECURITIES LITIGATION** |
| **COURT:** | United States District Court, District of New Jersey |
| **HIGHLIGHTS:** | $1.06 billion recovery for the class. |
| **DESCRIPTION:** | This case arises out of misrepresentations and omissions concerning life-threatening risks posed by the "blockbuster" Cox-2 painkiller Vioxx, which Merck withdrew from the market in 2004.  In January 2016, BLB&G achieved a $1.062 billion settlement on the eve of trial after more than 12 years of hard-fought litigation that included a successful decision at the United States Supreme Court.  This settlement is the second largest recovery ever obtained in the Third Circuit, one of the top 10 securities recoveries of all time, and the largest securities recovery ever achieved against a pharmaceutical company.  BLB&G represented Lead Plaintiff the **Public Employees' Retirement System of Mississippi.** |



**CASE:**      *IN RE MCKESSON HBOC, INC. SECURITIES LITIGATION*

**COURT:**      **United States District Court for the Northern District of California**

**HIGHLIGHTS:**      $1.05 billion recovery for the class.

**DESCRIPTION:**      This securities fraud litigation was filed on behalf of purchasers of HBOC, McKesson and McKesson HBOC securities, alleging that Defendants misled the investing public concerning HBOC's and McKesson HBOC's financial results.  On behalf of Lead Plaintiff the **New York State Common Retirement Fund**, BLB&G obtained a $960 million settlement from the company; $72.5 million in cash from Arthur Andersen; and, on the eve of trial, a $10 million settlement from Bear Stearns & Co. Inc., with total recoveries reaching more than $1 billion.

**CASE:**      *IN RE LEHMAN BROTHERS EQUITY/DEBT SECURITIES LITIGATION*

**COURT:**      **United States District Court for the Southern District of New York**

**HIGHLIGHTS:**      $735 million in total recoveries.

**DESCRIPTION:**      Representing the **Government of Guam Retirement Fund**, BLB&G successfully prosecuted this securities class action arising from Lehman Brothers Holdings Inc.'s issuance of billions of dollars in offerings of debt and equity securities that were sold using offering materials that contained untrue statements and missing material information.

After four years of intense litigation, Lead Plaintiffs achieved a total of $735 million in recoveries consisting of: a $426 million settlement with underwriters of Lehman securities offerings; a $90 million settlement with former Lehman directors and officers; a $99 million settlement that resolves claims against Ernst & Young, Lehman's former auditor (considered one of the top 10 auditor settlements ever achieved); and a $120 million settlement that resolves claims against UBS Financial Services, Inc.  This recovery is truly remarkable not only because of the difficulty in recovering assets when the issuer defendant is bankrupt, but also because no financial results were restated, and that the auditors never disavowed the statements.

**CASE:**      *HEALTHSOUTH CORPORATION BONDHOLDER LITIGATION*

**COURT:**      **United States District Court for the Northern District of Alabama**

**HIGHLIGHTS:**      $804.5 million in total recoveries.

**DESCRIPTION:**      In this litigation, BLB&G was the appointed Co-Lead Counsel for the bond holder class, representing Lead Plaintiff the **Retirement Systems of Alabama**.  This action arose from allegations that Birmingham, Alabama based HealthSouth Corporation overstated its earnings at the direction of its founder and former CEO Richard Scrushy.  Subsequent revelations disclosed that the overstatement actually exceeded over $2.4 billion, virtually wiping out all of HealthSouth's reported profits for the prior five years.  A total recovery of $804.5 million was obtained in this litigation through a series of settlements, including an approximately $445 million settlement for shareholders and bondholders, a $100 million in cash settlement from UBS AG, UBS Warburg LLC, and individual UBS Defendants (collectively, "UBS"), and $33.5 million in cash from the company's auditor.  The total settlement for injured HealthSouth bond purchasers exceeded $230 million, recouping over a third of bond purchaser damages.

**CASE:**      *IN RE CITIGROUP, INC. BOND ACTION LITIGATION*

**COURT:**      **United States District Court for the Southern District of New York**

**HIGHLIGHTS:**      $730 million cash recovery; second largest recovery in a litigation arising from the financial crisis.

**DESCRIPTION:**      In the years prior to the collapse of the subprime mortgage market, Citigroup issued 48 offerings of preferred stock and bonds. This securities fraud class action was filed on behalf of purchasers of



Citigroup bonds and preferred stock alleging that these offerings contained material misrepresentations and omissions regarding Citigroup's exposure to billions of dollars in mortgage-related assets, the loss reserves for its portfolio of high-risk residential mortgage loans, and the credit quality of the risky assets it held in off-balance sheet entities known as "structured investment vehicles." After protracted litigation lasting four years, we obtained a $730 million cash recovery – the second largest securities class action recovery in a litigation arising from the financial crisis, and the second largest recovery ever in a securities class action brought on behalf of purchasers of debt securities.  As Lead Bond Counsel for the Class, BLB&G represented Lead Bond Plaintiffs Minneapolis Firefighters' Relief Association, Louisiana Municipal Police Employees' Retirement System, and Louisiana Sheriffs' Pension and Relief Fund.

| | |
|---|---|
| **CASE:** | *IN RE WASHINGTON PUBLIC POWER SUPPLY SYSTEM LITIGATION* |
| **COURT:** | **United States District Court for the District of Arizona** |
| **HIGHLIGHTS:** | Over $750 million – the largest securities fraud settlement ever achieved at the time. |
| **DESCRIPTION:** | BLB&G was appointed Chair of the Executive Committee responsible for litigating the action on behalf of the class in this action.  The case was litigated for over seven years, and involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of over $750 million – then the largest securities fraud settlement ever achieved. |

| | |
|---|---|
| **CASE:** | *IN RE SCHERING-PLOUGH CORPORATION/ENHANCE SECURITIES LITIGATION; IN RE MERCK & CO., INC. VYTORIN/ZETIA SECURITIES LITIGATION* |
| **COURT:** | **United States District Court for the District of New Jersey** |
| **HIGHLIGHTS:** | $688 million in combined settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) in this coordinated securities fraud litigations filed on behalf of investors in Merck and Schering-Plough. |
| **DESCRIPTION:** | After nearly five years of intense litigation, just days before trial, BLB&G resolved the two actions against Merck and Schering-Plough, which stemmed from claims that Merck and Schering artificially inflated their market value by concealing material information and making false and misleading statements regarding their blockbuster anti-cholesterol drugs Zetia and Vytorin.  Specifically, we alleged that the companies knew that their "ENHANCE" clinical trial of Vytorin (a combination of Zetia and a generic) demonstrated that Vytorin was no more effective than the cheaper generic at reducing artery thickness.  The companies nonetheless championed the "benefits" of their drugs, attracting billions of dollars of capital.  When public pressure to release the results of the ENHANCE trial became too great, the companies reluctantly announced these negative results, which we alleged led to sharp declines in the value of the companies' securities, resulting in significant losses to investors.  The combined $688 million in settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) is the second largest securities recovery ever in the Third Circuit, among the top 25 settlements of all time, and among the ten largest recoveries ever in a case where there was no financial restatement.  BLB&G represented Lead Plaintiffs **Arkansas Teacher Retirement System,** the **Public Employees' Retirement System of Mississippi,** and the **Louisiana Municipal Police Employees' Retirement System**. |

| | |
|---|---|
| **CASE:** | *IN RE LUCENT TECHNOLOGIES, INC. SECURITIES LITIGATION* |
| **COURT:** | **United States District Court for the District of New Jersey** |



**BLB&G**  Bernstein Litowitz
Berger & Grossmann LLP

**HIGHLIGHTS:** $667 million in total recoveries; the appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marked the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues and possible conflicts between new and old allegations.

**DESCRIPTION:** BLB&G served as Co-Lead Counsel in this securities class action, representing Lead Plaintiffs the **Parnassus Fund**, **Teamsters Locals 175 & 505 D&P Pension Trust**, **Anchorage Police and Fire Retirement System** and the **Louisiana School Employees' Retirement System.** The complaint accused Lucent of making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business. When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000. The settlement obtained in this case is valued at approximately $667 million, and is composed of cash, stock and warrants.

**CASE:** *IN RE WACHOVIA PREFERRED SECURITIES AND BOND/NOTES LITIGATION*

**COURT:** United States District Court for the Southern District of New York

**HIGHLIGHTS:** $627 million recovery – among the 20 largest securities class action recoveries in history; third largest recovery obtained in an action arising from the subprime mortgage crisis.

**DESCRIPTION:** This securities class action was filed on behalf of investors in certain Wachovia bonds and preferred securities against Wachovia Corp., certain former officers and directors, various underwriters, and its auditor, KPMG LLP. The case alleges that Wachovia provided offering materials that misrepresented and omitted material facts concerning the nature and quality of Wachovia's multi-billion dollar option-ARM (adjustable rate mortgage) "Pick-A-Pay" mortgage loan portfolio, and that Wachovia's loan loss reserves were materially inadequate. According to the Complaint, these undisclosed problems threatened the viability of the financial institution, requiring it to be "bailed out" during the financial crisis before it was acquired by Wells Fargo. The combined $627 million recovery obtained in the action is among the 20 largest securities class action recoveries in history, the largest settlement ever in a class action case asserting only claims under the Securities Act of 1933, and one of a handful of securities class action recoveries obtained where there were no parallel civil or criminal actions brought by government authorities. The firm represented Co-Lead Plaintiffs **Orange County Employees Retirement System** and **Louisiana Sheriffs' Pension and Relief Fund** in this action.

**CASE:** *OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM V. FREDDIE MAC*

**COURT:** United States District Court for the Southern District of Ohio

**HIGHLIGHTS:** $410 million settlement.

**DESCRIPTION:** This securities fraud class action was filed on behalf of the **Ohio Public Employees Retirement System** and the **State Teachers Retirement System of Ohio** alleging that Federal Home Loan Mortgage Corporation ("Freddie Mac") and certain of its current and former officers issued false and misleading statements in connection with the company's previously reported financial results. Specifically, the Complaint alleged that the Defendants misrepresented the company's operations and financial results by having engaged in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the company's earnings and to hide earnings volatility. In connection with these improprieties, Freddie Mac restated more than $5 billion in earnings. A settlement of $410 million was reached in the case just as deposition discovery had begun and document review was complete.

**CASE:** *IN RE REFCO, INC. SECURITIES LITIGATION*

**COURT:** United States District Court for the Southern District of New York



**HIGHLIGHTS:** Over $407 million in total recoveries.

**DESCRIPTION:** The lawsuit arises from the revelation that Refco, a once prominent brokerage, had for years secreted hundreds of millions of dollars of uncollectible receivables with a related entity controlled by Phillip Bennett, the company's Chairman and Chief Executive Officer. This revelation caused the stunning collapse of the company a mere two months after its initial public offering of common stock. As a result, Refco filed one of the largest bankruptcies in U.S. history. Settlements have been obtained from multiple company and individual defendants, resulting in a total recovery for the class of over $407 million. BLB&G represented Co-Lead Plaintiff **RH Capital Associates LLC**.

# CORPORATE GOVERNANCE AND SHAREHOLDERS' RIGHTS

**CASE:** *UNITEDHEALTH GROUP, INC. SHAREHOLDER DERIVATIVE LITIGATION*

**COURT:** United States District Court for the District of Minnesota

**HIGHLIGHTS:** Litigation recovered over $920 million in ill-gotten compensation directly from former officers for their roles in illegally backdating stock options, while the company agreed to far-reaching reforms aimed at curbing future executive compensation abuses.

**DESCRIPTION:** This shareholder derivative action filed against certain current and former executive officers and members of the Board of Directors of UnitedHealth Group, Inc. alleged that the Defendants obtained, approved and/or acquiesced in the issuance of stock options to senior executives that were unlawfully backdated to provide the recipients with windfall compensation at the direct expense of UnitedHealth and its shareholders. The firm recovered over $920 million in ill-gotten compensation directly from the former officer Defendants – the largest derivative recovery in history. As feature coverage in *The New York Times* indicated, "investors everywhere should applaud [the UnitedHealth settlement].... [T]he recovery sets a standard of behavior for other companies and boards when performance pay is later shown to have been based on ephemeral earnings." The Plaintiffs in this action were the **St. Paul Teachers' Retirement Fund Association**, the **Public Employees' Retirement System of Mississippi**, the **Jacksonville Police & Fire Pension Fund**, the **Louisiana Sheriffs' Pension & Relief Fund**, the **Louisiana Municipal Police Employees' Retirement System** and **Fire & Police Pension Association of Colorado**.

**CASE:** *CAREMARK MERGER LITIGATION*

**COURT:** Delaware Court of Chancery – New Castle County

**HIGHLIGHTS:** Landmark Court ruling orders Caremark's board to disclose previously withheld information, enjoins shareholder vote on CVS merger offer, and grants statutory appraisal rights to Caremark shareholders. The litigation ultimately forced CVS to raise offer by $7.50 per share, equal to more than $3.3 billion in additional consideration to Caremark shareholders.

**DESCRIPTION:** Commenced on behalf of the **Louisiana Municipal Police Employees' Retirement System** and other shareholders of Caremark RX, Inc. ("Caremark"), this shareholder class action accused the company's directors of violating their fiduciary duties by approving and endorsing a proposed merger with CVS Corporation ("CVS"), all the while refusing to fairly consider an alternative transaction proposed by another bidder. In a landmark decision, the Court ordered the Defendants to disclose material information that had previously been withheld, enjoined the shareholder vote on the CVS transaction until the additional disclosures occurred, and granted statutory appraisal rights to Caremark's shareholders—forcing CVS to increase the consideration offered to shareholders by $7.50 per share in cash (over $3 billion in total).



| | |
|---|---|
| **CASE:** | **IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION** |
| **COURT:** | **United States District Court for the Southern District of New York** |
| **HIGHLIGHTS:** | Landmark settlement in which Defendants agreed to create a new Regulatory and Compliance Committee of the Pfizer Board that will be supported by a dedicated $75 million fund. |
| **DESCRIPTION:** | In the wake of Pfizer's agreement to pay $2.3 billion as part of a settlement with the U.S. Department of Justice to resolve civil and criminal charges relating to the illegal marketing of at least 13 of the company's most important drugs (the largest such fine ever imposed), this shareholder derivative action was filed against Pfizer's senior management and Board alleging they breached their fiduciary duties to Pfizer by, among other things, allowing unlawful promotion of drugs to continue after receiving numerous "red flags" that Pfizer's improper drug marketing was systemic and widespread. The suit was brought by Court-appointed Lead Plaintiffs **Louisiana Sheriffs' Pension and Relief Fund** and **Skandia Life Insurance Company, Ltd.** In an unprecedented settlement reached by the parties, the Defendants agreed to create a new Regulatory and Compliance Committee of the Pfizer Board of Directors (the "Regulatory Committee") to oversee and monitor Pfizer's compliance and drug marketing practices and to review the compensation policies for Pfizer's drug sales related employees. |

| | |
|---|---|
| **CASE:** | **IN RE EL PASO CORP. SHAREHOLDER LITIGATION** |
| **COURT:** | **Delaware Court of Chancery – New Castle County** |
| **HIGHLIGHTS:** | Landmark Delaware ruling chastises Goldman Sachs for M&A conflicts of interest. |
| **DESCRIPTION:** | This case aimed a spotlight on ways that financial insiders – in this instance, Wall Street titan Goldman Sachs – game the system. The Delaware Chancery Court harshly rebuked Goldman for ignoring blatant conflicts of interest while advising their corporate clients on Kinder Morgan's high-profile acquisition of El Paso Corporation. As a result of the lawsuit, Goldman was forced to relinquish a $20 million advisory fee, and BLB&G obtained a $110 million cash settlement for El Paso shareholders – one of the highest merger litigation damage recoveries in Delaware history. |

| | |
|---|---|
| **CASE:** | **IN RE DELPHI FINANCIAL GROUP SHAREHOLDER LITIGATION** |
| **COURT:** | **Delaware Court of Chancery – New Castle County** |
| **HIGHLIGHTS:** | Dominant shareholder is blocked from collecting a payoff at the expense of minority investors. |
| **DESCRIPTION:** | As the Delphi Financial Group prepared to be acquired by Tokio Marine Holdings Inc., the conduct of Delphi's founder and controlling shareholder drew the scrutiny of BLB&G and its institutional investor clients for improperly using the transaction to expropriate at least $55 million at the expense of the public shareholders. BLB&G aggressively litigated this action and obtained a settlement of $49 million for Delphi's public shareholders. The settlement fund is equal to about 90% of recoverable Class damages – a virtually unprecedented recovery. |

| | |
|---|---|
| **CASE:** | **QUALCOMM BOOKS & RECORDS LITIGATION** |
| **COURT:** | **Delaware Court of Chancery – New Castle County** |
| **HIGHLIGHTS:** | Novel use of "books and records" litigation enhances disclosure of political spending and transparency. |
| **DESCRIPTION:** | The U.S. Supreme Court's controversial 2010 opinion in *Citizens United v. FEC* made it easier for corporate directors and executives to secretly use company funds – shareholder assets – to support personally favored political candidates or causes. BLB&G prosecuted the first-ever "books and records" litigation to obtain disclosure of corporate political spending at our client's portfolio |



company – technology giant Qualcomm Inc. – in response to Qualcomm's refusal to share the information.  As a result of the lawsuit, Qualcomm adopted a policy that provides its shareholders with comprehensive disclosures regarding the company's political activities and places Qualcomm as a standard-bearer for other companies.

| | |
|---|---|
| **CASE:** | **IN RE NEWS CORP. SHAREHOLDER DERIVATIVE LITIGATION** |
| **COURT:** | **Delaware Court of Chancery – Kent County** |
| **HIGHLIGHTS:** | An unprecedented settlement in which News Corp. recoups $139 million and enacts significant corporate governance reforms that combat self-dealing in the boardroom. |
| **DESCRIPTION:** | Following News Corp.'s 2011 acquisition of a company owned by News Corp. Chairman and CEO Rupert Murdoch's daughter, and the phone-hacking scandal within its British newspaper division, we filed a derivative litigation on behalf of the company because of institutional shareholder concern with the conduct of News Corp.'s management.  We ultimately obtained an unprecedented settlement in which News Corp. recouped $139 million for the company coffers, and agreed to enact corporate governance enhancements to strengthen its compliance structure, the independence and functioning of its board, and the compensation and clawback policies for management. |

| | |
|---|---|
| **CASE:** | **IN RE ACS SHAREHOLDER LITIGATION (XEROX)** |
| **COURT:** | **Delaware Court of Chancery – New Castle County** |
| **HIGHLIGHTS:** | BLB&G challenged an attempt by ACS CEO to extract a premium on his stock not shared with the company's public shareholders in a sale of ACS to Xerox.  On the eve of trial, BLB&G obtained a $69 million recovery, with a substantial portion of the settlement personally funded by the CEO. |
| **DESCRIPTION:** | Filed on behalf of the **New Orleans Employees' Retirement System** and similarly situated shareholders of Affiliated Computer Service, Inc., this action alleged that members of the Board of Directors of ACS breached their fiduciary duties by approving a merger with Xerox Corporation which would allow Darwin Deason, ACS's founder and Chairman and largest stockholder, to extract hundreds of millions of dollars of value that rightfully belongs to ACS's public shareholders for himself.  Per the agreement, Deason's consideration amounted to over a 50% premium when compared to the consideration paid to ACS's public stockholders. The ACS Board further breached its fiduciary duties by agreeing to certain deal protections in the merger agreement that essentially locked up the transaction between ACS and Xerox. After seeking a preliminary injunction to enjoin the deal and engaging in intense discovery and litigation in preparation for a looming trial date, Plaintiffs reached a global settlement with Defendants for $69 million.  In the settlement, Deason agreed to pay $12.8 million, while ACS agreed to pay the remaining $56.1 million. |

| | |
|---|---|
| **CASE:** | **IN RE DOLLAR GENERAL CORPORATION SHAREHOLDER LITIGATION** |
| **COURT:** | **Sixth Circuit Court for Davidson County, Tennessee; Twentieth Judicial District, Nashville** |
| **HIGHLIGHTS:** | Holding Board accountable for accepting below-value "going private" offer. |
| **DESCRIPTION:** | A Nashville, Tennessee corporation that operates retail stores selling discounted household goods, in early March 2007, Dollar General announced that its Board of Directors had approved the acquisition of the company by the private equity firm Kohlberg Kravis Roberts & Co. ("KKR").  BLB&G, as Co-Lead Counsel for the **City of Miami General Employees' & Sanitation Employees' Retirement Trust**, filed a class action complaint alleging that the "going private" offer was approved as a result of breaches of fiduciary duty by the board and that the price offered by KKR did not reflect the fair value of Dollar General's publicly-held shares.  On the eve of the summary judgment hearing, KKR agreed to pay a $40 million settlement in favor of the shareholders, with a potential for $17 million more for the Class. |



**CASE:** *LANDRY'S RESTAURANTS, INC. SHAREHOLDER LITIGATION*

**COURT:** **Delaware Court of Chancery – New Castle County**

**HIGHLIGHTS:** Protecting shareholders from predatory CEO's multiple attempts to take control of Landry's Restaurants through improper means. Our litigation forced the CEO to increase his buyout offer by four times the price offered and obtained an additional $14.5 million cash payment for the class.

**DESCRIPTION:** In this derivative and shareholder class action, shareholders alleged that Tilman J. Fertitta – chairman, CEO and largest shareholder of Landry's Restaurants, Inc. – and its Board of Directors stripped public shareholders of their controlling interest in the company for no premium and severely devalued remaining public shares in breach of their fiduciary duties. BLB&G's prosecution of the action on behalf of Plaintiff **Louisiana Municipal Police Employees' Retirement System** resulted in recoveries that included the creation of a settlement fund composed of $14.5 million in cash, as well as significant corporate governance reforms and an increase in consideration to shareholders of the purchase price valued at $65 million.

# EMPLOYMENT DISCRIMINATION AND CIVIL RIGHTS

**CASE:** *ROBERTS V. TEXACO, INC.*

**COURT:** **United States District Court for the Southern District of New York**

**HIGHLIGHTS:** BLB&G recovered $170 million on behalf of Texaco's African-American employees and engineered the creation of an independent "Equality and Tolerance Task Force" at the company.

**DESCRIPTION:** Six highly qualified African-American employees filed a class action complaint against Texaco Inc. alleging that the company failed to promote African-American employees to upper level jobs and failed to compensate them fairly in relation to Caucasian employees in similar positions. BLB&G's prosecution of the action revealed that African-Americans were significantly under-represented in high level management jobs and that Caucasian employees were promoted more frequently and at far higher rates for comparable positions within the company. The case settled for over $170 million, and Texaco agreed to a Task Force to monitor its diversity programs for five years – a settlement described as the most significant race discrimination settlement in history.

**CASE:** *ECOA - GMAC/NMAC/FORD/TOYOTA/CHRYSLER - CONSUMER FINANCE DISCRIMINATION LITIGATION*

**COURT:** **Multiple jurisdictions**

**HIGHLIGHTS:** Landmark litigation in which financing arms of major auto manufacturers are compelled to cease discriminatory "kick-back" arrangements with dealers, leading to historic changes to auto financing practices nationwide.

**DESCRIPTION:** The cases involve allegations that the lending practices of General Motors Acceptance Corporation, Nissan Motor Acceptance Corporation, Ford Motor Credit, Toyota Motor Credit and DaimlerChrysler Financial cause African-American and Hispanic car buyers to pay millions of dollars more for car loans than similarly situated white buyers. At issue is a discriminatory kickback system under which minorities typically pay about 50% more in dealer mark-up which is shared by auto dealers with the Defendants.

*NMAC:* The United States District Court for the Middle District of Tennessee granted final approval of the settlement of the class action against Nissan Motor Acceptance Corporation ("NMAC") in which NMAC agreed to offer pre-approved loans to hundreds of thousands of current and potential African-American and Hispanic NMAC customers, and limit how much it raises the interest charged to car buyers above the company's minimum acceptable rate.



**GMAC:** The United States District Court for the Middle District of Tennessee granted final approval of a settlement of the litigation against General Motors Acceptance Corporation ("GMAC") in which GMAC agreed to take the historic step of imposing a 2.5% markup cap on loans with terms up to 60 months, and a cap of 2% on extended term loans.  GMAC also agreed to institute a substantial credit pre-approval program designed to provide special financing rates to minority car buyers with special rate financing.

**DAIMLERCHRYSLER:** The United States District Court for the District of New Jersey granted final approval of the settlement in which DaimlerChrysler agreed to implement substantial changes to the company's practices, including limiting the maximum amount of mark-up dealers may charge customers to between 1.25% and 2.5% depending upon the length of the customer's loan.  In addition, the company agreed to send out pre-approved credit offers of no-markup loans to African-American and Hispanic consumers, and contribute $1.8 million to provide consumer education and assistance programs on credit financing.

**FORD MOTOR CREDIT**: The United States District Court for the Southern District of New York granted final approval of a settlement in which Ford Credit agreed to make contract disclosures informing consumers that the customer's Annual Percentage Rate ("APR") may be negotiated and that sellers may assign their contracts and retain rights to receive a portion of the finance charge.

## CLIENTS AND FEES

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation.  Wherever appropriate, even with our corporate clients, we will encourage retention where our fee is contingent on the outcome of the litigation.  This way, it is not the number of hours worked that will determine our fee, but rather the result achieved for our client.

Our clients include many large and well known financial and lending institutions and pension funds, as well as privately-held companies that are attracted to our firm because of our reputation, expertise and fee structure. Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors and accountants.  A considerable number of clients have been referred to the firm by former adversaries.  We have always maintained a high level of independence and discretion in the cases we decide to prosecute.  As a result, the level of personal satisfaction and commitment to our work is high.



## IN THE PUBLIC INTEREST

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles: excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community and *pro bono* activities, as well as participating as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School.

### BERNSTEIN LITOWITZ BERGER & GROSSMANN PUBLIC INTEREST LAW FELLOWS

COLUMBIA LAW SCHOOL − BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donated funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This newly endowed fund at Columbia Law School will provide Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. The BLB&G Fellows are able to begin their careers free of any school debt if they make a long-term commitment to public interest law.

### FIRM SPONSORSHIP OF HER JUSTICE

NEW YORK, NY − BLB&G is a sponsor of Her Justice, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally battered women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers who provide *pro bono* counsel to these women. Several members and associates of the firm volunteer their time to help women who need divorces from abusive spouses, or representation on issues such as child support, custody and visitation. To read more about Her Justice, visit the organization's website at www.herjustice.org.

### THE PAUL M. BERNSTEIN MEMORIAL SCHOLARSHIP

COLUMBIA LAW SCHOOL − Paul M. Bernstein was the founding senior partner of the firm. Mr. Bernstein led a distinguished career as a lawyer and teacher and was deeply committed to the professional and personal development of young lawyers. The Paul M. Bernstein Memorial Scholarship Fund is a gift of the firm and the family and friends of Paul M. Bernstein, and is awarded annually to one or more second-year students selected for their academic excellence in their first year, professional responsibility, financial need and contributions to the community.

### FIRM SPONSORSHIP OF CITY YEAR NEW YORK

NEW YORK, NY − BLB&G is also an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

### MAX W. BERGER PRE-LAW PROGRAM

BARUCH COLLEGE − In order to encourage outstanding minority undergraduates to pursue a meaningful career in the legal profession, the Max W. Berger Pre-Law Program was established at Baruch College. Providing workshops, seminars, counseling and mentoring to Baruch students, the program facilitates and guides them through the law school research and application process, as well as placing them in appropriate internships and other pre-law working environments.

### NEW YORK SAYS THANK YOU FOUNDATION

NEW YORK, NY − Founded in response to the outpouring of love shown to New York City by volunteers from all over the country in the wake of the 9/11 attacks, The New York Says Thank You Foundation sends volunteers from New York City to help rebuild communities around the country affected by disasters. BLB&G is a corporate sponsor of NYSTY and its goals are a heartfelt reflection of the firm's focus on community and activism.



**Bernstein Litowitz**
**Berger & Grossmann** LLP

# OUR ATTORNEYS

## MEMBERS

**MAX W. BERGER**, the firm's senior founding partner, supervises BLB&G's litigation practice and prosecutes class and individual actions on behalf of the firm's clients.

He has litigated many of the firm's most high-profile and significant cases, and has negotiated seven of the largest securities fraud settlements in history, each in excess of a billion dollars: *Cendant* ($3.3 billion); *Citigroup–WorldCom* ($2.575 billion); *Bank of America/Merrill Lynch* ($2.4 billion); *JPMorgan Chase–WorldCom* ($2 billion); *Nortel* ($1.07 billion); *Merck* ($1.06 billion); and *McKesson* ($1.05 billion).

Mr. Berger's work has garnered him extensive media attention, and he has been the subject of feature articles in a variety of major media publications. Unique among his peers, *The New York Times* highlighted his remarkable track record in an October 2012 profile entitled "Investors' Billion-Dollar Fraud Fighter," which also discussed his role in the Bank of America/Merrill Lynch Merger litigation. In 2011, Mr. Berger was twice profiled by *The American Lawyer* for his role in negotiating a $627 million recovery on behalf of investors in the *In re Wachovia Corp. Securities Litigation,* and a $516 million recovery in *In re Lehman Brothers Equity/Debt Securities Litigation.* Previously, Mr. Berger's role in the *WorldCom* case generated extensive media coverage including feature articles in *BusinessWeek* and *The American Lawyer.* For his outstanding efforts on behalf of WorldCom investors, *The National Law Journal* profiled Mr. Berger (one of only eleven attorneys selected nationwide) in its annual 2005 "Winning Attorneys" section. He was subsequently featured in a 2006 *New York Times* article, "A Class-Action Shuffle," which assessed the evolving landscape of the securities litigation arena.

**One of the "100 Most Influential Lawyers in America"**

Widely recognized for his professional excellence and achievements, Mr. Berger was named one of the "100 Most Influential Lawyers in America" by *The National Law Journal* for being "front and center" in holding Wall Street banks accountable and obtaining over $5 billion in cases arising from the subprime meltdown, and for his work as a "master negotiator" in obtaining numerous multi-billion dollar recoveries for investors.

Described as a "standard-bearer" for the profession in a career spanning over 40 years, he is the 2014 recipient of *Chambers USA's* award for Outstanding Contribution to the Legal Profession. In presenting this prestigious honor, *Chambers* recognized Mr. Berger's "numerous headline-grabbing successes," as well as his unique stature among colleagues – "warmly lauded by his peers, who are nevertheless loath to find him on the other side of the table."

*Law360* published a special feature discussing his life and career as a "Titan of the Plaintiffs Bar," and also named him one of only six litigators selected nationally as a "Legal MVP" for his work in securities litigation.

For the past ten years in a row, Mr. Berger has received the top attorney ranking in plaintiff securities litigation by *Chambers* and is consistently recognized as one of New York's "local litigation stars" by *Benchmark Litigation* (published by *Institutional Investor* and *Euromoney*). *Law360* also named him one of only six litigators selected nationally as a "Legal MVP" for his work in securities litigation.

Since their various inceptions, he has also been named a "leading lawyer" by the *Legal 500 US* guide, one of "10 Legal Superstars" by *Securities Law360*, and one of the "500 Leading Lawyers



in America" and "100 Securities Litigators You Need to Know" by *Lawdragon* magazine. Further, *The Best Lawyers in America* guide has named Mr. Berger a leading lawyer in his field.

Mr. Berger also serves the academic community in numerous capacities as a member of the Dean's Council to Columbia Law School, and as a member of the Board of Trustees of Baruch College. He has taught Profession of Law, an ethics course at Columbia Law School, and currently serves on the Advisory Board of Columbia Law School's Center on Corporate Governance.  In May 2006, he was presented with the Distinguished Alumnus Award for his contributions to Baruch College, and in February 2011, Mr. Berger received Columbia Law School's most prestigious and highest honor, "The Medal for Excellence."  This award is presented annually to Columbia Law School alumni who exemplify the qualities of character, intellect, and social and professional responsibility that the Law School seeks to instill in its students.  As a recipient of this award, Mr. Berger was profiled in the Fall 2011 issue of *Columbia Law School Magazine.*

Mr. Berger is currently a member of the New York State, New York City and American Bar Associations, and is a member of the Federal Bar Council. He is also a member of the American Law Institute and an Advisor to its Restatement Third: Economic Torts project. In addition, Mr. Berger is a member of the Board of Trustees of The Supreme Court Historical Society.

Mr. Berger lectures extensively for many professional organizations. In 1997, Mr. Berger was honored for his outstanding contribution to the public interest by Trial Lawyers for Public Justice, where he was a "Trial Lawyer of the Year" Finalist for his work in *Roberts, et al. v. Texaco*, the celebrated race discrimination case, on behalf of Texaco's African-American employees.

Among numerous charitable and volunteer works, Mr. Berger is an active supporter of City Year New York, a division of AmeriCorps, dedicated to encouraging young people to devote time to public service. In July 2005, he was named City Year New York's "Idealist of the Year," for his long-time service and work in the community.  He and his wife, Dale, have also established the Dale and Max Berger Public Interest Law Fellowship at Columbia Law School and the Max Berger Pre-Law Program at Baruch College.

EDUCATION: Baruch College-City University of New York, B.B.A., Accounting, 1968; President of the student body and recipient of numerous awards.  Columbia Law School, J.D., 1971, Editor of the *Columbia Survey of Human Rights Law.*

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. Court of Appeals for the Second Circuit; U.S. Supreme Court.

GERALD H. SILK'S practice focuses on representing institutional investors on matters involving federal and state securities laws, accountants' liability, and the fiduciary duties of corporate officials, as well as general commercial and corporate litigation.  He also advises creditors on their rights with respect to pursuing affirmative claims against officers and directors, as well as professionals both inside and outside the bankruptcy context.

Mr. Silk is a managing partner of the firm and oversees its New Matter department in which he, along with a group of attorneys, financial analysts and investigators, counsels institutional clients on potential legal claims.  He was the subject of "Picking Winning Securities Cases," a feature article in the June 2005 issue of *Bloomberg Markets* magazine, which detailed his work for the firm in this capacity.  A decade later, in December 2014, Mr. Silk was recognized by *The National Law Journal* in its inaugural list of "Litigation Trailblazers & Pioneers" — one of 50 lawyers in the country who have changed the practice of litigation through the use of innovative legal strategies — in no small part for the critical role he has played in helping the firm's investor clients recover billions of dollars in litigation arising from the financial crisis, among other matters.



Bernstein Litowitz
Berger & Grossmann LLP

In addition, *Lawdragon* magazine, which has named Mr. Silk one of the "100 Securities Litigators You Need to Know," one of the "500 Leading Lawyers in America" and one of America's top 500 "rising stars" in the legal profession, also recently profiled him as part of its "Lawyer Limelight" special series, discussing subprime litigation, his passion for plaintiffs' work and the trends he expects to see in the market.  Recognized as one of an elite group of notable practitioners by *Chambers USA*, he is also named as a "Litigation Star" by *Benchmark,* is recommended by the *Legal 500 USA* guide in the field of plaintiffs' securities litigation, and has been selected by *New York Super Lawyers* every year since 2006.

In the wake of the financial crisis, he advised the firm's institutional investor clients on their rights with respect to claims involving transactions in residential mortgage-backed securities (RMBS) and collateralized debt obligations (CDOs).  His work representing Cambridge Place Investment Management Inc. on claims under Massachusetts state law against numerous investment banks arising from the purchase of billions of dollars of RMBS was featured in a 2010 *New York Times* article by Gretchen Morgenson titled, "Mortgage Investors Turn to State Courts for Relief."

Mr. Silk also represented the New York State Teachers' Retirement System in a securities litigation against the General Motors Company arising from a series of misrepresentations concerning the quality, safety, and reliability of the Company's cars which resulted in a $300 million settlement.  In addition, he is actively involved in the firm's prosecution of highly successful M&A litigation, representing shareholders in widely publicized lawsuits, including the litigation arising from the proposed acquisition of Caremark Rx, Inc. by CVS Corporation — which led to an increase of approximately $3.5 billion in the consideration offered to shareholders.

Mr. Silk was one of the principal attorneys responsible for prosecuting the *In re Independent Energy Holdings Securities Litigation*.  A case against the officers and directors of Independent Energy as well as several investment banking firms which underwrote a $200 million secondary offering of ADRs by the U.K.-based Independent Energy, the litigation was resolved for $48 million.  Mr. Silk has also prosecuted and successfully resolved several other securities class actions, which resulted in substantial cash recoveries for investors, including *In re Sykes Enterprises, Inc. Securities Litigation* in the Middle District of Florida, and *In re OM Group, Inc. Securities Litigation* in the Northern District of Ohio.  He was also a member of the litigation team responsible for the successful prosecution of *In re Cendant Corporation Securities Litigation* in the District of New Jersey, which was resolved for $3.2 billion.

A graduate of the Wharton School of Business, University of Pennsylvania and Brooklyn Law School, in 1995-96, Mr. Silk served as a law clerk to the Hon. Steven M. Gold, U.S.M.J., in the United States District Court for the Eastern District of New York.

Mr. Silk lectures to institutional investors at conferences throughout the country, and has written or substantially contributed to several articles on developments in securities and corporate law, including "Improving Multi-Jurisdictional, Merger-Related Litigation," American Bar Association (February 2011);  "The Compensation Game," *Lawdragon,* Fall 2006; "Institutional Investors as Lead Plaintiffs: Is There A New And Changing Landscape?," 75 *St. John's Law Review* 31 (Winter 2001); "The Duty To Supervise, Poser, Broker-Dealer Law and Regulation," 3rd Ed. 2000, Chapter 15; "Derivative Litigation In New York after Marx v. Akers," *New York Business Law Journal*, Vol. 1, No. 1 (Fall 1997).

He is a frequent commentator for the business media on television and in print.  Among other outlets, he has appeared on NBC's *Today,* and CNBC's *Power Lunch, Morning Call,* and *Squawkbox* programs, as well as being featured in *The New York Times, Financial Times, Bloomberg*, *The National Law Journal,* and the *New York Law Journal.*

EDUCATION:  Wharton School of the University of Pennsylvania, B.S., Economics, 1991.  Brooklyn Law School, J.D., *cum laude,* 1995.



BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

**SALVATORE J. GRAZIANO** is widely recognized as one of the top securities litigators in the country.  He has served as lead trial counsel in a wide variety of major securities fraud class actions, recovering billions of dollars on behalf of institutional investors and hedge fund clients.

Over the course of his distinguished career, Mr. Graziano has successfully litigated many high-profile cases, including:  *Merck & Co., Inc. (Vioxx) Sec. Litig.* (D.N.J.); *In re Schering-Plough Corp./ENHANCE Sec. Litig.* (D.N.J.); *New York State Teachers' Retirement System v. General Motors Co.* (E.D. Mich.); *In re MF Global Holdings Limited Sec. Litig.* (S.D.N.Y); *In re Raytheon Sec. Litig.* (D. Mass.); *In re Refco Sec. Litig.* (S.D.N.Y.); *In re MicroStrategy, Inc. Sec. Litig.* (E.D. Va.); *In re Bristol Myers Squibb Co. Sec. Litig.* (S.D.N.Y.); and *In re New Century Sec. Litig.* (C.D. Cal.).

Industry observers, peers and adversaries routinely honor Mr. Graziano for his accomplishments. He is one of the "Top 100 Trial Lawyers" in the nation according to *Benchmark Litigation*, which credits him for performing *"top quality work." Chambers USA* describes Mr. Graziano as "wonderfully talented…a smart, aggressive lawyer who works hard for his clients," while *Legal 500* praises him as a "highly effective litigator."  Heralded as one of a handful of Class Action MVPs in the nation by *Law360*, he is also one of *Lawdragon's* 500 Leading Lawyers in America, named as a leading mass tort and plaintiff class action litigator by *Best Lawyers®*, and as a *New York Super Lawyer.*

 A managing partner of the firm, Mr. Graziano has previously served as the President of the National Association of Shareholder & Consumer Attorneys, and has served as a member of the Financial Reporting Committee and the Securities Regulation Committee of the Association of the Bar of the City of New York.  He regularly lectures on securities fraud litigation and shareholder rights.

Prior to entering private practice, Mr. Graziano served as an Assistant District Attorney in the Manhattan District Attorney's Office.

EDUCATION:  New York University College of Arts and Science, B.A., psychology, *cum laude,* 1988.  New York University School of Law, J.D., *cum laude,* 1991.

BAR ADMISSIONS:  New York; U.S. District Courts for the Southern and Eastern Districts of New York; U.S. Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits.

**MARK LEBOVITCH** heads the firm's corporate governance litigation practice, focusing on derivative suits and transactional litigation. Working with his institutional investor clients, he has helped develop critical new law in the fight to hold management accountable by aggressively pursuing meaningful and novel challenges to alleged corporate governance related misconduct and anti-shareholder practices.

Selected current and past representations include:

- *In re DISH Corp. Shareholder Litigation:*  derivative suit challenging misappropriation and front-running by a controlling shareholder, costing investors over $800 million;

- *Insys Derivative Litigation*: challenging a board-approved illegal marketing scheme that actively encouraged off-label marketing of a deadly opioid fentanyl drug;

- *In re TIBCO Software Stockholder Litigation:*  pursued novel and precedent-setting merger agreement reformation claims and received 33% of potential damages shortly before trial;



BLB&G   Bernstein Litowitz
          Berger & Grossmann LLP

- *In re Freeport-McMoRan Derivative Litigation:* settled for a cash recovery of nearly $154 million, plus corporate governance reforms;

- *In re Jefferies, Inc. Stockholder Litigation:* settled for a $75 million net payment paid entirely to a class of former Jefferies investor through a first-of-its-kind dividend;

- *Safeway Appraisal Litigation*:  provided clients with a nearly 30% increase in value above the negotiated merger consideration;

- *In re News Corp. Shareholder Derivative Litigation*: settled for a $139 million cash recovery, and an unprecedented package of corporate governance and oversight enhancements;

- *In re El Paso Corp. Shareholder Litigation*: resulted in a $110 million post-closing settlement and a ruling that materially improved the way M&A financial advisors address conflicts of interest;

- *In re Delphi Financial Group Shareholder Litigation*: challenged the controlling shareholder's unlawful demand for an additional $55 million in connection with the sale of the company, resulting in the recovery of $49 million;

- *In re Pfizer Derivative Litigation*:  resulted in a $75 million payment and creation of a new Healthcare Law Regulatory Committee, which sets an improved standard for regulatory compliance oversight by a public company board of directors; and

- *In re ACS Shareholder Litigation:*  settled on the eve of trial for a $69 million cash payment to ACS shareholders.

Mr. Lebovitch pioneered challenges to the improper but widespread practice of using "Proxy Put" provisions in corporate debt agreements, obtaining pro-shareholder rulings in cases like *In re Amylin Shareholders Litigation*, *In re SandRidge Energy, Inc. Shareholder Litigation*, and *In re Healthways, Inc. Shareholder Litigation*, which have caused the industry to materially change its use of such provisions.  He also prosecutes securities litigations, and in that capacity, was the lead litigation attorney in *In re Merrill Lynch Bondholders Litigation*, which settled for $150 million; and a member of the team prosecuting *In re Bank of America Securities Litigation*, which settled for $2.425 billion.  Currently, he is the lead attorney prosecuting *In re Allergan Proxy Securities Litigation.*

Mr. Lebovitch has received national recognition for his work in securities and M&A litigation. He was selected 2016 national "Plaintiff Attorney of the Year" by *Benchmark Litigation* and is regularly honored as a New York "Litigation Star" by *Benchmark* in its exclusive annual list of top practitioners.  Named a leading lawyer in M&A litigation by *Best Lawyers®,* Mr. Lebovitch was selected as its 2016 M&A Litigation "Lawyer of the Year" for New York City. He is one of *Lawdragon's* "500 Leading Lawyers in America," a *New York Super Lawyer,* and is recognized by *Chambers USA* and *Legal 500 as* one of an elite group of notable practitioners in securities and M&A litigation.  In 2013, *Law360* named him as one of its five "Rising Stars" nationally in the area of securities litigation – the only plaintiff-side attorney so selected.  In 2012, *The Deal* magazine prominently profiled Mr. Lebovitch as one of the top three lawyers nationally representing shareholder plaintiffs in M&A litigation in its feature article, "The Troika Atop the M&A Plaintiffs' Bar."

Mr. Lebovitch is a member of the Board of Advisors for both the Institute for Law and Economics and the NYU Institute for Corporate Governance and Finance, and is an author and a frequent speaker and commentator at industry events on a wide range of corporate governance and securities related issues.  His publications include "Of Babies and Bathwater: Deterring Frivolous Stockholder Suits Without Closing the Courthouse Doors to Legitimate Claims," "Making Order Out of Chaos: A Proposal To Improve Organization and Coordination in Multi-Jurisdictional Merger-Related Litigation," "'Novel Issues' or a Return to Core Principles? Analyzing the Common Link Between the Delaware Chancery Court's Recent Rulings in Option Backdating and Transactional Cases" (*NYU Journal of Law & Business*, Volume 4, Number 2), "Calling a Duck a Duck: Determining the Validity of Deal Protection Provisions in Merger of Equals Transactions"



(2001 *Columbia Business Law Review* 1) and "Practical Refinement" (*The Daily Deal*, January 2002), each of which discussed evolving developments in the law of directors' fiduciary duties.

Mr. Lebovitch clerked for Vice Chancellor Stephen P. Lamb on the Court of Chancery of the State of Delaware, and was a litigation associate at Skadden, Arps, Slate, Meagher & Flom in New York, where he represented clients in a variety of corporate governance, commercial and federal securities matters.

EDUCATION:  Binghamton University – State University of New York, B.A., *cum laude*, 1996. New York University School of Law, J.D., *cum laude,* 1999.

BAR ADMISSIONS: New York; U. S. District Courts for the Southern and Eastern Districts of New York.

**AVI JOSEFSON** prosecutes securities fraud litigation for the firm's institutional investor clients, and has participated in many of the firm's significant representations, including *In re SCOR Holding (Switzerland) AG Securities Litigation*, which resulted in a recovery worth in excess of $143 million for investors. He was also a member of the team that litigated the *In re OM Group, Inc. Securities Litigation*, which resulted in a settlement of $92.4 million.

As a member of the firm's New Matter department, Mr. Josefson counsels institutional clients on potential legal claims.  He has presented argument in several federal and state courts, including an appeal he argued before the Delaware Supreme Court.

Mr. Josefson is also actively involved in the M&A litigation practice, and represented shareholders in the litigation arising from the proposed acquisitions of Ceridian Corporation and Anheuser-Busch.  A member of the firm's subprime litigation team, he has participated in securities fraud actions arising from the collapse of subprime mortgage lender American Home Mortgage and the actions against Lehman Brothers, Citigroup and Merrill Lynch, arising from those banks' multi-billion dollar loss from mortgage-backed investments.  Mr. Josefson has prosecuted actions against Deutsche Bank and Morgan Stanley arising from their sale of mortgage-backed securities, and is advising U.S. and foreign institutions concerning similar claims arising from investments in mortgage-backed securities.

Mr. Josefson practices in the firm's Chicago and New York Offices.

EDUCATION: Brandeis University, B.A., *cum laude,* 1997.  Northwestern University, J.D., 2000; *Dean's List*; Justice Stevens Public Interest Fellowship (1999); Public Interest Law Initiative Fellowship (2000).

BAR ADMISSIONS: Illinois, New York; U.S. District Courts for the Southern District of New York and the Northern District of Illinois.

**JOHN RIZIO-HAMILTON** is involved in a variety of the firm's litigation practice areas, focusing specifically on securities fraud, corporate governance, and shareholder rights.  He currently represents the firm's institutional investor clients as counsel in a number of major pending actions, including the securities class action arising from Facebook's IPO, captioned *In re Facebook, Inc. IPO Securities Litigation*.

Mr. Rizio-Hamilton was a member of the trial team prosecuting *In re Bank of America Securities Litigation*, which settled for $2.425 billion, the single largest securities class action recovery ever resolving violations of Sections 14(a) and 10(b) of the Securities Exchange Act, and one of the top securities litigation settlements obtained of all time.  He also served as counsel on behalf of the institutional investor plaintiffs in *In re Citigroup, Inc. Bond Action Litigation*, which settled for $730 million, the second largest recovery ever in a securities class action brought on behalf of



Bernstein Litowitz
Berger & Grossmann LLP

purchasers of debt securities. In addition, Mr. Rizio-Hamilton was a member of the team that prosecuted the *In re Wachovia Corp. Bond/Notes Litigation*, in which the firm recovered a total of $627 million on behalf of investors, one of the 15 largest securities class action recoveries in history. Most recently, he served as a key member of the team that recovered $150 million for investors in *In re JPMorgan Chase & Co. Securities Litigation*, a securities fraud class action arising out of misrepresentations and omissions concerning JPMorgan's Chief Investment Office, the company's risk management systems, and the trading activities of the so-called "London Whale."

Mr. Rizio-Hamilton has also been a member of the trial teams in several additional securities litigations through which the firm has successfully recovered hundreds of millions of dollars on behalf of injured investors. Among other matters, he was part of the trial teams that prosecuted *Eastwood Enterprises LLC v. WellCare*, *In re MBIA, Inc. Securities Litigation*, and *In re RAIT Financial Trust Securities Litigation*.

For his remarkable accomplishments, Mr. Rizio-Hamilton was recognized by *Law360* as one of the country's "Top Attorneys Under 40," and a national "Rising Star" in the area of class action litigation.

Before joining BLB&G, Mr. Rizio-Hamilton clerked for the Honorable Chester J. Straub of the United States Court of Appeals for the Second Circuit, and the Honorable Sidney H. Stein of the United States District Court for the Southern District of New York.

EDUCATION: The Johns Hopkins University, B.A., *with honors*, 1997. Brooklyn Law School, J.D., *summa cum laude;* Editor-in-Chief of the *Brooklyn Law Review;* first-place winner of the J. Braxton Craven Memorial Constitutional Law Moot Court Competition.

BAR ADMISSIONS: New York; U.S. District for the Southern District of New York.

**KATHERINE M. SINDERSON** is involved in a variety of the firm's practice areas, including securities fraud, corporate governance, and advisory services. She is currently a member of the teams prosecuting securities class actions against GNC and SunEdison, and litigation arising from the failure of the major mid-Atlantic bank, Wilmington Trust.

Ms. Sinderson played a key role in two of the firm's largest cases in its history, both of which settled near trial for billions of dollars on behalf of investors. In *In re Merck Securities Litigation*, she was a member of the small trial team that achieved a $1.062 billion settlement. This settlement is the second largest recovery ever obtained in the Third Circuit, one of the top 10 recoveries of all time, and the largest recovery ever achieved against a pharmaceutical company. She was also a member of the trial team prosecuting *In re Bank of America Securities Litigation*, which resulted in a recovery of $2.425 billion, the single largest securities class action recovery ever resolving violations of Sections 14(a) and 10(b) of the Securities Exchange Act and one of the largest shareholder recoveries in history.

Ms. Sinderson has also been part of the trial teams in numerous other securities litigations that have successfully recovered hundreds of millions of dollars on behalf of injured investors. Most recently, she served as a senior member of the teams that recently recovered $210 million in *In re Salix Pharmaceuticals, Ltd. Securities Litigation*, and $74 million in the take-private merger litigation *San Antonio Fire and Police Pension Fund et al v. Dole Food Co et al.*, both of which are currently pending court approval. She was also a member of the trial team that prosecuted the action against Washington Mutual, Inc. and certain of its former officers and directors for alleged fraudulent conduct in the thrift's home lending operations. The action resulted in a recovery of $208.5 million, the largest recovery ever achieved in a securities class action in the Western District of Washington. Some of her other prominent prosecutions include the *In re Bristol-Myers Squibb Co. Securities Litigation*, which resulted in a recovery of $125 million; and *In re Biovail Corporation Securities Litigation*, which resulted in a recovery of $138 million for defrauded



**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

investors and represents the second largest recovery in any securities case involving a Canadian issuer.

In 2016, Ms. Sinderson was recognized as a national "Rising Star" by *Law360* for her work in securities litigation and was named to *Benchmark Litigation's* "Under 40 Hot List," which recognizes her as one the nation's most accomplished legal partners under the age of 40. She is also regularly selected as a New York "Rising Star" by *Super Lawyers*.

EDUCATION: Baylor University, B.A., *cum laude,* 2002. Georgetown University, J.D., *cum laude*, 2006; Dean's Scholar; Articles Editor for *The Georgetown Journal of Gender and the Law*.

BAR ADMISSIONS: New York; U.S. District Court for the Southern District of New York; U.S. Court of Appeals for the Second Circuit.

**MICHAEL D. BLATCHLEY**'s practice focuses on securities fraud litigation. He is currently a member of the firm's New Matter department in which he, along with a team of attorneys, financial analysts, forensic accountants, and investigators, counsels the firm's clients on their legal claims.

Mr. Blatchley has also served as a member of the litigation teams responsible for prosecuting a number of the firm's significant cases. For example, Mr. Blatchley was a key member of the team that recovered $150 million for investors in *In re JPMorgan Chase & Co. Securities Litigation*, a securities fraud class action arising out of misrepresentations and omissions concerning JPMorgan's Chief Investment Office, the company's risk management systems, and the trading activities of the so-called "London Whale." He was also a member of the litigation team in *In re Medtronic, Inc. Securities Litigation*, an action arising out of allegations that Medtronic promoted the Infuse bone graft for dangerous "off-label" uses, which resulted in an $85 million recovery for investors. In addition, Mr. Blatchley prosecuted a number of cases related to the financial crisis, including several actions arising out of wrongdoing related to the issuance of residential mortgage-backed securities and other complex financial products. Currently, Mr. Blatchley is a member of the team prosecuting *In re Allergan, Inc. Proxy Violation Securities Litigation*.

Mr. Blatchley was recently named to *Benchmark Litigation's* "Under 40 Hot List," which recognizes him as one the nation's most accomplished legal partners under the age of 40.

While attending Brooklyn Law School, Mr. Blatchley held a judicial internship position for the Honorable David G. Trager, United States District Judge for the Eastern District of New York. In addition, he worked as an intern at The Legal Aid Society's Harlem Community Law Office, as well as at Brooklyn Law School's Second Look and Workers' Rights Clinics, and provided legal assistance to victims of Hurricane Katrina in New Orleans, Louisiana.

EDUCATION: University of Wisconsin, B.A., 2000. Brooklyn Law School, J.D., *cum laude,* 2007; Edward V. Sparer Public Interest Law Fellowship, William Payson Richardson Memorial Prize, Richard Elliott Blyn Memorial Prize, Editor for the *Brooklyn Law Review,* Moot Court Honor Society.

BAR ADMISSIONS: New York, New Jersey; U.S. District Courts for the Southern District of New York and the District of New Jersey.



## ASSOCIATES

**DAVID L. DUNCAN**'s practice concentrates on the settlement of class actions and other complex litigation and the administration of class action settlements.

Prior to joining BLB&G, Mr. Duncan worked as a litigation associate at Debevoise & Plimpton, where he represented clients in a wide variety of commercial litigation, including contract disputes, antitrust and products liability litigation, and in international arbitration.  In addition, he has represented criminal defendants on appeal in New York State courts and has successfully litigated on behalf of victims of torture and political persecution from Sudan, Côte d'Ivoire and Serbia in seeking asylum in the United States.

While in law school, Mr. Duncan served as an editor of the *Harvard Law Review*.  After law school, he clerked for Judge Amalya L. Kearse of the U.S. Court of Appeals for the Second Circuit.

EDUCATION: Harvard College, A.B., Social Studies, *magna cum laude*, 1993.  Harvard Law School, J.D., *magna cum laude*, 1997.

BAR ADMISSIONS: New York; Connecticut; U.S. District Court for the Southern District of New York.

**SCOTT R. FOGLIETTA** focuses his practice on securities litigation and is a member of the firm's New Matter group, in which he, as part of a team of attorneys, financial analysts, and investigators, counsels institutional investors on potential legal claims.

Mr. Foglietta also serves as a member of the litigation team responsible for prosecuting *In re Lumber Liquidators Holdings, Inc. Securities Litigation*.  For his accomplishments, Mr. Foglietta was recently named a New York "Rising Star" in the area of securities litigation.

Before joining the firm, Mr. Foglietta represented institutional and individual clients in a wide variety of complex litigation matters, including securities class actions, commercial litigation, and ERISA litigation.  While in law school, Mr. Foglietta served as a legal intern in the Financial Industry Regulatory Authority's (FINRA) Enforcement Division, and in the general counsel's office of NYSE Euronext.  Prior to law school, Mr. Foglietta earned his M.B.A. in finance from Clark University and worked as a capital markets analyst for a boutique investment banking firm.

EDUCATION:  Clark University, B.A., Management, *cum laude*, 2006.  Clark University, Graduate School of Management, M.B.A., Finance, 2007.  Brooklyn Law School, J.D., 2010.

BAR ADMISSIONS:  New York; New Jersey.

**ADAM HOLLANDER** prosecutes securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's institutional investor clients.

Mr. Hollander has represented institutional investors and corporations in state and federal trial and appellate courts throughout the country. Currently, he represents clients in a number of disputes relating to corporate governance and transactions, including a derivative action on behalf of Dish Network Corporation in the Nevada Business Court, a class and derivative action on behalf of Kinder Morgan Energy Partners, L.P. and its limited partners, and a class action on behalf of the public shareholders of KKR Financial Holdings LLC.  In addition, Mr. Hollander has drafted numerous briefs in matters before the federal courts of appeals.



Prior to joining BLB&G, Mr. Hollander clerked for the Honorable Barrington D. Parker, Jr. of the United States Court of Appeals for the Second Circuit, and for the Honorable Stefan R. Underhill of the United States District Court for the District of Connecticut. He has also been associated with two New York defense firms, where he gained significant experience representing clients in various civil, criminal, and regulatory matters, including white collar and complex commercial litigation.

Mr. Hollander is currently a member of the teams prosecuting *Bach v. Amedisys, Inc.*, *The Department of the Treasury of the State of New Jersey and its Division of Investment v. Cliffs Natural Resources Inc.*, In re Fairway Group Holdings Corp. Securities Litigation, In re Dish Network Corp. Shareholder Litigation, In re Kinder Morgan Energy Partnership, L.P. Derivative Litigation, In re Nu Skin Enterprises, Inc. Derivative Litigation, In re KKR Financial Holdings LLC Shareholder Litigation, Central Laborers' Pension Fund v. Portnoy, Slotoroff v. Kinder Morgan, Inc., City of Cambridge Retirement System v. Devitre, International Union of Operating Engineers Local 478 v. Hsu, Teamsters Local 443 Health Services & Insurance Plan v. Otis, and *In re Sanchez Energy Derivative Litigation.*

EDUCATION:  Brown University, A.B., *magna cum laude*, 2001, Urban Studies.  Yale Law School, J.D., 2006; Editor, *Yale Law and Policy Review.*

BAR ADMISSIONS:  New York; Connecticut; U.S. District Courts for the Southern District of New York and the District of Connecticut; U.S. Court of Appeals for the Second Circuit.


**ANGUS FEI NI** practices out of the New York office, where he prosecutes securities fraud, corporate governance and shareholder rights litigation for the firm's institutional investor clients.

Prior to joining the firm, he was a litigation associate at a top New York law firm, where he drafted briefs, conducted internal investigations, and managed discovery.  Mr. Ni has also represented corporate clients in international arbitrations before ICC and ICSID tribunals. Mr. Ni is currently a member of the teams prosecuting securities class actions against *Salix Pharmaceuticals, Ltd.* and the *Cardiovascular Systems, Inc.*

EDUCATION: University of Toronto, Trinity College, B.A., *Dean's List*; College Scholar, 2009. University of Chicago Law School, J.D., *with honors,* 2013.

BAR ADMISSIONS: New York; U.S. District Court for the Southern District of New York.


**DAVID SCHWARTZ** (former associate) practiced out of the New York office, where he prosecuted securities fraud, corporate governance and shareholder rights litigation on behalf of the firm's institutional investor clients.

Prior to joining the firm, Mr. Schwartz was an associate at a major international law firm, where he represented clients in business and complex commercial litigation, contract disputes, securities class actions, shareholder derivative suits, and SEC and other governmental inquiries and investigations.

EDUCATION:  University of Chicago, B.A., Economics, 2003; *Dean's List*.  Fordham University School of Law, J.D., 2008; Editor of *Urban Law Journal*.

BAR ADMISSIONS:  New York; U.S. District Court for the Southern District of New York.


**KATHERINE A. STEFANOU** (former associate) practiced out of the New York office, where she prosecuted securities fraud, corporate governance and shareholder rights litigation on behalf of the firm's institutional investor clients.



EDUCATION: University of Michigan, B.A., History and Modern Greek, *with distinction*, 2007. Brooklyn Law School, J.D., *cum laude*, 2011.

BAR ADMISSIONS:  New York; U.S. District Courts for the Eastern and Southern Districts of New York.

## STAFF ATTORNEYS

**ERWIN ABALOS** has worked on numerous matters at BLB&G, including *In re Salix Pharmaceuticals, Ltd. Securities Litigation, In re Facebook, Inc., IPO Securities and Derivative Litigation, In re Merck & Co., Inc. Securities Litigation (VIOXX-related)* and *Minneapolis Firefighters' Relief Association v. Medtronic, Inc. et al.*

Prior to joining the firm in 2012, Mr. Abalos was an associate at Jacoby & Meyers and Associates LLP.  Prior to attending law school, Mr. Abalos was a Senior Scientist at F. Hoffmann-LaRoche Ltd.

EDUCATION:  Georgetown University, B.S., 2000.  Rutgers University School of Law, J.D., 2006.

BAR ADMISSIONS:  New Jersey, New York.


**SHEELA AIYAPPASAMY** focuses on discovery matters, from the initial stages of electronic discovery through depositions.  Among other cases, Ms. Aiyappasamy has worked on *Medina, et al v. Clovis Oncology, Inc., et al* and *In re Salix Pharmaceuticals, Ltd. Securities Litigation.*

Prior to joining the firm in 2016, Ms. Aiyappasamy was a staff attorney at Simpson Thacher & Bartlett, and a law clerk at the U.S. Attorney's Office for the Eastern District of New York.

EDUCATION:  Boston University, B.A., 2001.  University of Miami School of Law, J.D., 2004. Florida International University, M.B.A., 2008.

BAR ADMISSIONS:  Florida.


**PEDRO ARISTON** has worked on numerous matters at BLB&G, including *In re Salix Pharmaceuticals, Ltd. Securities Litigation, Kohut v. KBR, Inc. et al., In re Genworth Financial Inc. Securities Litigation* and *In re Wilmington Trust Securities Litigation.*

Prior to joining the firm in 2014, Mr. Ariston was a senior associate at Zambrano & Gruba Law Offices, Philippines, and a staff attorney at Labaton Sucharow LLP.

EDUCATION:  Ateneo de Manila University School of Arts and Sciences, B.A., *cum laude*, 1990. Ateneo de Manila University School of Law, J.D., 2002.  Georgetown University Law Center, LL.M., 2007.

BAR ADMISSIONS:  New York.


**JIM BRIGGS** has worked on numerous matters at BLB&G, including *Medina, et al v. Clovis Oncology, Inc., et al, In re Salix Pharmaceuticals, Ltd. Securities Litigation, In re JPMorgan Chase & Co. Securities Litigation* and *In re Merck & Co., Inc. Securities Litigation (VIOXX-related).*



Prior to joining the firm in 2013, Mr. Briggs was a contract attorney at Paul, Weiss, Rifkind, Wharton & Garrison LLP and Stull, Stull & Brody.

EDUCATION:  Cornell University, College of Agriculture and Life Sciences, B.S. in Biological Science, *cum laude*, May 2007.  Fordham University School of Law, J.D., 2010.

BAR ADMISSIONS:  New York.

**GIROLAMO BRUNETTO** has worked on numerous matters at BLB&G, including *In re Altisource Portfolio Solutions, S.A., Securities Litigation, In re Genworth Financial Inc. Securities Litigation, In re Facebook, Inc., IPO Securities and Derivative Litigation* and *In re JPMorgan Chase & Co. Securities Litigation.*

Prior to joining the firm in 2014, Mr. Brunetto was a volunteer assistant attorney general in the Investor Protection Bureau at the New York State Office of the Attorney General.

EDUCATION:  University of Florida, B.S.B.A. and B.A., *cum laude*, May 2007.  New York Law School, J.D., *cum laude*, 2011.

BAR ADMISSIONS:  New York.

**RYAN CANDEE** has worked on numerous matters at BLB&G, including *In re Salix Pharmaceuticals, Ltd. Securities Litigation, In re Allergan, Inc. Proxy Violation Securities Litigation, West Palm Beach Police Pension Fund v. DFC Global Corp., General Motors Securities Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation, In re State Street Corporation Securities Litigation, SMART Technologies, Inc. Shareholder Litigation* and *In re Citigroup Inc. Bond Litigation.*

Prior to joining the firm in 2011, Mr. Candee was an associate at Dorsey & Whitney and a staff attorney at Kaplan Fox & Kilsheimer LLP.

EDUCATION:  University of Minnesota, B.A., 1994.  New York University School of Law, J.D., 2002.

BAR ADMISSIONS:  New York.

**BRIAN CHAU** has worked on numerous matters at BLB&G, including *In re Salix Pharmaceuticals, Ltd. Securities Litigation, In re Genworth Financial Inc. Securities Litigation, In re Facebook, Inc., IPO Securities and Derivative Litigation, In re MF Global Holdings Limited Securities Litigation, SMART Technologies, Inc. Shareholder Litigation* and *In re Bank of America Securities Litigation.*

Prior to joining the firm in 2010, Mr. Chau was an associate at Conway & Conway.

EDUCATION:  New York University, Stern School of Business, B.S., 2003.  Fordham University School of Law, J.D., 2006.

BAR ADMISSIONS:  New York.

**ANNE CIRASUOLO** (former staff attorney) focused on discovery matters, from the initial stages of electronic discovery through depositions.  Among other cases, Ms. Cirasuolo worked on *In re Salix Pharmaceuticals, Ltd. Securities Litigation, In re Wilmington Trust Securities Litigation* and *In re Bankrate, Inc. Securities Litigation.*



Prior to joining the firm in 2014, Ms. Cirasuolo was a discovery attorney at Willkie Farr & Gallagher, LLP and an associate at Hughes, Hubbard & Reed, LLP.

EDUCATION:  Barnard College, B.S., 1991.  Brooklyn Law School, J.D., 1994.

BAR ADMISSIONS:  New York.

**CHRISTOPHER CLARKIN** has worked on numerous matters at BLB&G, including *In re Wilmington Trust Securities Litigation, In re Salix Pharmaceuticals, Ltd. Securities Litigation, West Palm Beach Police Pension Fund v. DFC Global Corp., In re NII Holdings, Inc. Securities Litigation, In re Facebook, Inc., IPO Securities and Derivative Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation, SMART Technologies, Inc. Shareholder Litigation, In re Citigroup Inc. Bond Litigation* and *In re Pfizer Inc. Shareholder Derivative Litigation*.

Prior to joining the firm in 2010, Mr. Clarkin worked as a contract attorney for several law firms in New York City.

EDUCATION:  Trinity College, B.A., 2000.  New York Law School, J.D., 2006.

BAR ADMISSIONS:  Connecticut, New York.

**ALEX DICKIN** has worked on numerous matters at BLB&G, including *In re Salix Pharmaceuticals, Ltd. Securities Litigation* and *In re Wilmington Trust Securities Litigation*.

Prior to joining the firm in 2014, Mr. Dickin was a staff attorney at Labaton Sucharow and an associate at Herbert Smith Freehills.

EDUCATION:  Macquarie University, B.B.A. 2005; L.L.B. 2008, with *Honors*.

BAR ADMISSIONS:  New York.

**GEORGE DOUMAS** has worked on numerous matters at BLB&G, including *In re Salix Pharmaceuticals, Ltd. Securities Litigation, In re Green Mountain Coffee Roasters, Inc. Securities Litigation, In re NII Holdings, Inc. Securities Litigation, General Motors Securities Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation, JPMorgan Mortgage Pass-Through Litigation, In re Citigroup Inc. Bond Litigation, In re Huron Consulting Group, Inc. Securities Litigation* and *In re Bristol-Myers Squibb Co. Securities Litigation*.

Prior to joining the firm in 2008, Mr. Doumas worked as a contract attorney for several major law firms in New York City.

EDUCATION:  St. John's University, B.S., Accounting, 1994.  Southern New England School of Law, J.D., 1997.

BAR ADMISSIONS:  Maryland, Massachusetts.

**MICHAEL GRAFF** (former staff attorney) focused on discovery matters, from the initial stages of electronic discovery through depositions.  Among other cases, Mr. Graff worked on *In re Salix Pharmaceuticals, Ltd. Securities Litigation* and *Bear Stearns Mortgage Pass-Through Litigation*.


Bernstein Litowitz
Berger & Grossmann LLP

Prior to joining the firm in 2014, Mr. Graff was a contract attorney at Quinn Emmanuel Urquhart & Sullivan, LLP.

EDUCATION:  The George Washington University, B.A., 2001.  Touro College, Jacob D. Fuchsberg Law Center, J.D., 2011.

BAR ADMISSIONS:  New York.

**DANIEL GRUTTADARO** has worked on numerous matters at BLB&G, including *Medina, et al v. Clovis Oncology, Inc., et al, In re Salix Pharmaceuticals, Ltd. Securities Litigation, General Motors Securities Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation* and *In re Merck & Co., Inc. Securities Litigation (VIOXX-related)*.

Prior to joining the firm in 2014, Mr. Gruttadaro was a staff attorney at Stull, Stull & Brody.

EDUCATION:  State University of New York at Geneseo, B.S., 2005.   State University of New York at Buffalo Law School, J.D., *cum laude*, 2009.

BAR ADMISSIONS:  New York.

**KEITH GUILFOYLE** (former staff attorney) focused on discovery matters, from the initial stages of electronic discovery through depositions.  Among other matters, Mr. Guilfoyle worked on *In re Salix Pharmaceuticals, Ltd. Securities Litigation*.

Prior to joining the firm in 2016, Mr. Guilfoyle was Assistant Vice President & Counsel at Mass Mutual Financial Group.

EDUCATION:  State University of New York at Plattsburgh, B.S.  New York Law School, J.D.

BAR ADMISSIONS:  New York.

**STEPHEN IMUNDO** has worked on numerous matters at BLB&G, including *In re Salix Pharmaceuticals, Ltd. Securities Litigation, Kohut v. KBR, Inc. et al., In re Bank of New York Mellon Corp. Forex Transactions Litigation, Dexia Holdings, Inc. v. JP Morgan, In re Citigroup Inc. Bond Litigation* and *In re Huron Consulting Group, Inc. Securities Litigation*.

Prior to joining the firm in 2010, Mr. Imundo worked as a contract attorney at Labaton Sucharow LLP and Constantine & Cannon, LLP.

EDUCATION:  Mercy College, B.S., *summa cum laude*, 1994.  Fordham University School of Law, J.D., 2002.

BAR ADMISSIONS:  Connecticut, New York.

**MERLYNE JEAN-LOUIS** (former staff attorney) focused on discovery matters, from the initial stages of electronic discovery through depositions.  Among other matters, Ms. Jean-Louis worked on *In re Salix Pharmaceuticals, Ltd. Securities Litigation* and *Bear Stearns Mortgage Pass-Through Litigation*.

Prior to joining the firm in 2014, Ms. Jean-Louis was a contract attorney at Quinn Emmanuel Urquhart & Sullivan, LLP.



EDUCATION:  New York University, B.A., *cum laude*, 2006.  Duke University School of Law, J.D., 2012.

BAR ADMISSIONS:  New York.


**LAURA LEFKOWITZ** has worked on numerous matters at BLB&G, including *Town of Davie Police Pension Plan v. CommVault Systems, Inc., et al, In re Salix Pharmaceuticals, Ltd. Securities Litigation, In re NII Holdings, Inc. Securities Litigation, West Palm Beach Police Pension Fund v. DFC Global Corp., In re Bank of New York Mellon Corp. Forex Transactions Litigation, JPMorgan Mortgage Pass-Through Litigation, SMART Technologies, Inc. Shareholder Litigation, In re Citigroup Inc. Bond Litigation* and *In re Pfizer Inc. Shareholder Derivative Litigation.*

Prior to joining the firm in 2010, Ms. Lefkowitz worked as a litigation associate at Morgenstern Fisher & Blue, LLC.

EDUCATION:  University of Michigan, B.A., 1998.  American University, Washington College of Law, J.D., *cum laude*, 2001.

BAR ADMISSIONS:  New York.


**DANIELLE LEON** (former staff attorney) worked on numerous matters at BLB&G, including *In re Salix Pharmaceuticals, Ltd. Securities Litigation, In re MF Global Holdings Limited Securities Litigation and In re Merck & Co., Inc. Securities Litigation (VIOXX-related).*

Prior to joining the firm in 2013, Ms. Leon was a staff attorney at Brower Piven.

EDUCATION:  University of Florida, B.A., *magna cum laude*, 2007.  The George Washington University Law School, J.D., 2010.

BAR ADMISSIONS:  New York.


**MAUREEN MCCARREN** focuses on discovery matters, from the initial stages of electronic discovery through depositions.  Among other cases, Ms. McCarren has worked on *In re Salix Pharmaceuticals, Ltd. Securities Litigation* and *In re Bank of New York Mellon Corp. Forex Transactions Litigation.*

Prior to joining the firm in 2014, Ms. McCarren was a contract attorney at Kaye Scholer LLP and Skadden, Arps, Slate, Meagher & Flom LLP.

EDUCATION:  Adelphi University, B.A., 1978.  St. John's University School of Law, J.D., 1987.

BAR ADMISSIONS:  New York.


**JOHN MOORE** focuses on discovery matters, from the initial stages of electronic discovery through depositions.  Among other matters, Mr. Moore has worked on *California Public Employees' Retirement System v. IAC/InterActiveCorp, et al*, and *In re Salix Pharmaceuticals, Ltd. Securities Litigation.*

Prior to joining the firm in 2016, Mr. Moore was engaged in a general law practice, and also provided pro bono assistance to pro se litigants in consumer credit and bankruptcy actions.



EDUCATION:  Colorado University, Bachelor of Music, 1986.  Northeastern University School of Law, J.D., 2007.

BAR ADMISSIONS:  New York.

**ROBERT JEFFREY POWELL** has worked on numerous matters at BLB&G, including *Fernandez, et al v. UBS AG, et al ("UBS Puerto Rico Bonds"), In re Salix Pharmaceuticals, Ltd. Securities Litigation, In re Green Mountain Coffee Roasters, Inc. Securities Litigation, In re Genworth Financial Inc. Securities Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation, Bear Stearns Mortgage Pass-Through Litigation, Cambridge Place Investment Management Inc. v. Morgan Stanley & Co., Inc., et al., SMART Technologies, Inc. Shareholder Litigation* and *In re Citigroup Inc. Bond Litigation.*

Prior to joining the firm in 2011, Mr. Powell was a litigation associate at Pillsbury Winthrop LLP and Constantine Cannon LLP.

EDUCATION:  University of the South, B.A., *magna cum laude*, 1992; Phi Beta Kappa.  Harvard Law School, J.D., 2001.

BAR ADMISSIONS:  New York.

**PRASHANTHA RATNAYAKE** (former staff attorney) focused on discovery matters, from the initial stages of electronic discovery through depositions.  Among other cases, Mr. Ratnayake worked on *In re Salix Pharmaceuticals, Ltd. Securities Litigation, In re Kinder Morgan Energy Partnership, L.P. Derivative Litigation* and *In re Wilmington Trust Securities Litigation.*

Prior to joining the firm in 2014, Mr. Ratnayake was a contract attorney at Quinn Emmanuel Urquhart & Sullivan, LLP and Cohen Milstein Sellers & Toll PLLC.

EDUCATION:  Sri Lanka Law College (School of Law) Attorneys-at-Law, December 1993.  Benjamin N. Cardozo School of Law, LL.M., January 2002.

BAR ADMISSIONS:  New York.

**DANIEL RENEHAN** (former staff attorney) worked on numerous matters at BLB&G, including *In re Salix Pharmaceuticals, Ltd. Securities Litigation, General Motors Securities Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation, Cambridge Place Investment Management Inc. v. Morgan Stanley & Co., Inc., et al., In re MF Global Holdings Limited Securities Litigation, In re Citigroup Inc. Bond Litigation, In re Pfizer Inc. Shareholder Derivative Litigation, In re WellCare Securities Litigation, In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation (Bond Action), In re RAIT Financial Trust Securities Litigation, In re Refco, Inc. Securities Litigation, In re Converium Holding AG Securities Litigation, Affiliated Computer Services, Inc. Shareholder Derivative Litigation, Ohio Public Employees Retirement System, et al. v. Freddie Mac, et al.* and *In re Symbol Technologies, Inc. Securities Litigation.*

Prior to joining the firm in 2004, Mr. Renehan worked as an associate at Gibbons, Del Deo, Dolan Griffinger & Vecchione, P.C.

EDUCATION:  State University of New York, College at Oswego, B.A, 1987.  New York University, Graduate School of Arts & Science, M.A., 1991.  Brooklyn Law School, J.D., 2000.

BAR ADMISSIONS:  New York.



**MADELEINE SEVERIN** focuses on discovery matters, from the initial stages of electronic discovery through depositions. Among other cases, Ms. Severin has worked on *Medina, et al v. Clovis Oncology, Inc., et al* and *In re Salix Pharmaceuticals, Ltd. Securities Litigation.*

Prior to joining the firm in 2016, Ms. Severin was a staff attorney at Dewey & LeBoeuf LLP and a contract attorney at several firms in New York City.

EDUCATION: Sarah Lawrence College, B.A., 1997. Benjamin N. Cardozo School of Law, J.D., 2004.

BAR ADMISSIONS: New York.


**CHRISTINA SUAREZ** has worked on numerous matters at BLB&G, including *Town of Davie Police Pension Plan v. CommVault Systems, Inc., et al, In re Salix Pharmaceuticals, Ltd. Securities Litigation, Kohut v. KBR, Inc. et al., In re NII Holdings, Inc. Securities Litigation* and *In re JPMorgan Chase & Co. Securities Litigation.*

Prior to joining the firm in 2014, Ms. Suarez was a litigation associate at Schulte Roth & Zabel LLP.

EDUCATION: Barnard College, Columbia University, B.A., *magna cum laude*, 2002. George Washington University Law School, J.D., 2006.

BAR ADMISSIONS: New York.


**CATHERINE VAN KAMPEN** has worked on numerous matters at BLB&G, including *In re Wilmington Trust Securities Litigation, Kohut v. KBR, Inc. et al., In re Bank of New York Mellon Corp. Forex Transactions Litigation, In re Merck & Co., Inc. Securities Litigation (VIOXX-related), Dexia Holdings, Inc. v. JP Morgan, In re Citigroup Inc. Bond Litigation, In re Pfizer Inc. Shareholder Derivative Litigation, In re WellCare Securities Litigation, In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation (Bond Action), In re State Street Bank and Trust Co. ERISA Litigation, In re Converium Holding AG Securities Litigation, In re Monster Worldwide, Inc. Derivative Litigation* and *Stonington Partners, Inc. v. Dexia Bank Belgium.*

Prior to joining the firm in 2005, Ms. van Kampen was corporate counsel at Centric Communications Worldwide.

EDUCATION: Indiana University, B.A, 1988. Seton Hall University, School of Law, J.D., 1998.

BAR ADMISSIONS: New Jersey.